RECEIPT # 56930
AMOUNT $ 150
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 6/28

FILED
CLERKS OFFICE

UNITED STATES OF AMERICA
DISTRICT COURT FOR THE EASTERN DISTRICT OF MASSACHUSETTS

2004 JUN 28 P 1:25
Docket No.

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Lucia Enica | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 04cv11468DPW |
| | ) |
| Anthony J. Principi as he is | ) |
| Secretary of Veterans Affair of the | ) |
| Department of Veteran Affairs, and | ) |
| The Department of Veteran Affairs of | ) |
| The United States | ) |
| Defendants | ) |

MAGISTRATE JUDGE Dein

## COMPLAINT and JURY CLAIM

### The Parties

1. The plaintiff is Lucia Enica, who at all time relevant to the matters herein lived in the town Belmont, in the county of Middlesex in the Commonwealth of Massachusetts, of the United States, a citizen, who was and is an employee of the Department of Veteran Affairs, (hereinafter the VA) of the United States at it facilities in the City of Boston, County of Suffolk, in said Massachusetts.

2. The defendants are:

   a. Anthony J. Principi, as he is Secretary of Veteran Affairs of the Department of Veterans Affairs of the United States, (hereinafter also referred to as the 'VA' and or the 'employer',) who at all time relevant to the matters in this case was by law and in fact responsible for the direction of the VA and

   b. The VA, at all time relevant to these claims was the employer of the plaintiff.

### Jurisdictional Statement

These are claims brought by a federal employee of the Department of Veteran Affairs against her said employer for 'handicap' discrimination due to a 'disability' pursuant to the Rehabilitation Act of 1973 as amended, 29 U.S.C.A. 701 et seq. as amended including sections 791 and 794; and 'retaliation' pursuant to Title VII, the Civil Rights Act of 1964, § 701 et seq. as amended, 42 U.S.C.A. § 2000e et seq. as amended.

She is living in Belmont, Massachusetts and worked as a psychiatric nurse for the defendants at its West Roxbury and Jamaica Plain campuses in the City of Boston, in said Massachusetts, where a substantial part of the acts or omissions of the alleged charges occurred.

In addition jurisdiction is conferred on this district court by the provisions of 28 U.S.C.1331, and/or 1334 and/or 1391(e).

**Facts**

3. Ms. Enica (hereinafter Ms. Enica, the plaintiff or the 'employee') was hired by the employer as a 'staff nurse in psychiatry' and assigned initially to its West Roxbury campus in or about 1994. She worked for the employer as said psychiatric nurse from that time until 2003, when she was detailed temporarily to a medical telephone 'triage' position in Jamaica Plain, which she presently holds.

4. Ms. Enica suffered damage due to a poliomyelitis condition when she was approximately 10 months old living in Romania, affecting her right leg including permanent nerve damage and paralysis, and further damage to the same leg due to a break caused by a fall when she was approximately 12 years old, making her right leg shorter than her left, among other things.

5. As result of the repairs and damage she suffered among other things to attempt to lengthen the right leg including paralysis, loss of motor ability loss of length, impairment of her ability to walk, to lift and drive her car among other things she is seriously impaired to this day. She is required among other things to drive a handicap car equipped for her to use with her left instead of her right foot, is limited to carrying no more than 5-7 pounds, and now falls easily among other things. The conditions did and are getting progressively worse over time, now being described as osteoarthritis, poliomytis, scoliosis and degenerative disc disease which conditions are permanent and still

3

continue to get progressively worse. These conditions impair the plaintiff's 'life activities' by impairing her ability to walk, stand, lift and/or push, but with or without reasonable accommodation the employee is able to do the essential functions of the various jobs she has been assigned or for which she has applied as described herein.

6. When hired by the VA the plaintiff had a bachelor's degree in nursing. In 2002, Ms. Enica also received her Master's degree as a 'Clinical Nurse Specialist' in Adult Psychiatry and Mental Health Nursing' (hereinafter referred to as 'clinical nurse specialist') and a master's degree as a 'Nurse Practitioner' in psychiatric nursing from the University of Massachusetts at Lowell in said Commonwealth. In 2003 she was licensed nationally and by the state of Massachusetts as said 'clinical specialist' and in 2004 as 'Nurse, Practitioner', all known to her employer, shortly after these additions to her occupational qualifications occurred.

7. The plaintiff says that she is able to perform the essential functions of her job as a 'psychiatric nurse', 'psychiatric clinical nurse specialist' and/or 'psychiatric nurse practitioner', with or without reasonable accommodation at all times relevant to the matters herein.

8. In or about 1995 or 1996 while working at her job as a psychiatric nurse, Enica began to suffer severe disabling pain when doing certain functions at the VA, i.e. when she was required to push patients on

4

stretchers from their rooms to have electric convulsive shock treatment among other things. Her doctor in reports on her behalf in regard to such matters, submitted to the VA at its request, asked for physical accommodations for her indicating among other things that because of her polio, low back pain and leg length discrepancy, Enica could not be ordered to crouch, lift over 15 pounds do repetitive low back activity and was not suited for med-surgical floor nursing or repetitive pushing and pulling and also suggested it was not "possible to spell out physical restrictions for all circumstances, nurse must be permitted some discretion among other things due to her disabilities." In said year 1996 the employer also had Enica examined by a doctor employed by the VA as Chief of Orthopedics. His report confirmed her disabilities and in essence also specifically suggested that her doctor's recommendation of limitation for physical activity might not be restrictive enough. This report was delivered to the employer including the supervisors of the plaintiff.

9. As a result of her conditions and these physical limitations confirmed by the doctors' reports, the VA determined that Ms. Enica was required to be accommodated by limiting her work to 'psychiatric' nursing at the VA with the physical limitations required by the doctors in the reports in regard to walking, pushing, lifting and/or standing.

10. The medical and occupational limitations described above in were part of her personnel files and/or

5

reported to and known to her supervisors in the Nursing Department of the now described 'Boston Health Care System', where she was continuously employed by the employer from 1994 until the present and continuing. The Responding Management Officials (hereinafter RMO) at these facilities involved at all relevant times in these matters of alleged discrimination at the facility where the employee worked, she is informed and believes were Ms. Karen Bassett, Coordinator of Mental Health Nursing, Ms. Cecelia McVey, Associate Director of Nursing and Patient Care, Ms. Marry Farren, Nurse Manager the direct supervisor of the plaintiff at Jamaica Plain and at the Nurse Stabilization Unit in West Roxbury, Mr. Denni Woodmansee, Director of the Worker Injury Program, Mr. William Warfield, Chief of Employee Relations in Human Resources Craig S. Poucha, Chief Human Resources Management Services.

11. At all times during her employment with the VA, Enica walked with a noticeable limp and observable limited ability to lift, push or stand, and had therefore had the 'appearance' from this and other things of a person who was obviously disabled and inhibited in certain of her life's functions.

12. At all times following the medical reports in 1995 and 1996 described above, Enica was treated in certain ways as a person with a 'disability' by her employer, its agents servants and employees, however at all such times the employer its agents servants or employee did not 'reasonably' accommodate all the disabilities as required. Among other things the employer required her

6

to walk longer distances and for long times without aid than was permitted and to lift, pull and do other restricted activities.

13. From 1995 to 2002 while she worked at the psychiatric unit in Jamaica Plain, notwithstanding the required restrictions, the VA failed to reasonably accommodate her in regard to such physical activities to which it assigned her knowing of her limitations, and she was required to continuously do much of the restricted physical activity which continue to cause her constant pain for which she was required to take medication. Her supervisors at the VA did not show Enica the report of the VA Chief of Orthopedics described above during such time period, nor tell her of the limitation he described, and the employer's limitation to the role of a 'psychiatric nurse' with such physical restrictions, but such supervisors continued to wrongfully assign her to among other duties walking long distances and for long times without aid and do other duties of a 'floating' floor nurse in medical settings specifically restricted for her.

14. In June 2002, Enica was transferred to the 'Crisis Stabilization Unit' at West Roxbury when the Jamaica Plain psychiatric unit was purportedly closed. When the Jamaica Plain psychiatric unit was planning the move of some its personnel to said West Roxbury, Enica brought her physical limitations to her supervisor (s) and human relation's attention in regard to the job to be performed at West Roxbury. Enica at the request of said supervisor(s) and human relations obtained another report from her doctor dated May 12, 2002,

which she presented to them, incorporated by reference herein. This medical report again clearly listed what occupational limitations applied to her and what accommodations she needed which would still permit her to perform the essential functions of her job. The report again also set forth specific information about what Enica could not do at work. Enica asked to stay at Jamaica Plain, but instead Enica was given a notice of transfer on June 28, 2002 to West Roxbury to a new position. The notice included a document 'scope of practice' which listed some accommodation to some of her physical conditions, but which document ignored many of the restrictions described by the doctor in the said May 2002 letter and the other medical letters in 1995 and 1996 described above. She was still transferred and required to do the work of the unit in pain due to the lack of the requested and/or required accommodations being provided for her to be able to do the job.

15. Due to the increased pain from the increased required walking among other things at West Roxbury after her transfer, the plaintiff's representative requested on August 9, 2002 that the facility reconsider the transfer among other things, and asked the employer to comply with the accommodations required in the doctors' letters described above. As of October 1, 2002 the employer did not respond and the situation had not changed so the employee filed 'formal' discrimination charges with the VA.

16. At or about this time as a result of the additional physical activity at West Roxbury from which she was

8

medically restricted but required to do, including but not limited to greatly increased walking every day compared to the walking required at Jamaica Plain, Enica suffered a 'worker compensation' injury arising out of or in the course of her employment, which disabled her from working. As a result she was required to leave work and make a claim for compensation. This injury included but was not limited to developing a 'bursitis' condition in her hips and/or legs aggravating her previous disabilities and causing her great pain among other things.

17. The Veteran's Administration for discriminatory reasons denied her workers compensation claim and her requested accommodations by said claim.

18. The 'Office of Worker's Compensation Program' of the Department of Labor, of the United States, to whom Enica appealed, reversed the January 2003 denial of her claim by the VA, in an appellate decision issued in May 2003 incorporated by reference herein and marked Exhibit 'A'. The decision among other things found that Enica suffered an 'on the job injury' causing increased injury to her prior disabled conditions, requiring further accommodation and compensation from the VA since the failure to accommodate her had led to unsafe conditions at work for Enica causing her the said workers compensation injury.

19. When she returned to work in 2003 after recovering from the injury, the VA upon her request, provided her a 'motorized' scooter as an accommodation to her

9

disabilities, to help with the assigned walking at West Roxbury.

20. Her supervisors however kept assigning her to medical situations on the wards ignoring the other physical restrictions on her of which they knew including being excluded from medical duties on the wards described in among other places the 1995 and 1996 medical reports. These assignments required physical actions with patients to physically support or move them in bed or walking, which the supervisors knew or should have known Enica could not do because of her other physical limitations described in the prior medical reports.

21. The supervisors also failed to notify or seek or gain the help of the floor nurses where she was assigned to aid these physical restrictive conditions of Enica, and caused Enica thereby continued embarrassment, physical and emotional pain, when she could not perform or get help to perform the assigned physical tasks with the patients. These assignments because of her physical limitations to help the patients, put her patients to whom she was assigned to do tasks she could not, in danger. She so noted these matters in the records and her supervisors retaliated by falsely claiming she could not do appropriate medical jobs, from which jobs she had been restricted by medical reports to the employer and in regard to which the supervisors were aware. The acts described in this paragraph in of themselves were directly discriminatory, and/or a refusal to provide reasonable accommodation and/or retaliatory.

22. When Enica complained about the assignments described in 21 above, the supervisors 1) falsely charged her with inability to perform the required medical tasks such as supporting patients who might fall from bed or while walking to the lavatory, 2) put her on administrative leave requiring her to remain at home and not work, and then later in 2003 3) detailed Enica temporarily to the 'TAP' program so called, (a telephone medical triage system at the hospitals carried out by registered nurses.) She is not required at 'TAP' a nursing position, to walk push or lift. She has successfully performed all of the nursing duties of this position without further accommodation.

23. The VA published by e-mail a notice for an opening at Jamaica Plain for the position of 'Clinical Nurse Specialist' in June 5, 2003 incorporated by reference herein as Exhibit 'B', for which position Enica timely applied. She was at the time of her application eligible in all respects for the position as described. She believes and says she can perform the essential functions of the said position as described in the notice, without any accommodation.

24. The VA then issued a Final Agency Report, which denied the plaintiff's charges for false reasons and failed to address her promotional allegations. The plaintiff says that such report itself continued the acts of handicap discrimination and/ or retaliation by among other things wrongfully denying the employer's responsibility under the applicable law to provide her reasonable accommodation and/or for acting in a retaliatory manner.

25. After appropriate demands to the employer by the employee's agent, for information about the course of the application and the job, the employer in late April 2004, refused in writing to appoint the plaintiff to the position for false reasons. as part of the pattern of denying her a reasonable accommodation for her handicap and/or as direct handicap discrimination, and or retaliation for filing the formal charges described above.

26. Enica says the real reason she was denied the promotional position was as part of a continuing pattern of denying her a reasonable accommodation for her handicap, of direct handicap discrimination and/or in retaliation for her filing the above-described discrimination claims against the VA its agents, servants and/or employees. As a result she has been denied a promotion to which she was eligible and entitled, and thereby suffers a loss of income and employee benefits among other things.

27. After her formal claim of discrimination to the VA, its 'Office of Resolution Management' did an investigation and filed an 'Investigative Report' delivered to each party, incorporated by reference herein as Exhibit 'C' and dated December 29, 2003, which report set forth facts sufficient to support the charges of the plaintiff herein.

28. The acts of handicap discrimination, failure to provide reasonable accommodation, creating a hostile

work environment and/or retaliation by the defendants their agents, servants or employees towards the plaintiff described in this complaint, were willful and deliberate.

## COUNT I

### Handicap Discrimination, and/or Lack of Reasonable Accommodation 29 U.S.C.791 and/or 794

29. The plaintiff incorporates paragraphs 1-28 as if separately set forth herein.

30. The plaintiff says that at all time relevant to the matters herein she was disabled by disabilities which caused

    a. impairment of life functions and/or

    b. a past record of impairments with the VA and/or

    c. was regarded as impaired by the employer.

31. The plaintiff says that from 1995 to the present, while working for the employer, the said disabilities that are permanent and progressive, interfered with her said life functions, and/or she had a record of such impairment with the employer, and/or was regarded as impaired by the employer. She further says however that at all relevant times, she was a 'qualified' handicapped person who was able to perform the essential functions of her job with or without an

accommodation, and/or in fact did so perform, and that despite her employer's knowledge of the said disabilities her employer did not offer her 'reasonable accommodations' and/or discriminated against her directly.

32. The plaintiff says that from said 1995 continuously she was constantly, as part of a pattern of actions by the employer, denied reasonable accommodation(s) to her handicaps, in violation of the Rehabilitation Act of 1973 as amended, including 29 U.S.C.A. 791 and/or 794 as amended and/or other applicable law, notwithstanding that she was and/or appeared to be a person who was treated as a qualified handicapped person and/or one who asked for reasonable accommodation(s) with and/or without medical support on numerous occasions during said period and/or was a person to whom such accommodations were required to be given based on the knowledge of the employer its agents servants and/or employees.

33. As a result among other things, a) she was forced to continuously do work in violation of the medical restrictions necessary to reasonably accommodate her disabilities. As a result among other things she was caused a) severe bodily pain requiring pain relievers, the need for medical attention and medication she would not have otherwise needed, b) she was also caused to develop and suffer from what was adjudicated as a workers compensation injury, which aggravated her preexisting disabilities, causing her to leave work as a result and seek compensation and medical attention and incur medical expense for such aggravating

14

injuries c) and was denied a promotional opportunity and assigned to non-psychiatric work as direct discrimination, notwithstanding her training.

34. Said acts of failure to reasonably accommodate, direct discrimination and or creating a hostile work environment and/ or retaliation of the employer against the employee described herein were willful and deliberate.

35. As a result of the actions of the employer described herein, the employee was caused to work without reasonable accommodation, to be denied a promotion, to suffer a workers compensation injury, to suffer great pain to her body and mind, loss of past and future income and/or use of sick time, and she is and/or was required to expend money for medical treatment and prescriptions, expend money for attorneys and suffered other great damage.

## COUNT II
### Retaliation

36. The plaintiff incorporates paragraphs 1 through 35 as if separately set forth herein.

37. The plaintiff says the employer by each of the actions described above has also displayed retaliatory animus toward the employee in violation of the Civil Rights Act of 1964, § 701 et seq., as amended; 42 U.S.C.A. § 2000e et seq. as amended and/or other applicable law.

15

38. As described above, the plaintiff says that each time from 1995 to the present when she was denied a reasonable accommodation to her disabilities from the employer and/or suffered a hostile work environment or direct handicap discrimination, or denied a promotional opportunity in late April 2004, she was engaged in 'protected activity' with the meaning of said Act or other law.

39. The plaintiff says that actions of the employer described herein in regard to said protect activity of the plaintiff, were motivated by the employer its agents servants or employees to retaliate against her for exercising such protected rights and/or for making the discrimination and or hostile work environment claims described herein.

40. Said acts of retaliation against the employee by the employer described herein, were willful and deliberate.

41. As a result of the retaliatory actions of the employer described herein, the employee suffered damages by being required to work without reasonable accommodation, being denied a promotion, being caused a workers compensation injury, being caused great pain to her body and mind, being caused loss of past and future income and/or use of sick time, being required to expend money for medical treatment and

prescriptions, and being required to expend money for attorneys and suffered other great damage.

### Jury Claim

The plaintiff claims the right to a jury trial in this matter as to all matters so triable pursuant to the laws and/or Constitution of the United States.

### Relief

**WHEREFORE,** the plaintiff makes the following claims for relief:

1. That the employer pay the plaintiff compensatory damages including but not limited to back pay, front pay, damages for pain and suffering of both body and mind, damages for humiliation, damages for medical attention and medicines, and all other such damages as may be permitted.

2. That the employer pays to the employee exemplary damages.

3. That the employer pays to the employee interest from the time of the injuries until the time of the filing of the claims in this matter.

4. That the employer pays to the plaintiff interest from the time of the filing of these claims until the date of judgment.

5. That the employer pays to the employee her reasonable attorney's fees.

6. That the employer, the director or person in charge of its facility at Jamaica Plain or the in said Boston, or such other person so responsible, forthwith temporarily until further order of this court, and/or permanently, assigns at it's Boston campuses, the employee Enica to the position of 'Psychiatric Clinical Nurse Specialist', or its equivalent.

7. For such other relief as may be just and appropriate.

The Plaintiff,
By her Attorney,

Sanford A. Kowal
56 Chestnut Hill Ave.
Boston, Ma 02135
617 562 8100
BBO No. 278420

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Lucia Enica

**DEFENDANTS**

Department of Veteran Affairs,
Anthony J. Principi, as he is
Secretary of Veteran Affairs

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Sanford A. Kowal
56 Chestnut Hill Avenue
Boston, Ma. 02135

ATTORNEYS (IF KNOWN)

04cv11468DPW

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Claims of Handicap Discrimination By Federal Employee pursuant to 29 USC 791 and/or 794

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
DEMAND $ $500,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): None
JUDGE _____
DOCKET NUMBER _____

DATE June 25, 2004
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Erica vs Principios_
_de es Secretary of Veteran Affairs of the Deputy Veteran Affair_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
- [x] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
- [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
- [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
- [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_None_

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES [ ]   NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
YES [ ]   NO [x]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES [ ]   NO [x]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES [ ]   NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES [x]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
   Eastern Division [x]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
   Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
YES [ ]   NO [x]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Sanford A. Kowal_
ADDRESS _56 Chestnut Hill Ave Boston, MA 02135_
TELEPHONE NO. _617 562 8100_

(Coversheetlocal.wpd - 10/17/02)