UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
LUCIA ENICA,                    )
                                )
     Plaintiff,                 )
                                )      Docket No. 04CV11468-DPW
     v.                         )
                                )
ANTHONY J. PRINCIPI, Secretary) 
of Veterans Affairs of the      )
Department of Veterans          )
Affairs,                        )
                                )
     Defendant.                 )
                                )
_____)
```

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, Anthony J. Principi, the Secretary of the

Department of Veteran Affairs, by his attorney, Michael J.

Sullivan, the United States Attorney for the District of

Massachusetts, hereby submits this Memorandum of Law in

Opposition to Plaintiff Lucia Enica's Motion for Partial Summary

Judgment as to Count I of her Complaint and in support of the

Defendant's Cross-Motion for Summary Judgment dismissing

Plaintiff's Complaint in its entirety.

I.  **INTRODUCTION**

Plaintiff, a Registered Nurse employed with the Department

of Veteran Affairs' ("VA") West Roxbury hospital, claims that the

VA failed to accommodate her disability in violation of the

Rehabilitation Act, 29 U.S.C. §§ 791, 794(a) ("Count I").  Also,

Plaintiff claims that because she sought accommodations and submitted a workers compensation claim, the VA retaliated against her by subjecting her to a hostile work environment and denying her a promotion ("Count II"). Plaintiff has moved for partial summary judgment with regards to Count I on the grounds that findings of fact made by a Department of Labor ("DOL") workers compensation officer collaterally estops the VA from litigating Plaintiff's failure to accommodate claim before this Court.

The Court should deny Plaintiff's motion, however, because: (i) there is no case law supporting Plaintiff's argument for the imposition of affirmative collateral estoppel under facts similar to the case at bar; (ii) Plaintiff has failed to prove that the DOL process of a workers compensation claim is sufficiently similar in scope and procedure to the federal court process; (iii) the workers compensation officer did not find all the facts necessary to prove a failure to accommodate claim under the Rehabilitation Act; and (iv) the workers compensation officer did not reach a legal conclusion that the VA failed to provide Plaintiff with a reasonable accommodation. In addition, the Defendant moves for summary judgment dismissing the entire complaint because Plaintiff cannot prove a prima facie case for a failure to accommodate claim or a retaliation claim. Accordingly the Court should grant summary judgment dismissing the Complaint.

## II.   STATEMENT OF FACTS AND PROCEDURAL POSTURE

Defendant respectfully refers the Court to his Concise Statement of Material Facts to Which There is No Genuine Issue to Be Tried for a complete statement of the facts supporting this Motion.

### A.   PLAINTIFF'S PRIOR MEDICAL HISTORY

Starting at the age of ten months old, Plaintiff began to suffer from muscle deficiencies.  Deposition of Lucia Enica Quelis Silva ("Enica Depo.") at 40:9-10, all cited pages attached hereto as Exhibit A.  As a child, Plaintiff was diagnosed with poliomyelitis. Id. at 40:9-44:6, and fractured her right femur which led to several reconstructive surgeries.  Id. at 41:10-12. As a result, Plaintiff currently has several deficits to her right leg.  Id. at 42:8-9.  Plaintiff also suffers from severe arthritis in her right knee, and ankylosis, which causes stiffness in her right ankle.  Id. at 42:8, 46:7-8.

### B.   PLAINTIFF'S EMPLOYMENT HISTORY WITH THE VA PRIOR TO HER FIRST EEO CLAIM OF DISCRIMINATION

In 1994, Plaintiff began her employment with the VA as a Registered Nurse of Psychiatry at the VA hospital in Jamaica Plain.  Id. at 25:15-16.  Her job functions included all aspects of basic care for patients with physical and emotional problems. See Affidavit of Cecilia McVey ("McVey Aff.") at ¶ 5, attached hereto as Exhibit B.  Upon being hired, Plaintiff took a fitness

for duty exam with Denni Woodmansee, Occupational Health
Physician Assistant.  See U.S. Civ. Serv. Commn. Certificate of
Med. Exam., dated June 17, 1994, attached hereto as Exhibit C.
After the exam, Woodmansee found that Plaintiff had no limiting
conditions for her position as a registered nurse.  Id.

In 1995, when Plaintiff learned that her unit was closing,
she for the first time approached her supervisor, Mary Farren, to
discuss some of her limitations.  Enica Depo. at 58:21-60:1.
Specifically, Plaintiff told Farren that she would not be able to
work in another unit besides psychiatry because of her physical
deficits.  Id.   The VA, therefore, transferred Plaintiff to
another psychiatric unit within the Jamaica Plain campus. Id. at
61:12-62:3.

The following year, in 1996, Plaintiff told Beverly Reardon,
Plaintiff's then supervisor, that she could not take a patient on
a stretcher to electric compulsive shock therapy because she was
in pain.  Id. at 63:4-20.  Reardon asked that Plaintiff submit a
doctor's note with Plaintiff's limitations and restrictions.  Id.
at 63:14-20.  Accordingly, Plaintiff saw Dr. Richard Wright, who
gave her a doctor's note stating that Plaintiff should avoid
repetitive low back activity and repetitive heavy pushing or
pulling.  Id. at 64:11-65:2.  Plaintiff submitted this doctor's
note to Reardon.  Id. at 65:9-11.  Reardon then asked the
Plaintiff to undergo a fitness for duty exam by Dr. John Harris,

4

III, Chief of Orthopedic Surgeons at the VA, to evaluate whether Plaintiff was capable of performing the essential functions of a staff nurse at the VA hospital.  <u>See</u> Memo. Dept. of VA, Fitness for Duty Exam, dated July 8, 1996 attached hereto as Exhibit D. Dr. Harris stated that Plaintiff could neither carry or push 45 pounds.  Med. Rec. Progress Notes, July 25, 1996, attached hereto as Exhibit E.  He also documented in his progress notes that he "told all of this to Ms. Enica and suggested that she go to Nursing Services with this information as soon as possible to work out with them what will be done by Nursing Service."  <u>Id.</u> Plaintiff contends that Dr. Harris told her nothing about the results of her exam, and did not give her any medical information to turn over to the nursing staff.  Enica Depo. at 70:15-25. After the exam, Plaintiff returned back to work and her normal job functions.  <u>Id.</u> at 69:1-17.  The VA, however, modified Plaintiff's job functions by excusing her from carrying or pushing more than 45 pounds.  McVey Aff. at ¶ 8.  Over the next six years, between 1996 and 2002, Plaintiff did not speak with anyone in a management position about her disabilities, nor did she request further accommodations.  <u>Id.</u> at 78:12-14.

      **C.**    <u>**PLAINTIFF'S FIRST EEO CLAIM AGAINST THE VA IS DENIED**</u>

On April 9, 1997, based on events that purportedly occurred since her hire in 1994, Plaintiff filed an EEO administrative complaint against the VA.  <u>See</u> Complaint of Employment

Discrimination, dated April 9, 1997, attached hereto as Exhibit
F.  Plaintiff's EEO complaint alleged discrimination based on
national origin, disability, and retaliation.  Id.  On November
24, 1998, the EEOC issued a final agency decision finding that
Plaintiff failed to establish her claims.  See Final Agency
Decision, dated Nov. 24, 1998, attached hereto as Exhibit G.
Plaintiff did not appeal the EEOC's decision.  Enica Depo. at
93:3-95:18.

    **D.**   **WHEN PLAINTIFF LEARNED THAT HER UNIT WAS CLOSING, SHE
REQUESTED ADDITIONAL ACCOMMODATIONS**

In 2000, the VA decided to integrate all patient care
service at the Jamaica Plain campus with the West Roxbury and
Brockton campuses.  McVey Aff. at ¶ 9.  In 2001 and 2002, the VA
negotiated with the labor union to transfer the employees from
the Jamaica Plain campus to either of the other two campuses.
Id.  In 2002, when Plaintiff learned that the VA was closing her
unit, she immediately became concerned about where the VA would
transfer her.  Id. at ¶ 10.  Plaintiff expressed to VA management
her desire to stay at the Jamaica Plans campus in a mental health
position; however, there were no such positions available.  Id.

Plaintiff testified that when she learned the VA was closing
her unit and transferring her to another hospital, she became
worried that she would have to walk longer distances.  Enica
Depo. at 114:9-14.  Plaintiff contends that she expressed this
concern to Farren.  Id. at 115:7-17.  Based on the advice of Lisa

Cargill, a union representative, in May of 2002, Plaintiff saw
Dr. Robert A. Provost to obtain additional documentation on her
physical restrictions and limitations.  Id. at 107:21-108:8.
Plaintiff gave Farren a note from Dr. Provost, dated May 13,
2002, that stated that the VA should not place Plaintiff in a
position where she has to stand for more then 5 minutes,
participate in crisis intervention, or perform walking rounds.
Id. at 108:7-8, 120:20-122:2; see also Med. Rec. Progress Note,
dated May 13, 2002, attached hereto as Exhibit H.  On May 23,
2002, a dialogue began between Plaintiff and the VA management
concerning what reasonable accommodations, if any, Plaintiff
needed to perform the essential functions of her job.  Enica
Depo. at 117:18-118:21.

In June 2002, Plaintiff met with William Warfield, Chief of
Employee Relations in Human Resources, Cecelia McVey, Associate
Director of Nursing and Patient Care, Karen Basset, Coordinator
of Mental Health Nursing for the Boston Healthcare System, and
Lisa Cargill concerning the closing of her unit at the Jamaica
Plain VA.  Id. at 122:14-127:24.  In this meeting, Warfield and
McVey told Plaintiff that the VA was transferring her, as well as
ten other nurses, to its crisis stabilization unit in West
Roxbury.  Id.  Because this entirely new unit had only three
beds, VA management anticipated that the work would be physically
less demanding than Plaintiff's current position at the Jamaica

7

Plain campus.  McVey Aff. at ¶ 11.  The meeting participants also discussed Plaintiff's request for additional accommodations of her physical limitations.  Enica Depo. at 144:7-12.  They agreed that Plaintiff did not have to respond to any physical aspect of a crisis intervention, such as a "Code Green."  Id. at 129:10-20. They also agreed that Plaintiff would perform all other functions of a Registered Nurse in the Crisis Stabilization Unit.  Id. at 129:22-25.  Although the memorandum memorializing the meeting only mentions that Plaintiff did not have to respond to a "Code Green" (see Memo. Accommodations, dated June 28, 2002, attached hereto as Exhibit I), Plaintiff testified that McVey and Warfield also told her that she would not have to walk excessively or do anything else that she could not physically do.  Encia Depo. at 131:6-12.

### E.    PLAINTIFF BEGINS WORKING IN THE CRISIS STABILIZATION UNIT AT WEST ROXBURY

On or about July 1, 2002, the VA closed Plaintiff's unit in Jamaica Plain and transferred her to the new Crisis Stabilization Unit in West Roxbury.  Id. 131:1-132:9.  Because this unit only had one or two patients a week who stayed for a maximum of 23 hours, the VA management asked these nurses, including Plaintiff, to perform walking rounds in other medical units.  Id. at 137:2-20.  Plaintiff alleges that immediately upon starting work at the West Roxbury campus the management made her walk an orientation round of the hospital, which she testified she was physically

incapable of doing.  Id.  Plaintiff contends that in September 2002, she reported to Basset and Mary Farren, Nurse Manager of Crisis Stabilization Unit, that she was experiencing leg and back pain and could not perform her walking rounds.  Id. at 142:13-18, 168:21-25.  Plaintiff also contends that she asked the VA to transfer her to an outpatient unit, which she presumed would be less physically demanding.  See Complaint of Employment Discrimination, Oct. 1, 2002, attached hereto as Exhibit J.  The VA, however, could not transfer Plaintiff to such a position because none was available.  McVey Aff. at ¶ 13.  Because Plaintiff claimed that she could not perform an essential function of her job, Basset asked Plaintiff to provide the VA with updated medical documentation from her physician detailing her current physical limitations and restrictions.  Id. at ¶ 14. Further, because Plaintiff was complaining of extreme pain, the VA placed Plaintiff on paid administrative leave, which allowed Plaintiff to obtain the updated medical documentation and ensured her safety while she and the VA discussed her impairments and what, if any, accommodations would allow her to perform her job. Id. at ¶ 15.

Shortly thereafter, Plaintiff returned to Dr. Provost who diagnosed her with bursitis from excessive walking.  Enica Depo. at 142:13-18, 168:21-25.  Plaintiff also obtained an updated medical noted from Dr. Provost, which she provided to the VA on

9

or about October 2, 2002.  Id. at 142:18-19.  Dr. Provost's note
stated that Plaintiff recently developed pain in her hip and
recommended that the VA transfer Plaintiff to an outpatient
facility that would eliminate the stress to the arthritic changes
in her right lower extremity.  See Med. Rec. Progress Note, dated
Oct. 2, 2002, attached hereto as Exhibit K.  The VA, however, did
not have such a position available, and, therefore, discussed
with Plaintiff's counsel alternative accommodations.  McVey Aff.
at ¶ 17.  After discussing Plaintiff's walking restrictions with
her counsel, the VA, with Plaintiff's counsel's approval,
provided Plaintiff with an electric scooter on November 4, 2002,
when Plaintiff returned to work.  Enica Depo. 146:24-25.  The
scooter not only successfully addressed Plaintiff's problems with
walking, but Plaintiff reported that she was happy that she could
do her rounds and work with the patients without any pain.  Id.
at 144:23-145:3. During, September 9, 2002, to November 4, 2002,
when Plaintiff was on administrative leave, she continued to
receive full pay and benefits.  Id. at 172:5-7.

   **F.  PLAINTIFF FILES A WORKERS COMPENSATION CLAIM FOR AN
       INJURY SHE ALLEGEDLY SUSTAINED WHILE PERFORMING HER
       WALKING ROUNDS**

   Plaintiff filed a Workers Compensation claim against the VA
for her bursitis, which she allegedly sustained on September 9,
2002.  See Dec. of the Hrg. Rep., dated May 12, 2003, attached
hereto as Exhibit L.  On January 26, 2003, the DOL, Office of

10

Workers' Compensation Programs District Office denied Plaintiffs request for compensation.  Id.  Plaintiff disagreed with the decision and requested an oral hearing in front of a hearing representative.  Id.  The hearing representative denied the request for an oral hearing but conducted an investigation.  Id. After the investigation, the hearing representative reversed the District Office's decision on May 12, 2003, stating that Plaintiff's excessive walking at work caused her to develop bursitis, and, therefore, entitled her to receive worker's compensation benefits.  Id.

G.  **THE VA PLACES PLAINTIFF ON ADMINISTRATIVE LEAVE FOR A SECOND TIME**

After Plaintiff returned to work on November 4, 2002, Plaintiff alleges that her supervisors asked her to perform various duties that she could not physically perform.  Enica Depo. at 145:6-20.  Plaintiff admits, however, that once she voiced an objection to performing these tasks, her supervisors did not require her to complete the tasks, nor did they discipline her.  Id.  at 145:6-20, 147:2-149:13.  However, because Plaintiff was asserting additional physical limitations that she had not discussed with the VA, on December 30, 2002, the VA, in the best interests of Plaintiff and its psychiatric patients, placed Plaintiff on paid administrative leave pending the receipt of updated medical documentation on the entire scope of Plaintiff's restrictions and limitations.  McVey Aff. at ¶ 19.

Plaintiff remained on administrative leave, with full pay and benefits, until April 7, 2003. Enica Depo. at 164:14-20.

**H.   THE VA PLACES PLAINTIFF IN THE TELEPHONE ADVISORY PROGRAM**

On April 7, 2003, Plaintiff returned to work in the Telephone Advisory Program ("TAP") at the Jamaica Plain campus. Id. at 165:15-17. In the TAP, Plaintiff communicates with patients, pharmacies, and primary care providers by telephone, and does not have to perform physical labor, such as walking, lifting, bending, or carrying. Id. at 165:24-167:7. Plaintiff admits that since the VA placed her in the TAP, she has not had to perform any duties that she is physically unable to do. Id. at 167:12-15. Further, Plaintiff's pay and benefits have not decreased. Id. at 172:5-7. Plaintiff remains in the TAP today.

**I.   PLAINTIFF APPLIES FOR A POSITION AS A CLINICAL NURSE SPECIALIST**

In December 2002, Dr. Robert W. McCarley sought the authority from the VA to hire a full-time Nurse Practitioner in the Outpatient Mental Health Clinic on the Jamaica Plain campus, which he eventually received. See Network Resource Request, dated April 5, 2002, attached hereto as Exhibit M. From February 14, 2003, to March 7, 2003, the VA posted an announcement for the Nurse Practitioner position, to which seven people from the VA's applicant supply file were referred. See Vacancy Announcement No. 03-90BHS, attached hereto as Exhibit N. Dr. McCarley,

12

however, decided not to fill the Nurse Practitioner position,
but, instead, to recruit a Clinical Nurse Specialist.  See
Affidavit of William Warfield ("Warfield Aff.") at ¶ 7, attached
hereto as Exhibit U.  Plaintiff did not apply for the Nurse
Practitioner position.  Enica Depo. at 183:1-184:3.

From June 5, 2003, to June 26, 2003, the VA posted the
Clinical Nurse Specialist vacancy announcement.  See Vacancy
Announcement No. 03-153BHS, attached hereto as Exhibit O.
Plaintiff and one other person applied for the Clinical Nurse
Specialist position.  Enica Depo. at 184:23-185:9; see also
Warfield Aff. at ¶ 9.  Again, Dr. McCarley decided not to fill
the vacancy.  See Resource Request, attached hereto as Exhibit P.
 Dr. McCarley determined that it was more economical for the VA
to combine the funds available for the Clinical Nurse Specialist
position with other funds available to hire a psychiatrist for
the Clinic.  Id.  Indeed, Dr. McCarley determined that this
course of action would save the VA $39,000 a year.  Id.  After
the VA approved Dr. McCarley's request to hire a psychiatrist, it
posted the position in different mediums.  See Vacancy
Announcement No. 03-197BHS and FCS Posting, dated October 2003,
attached hereto as Exhibit Q.  On March 9, 2004, Dr. McCarley
selected Dr. Harriet Scheft for the vacant psychiatrist position.
See Memorandum from Dr. McCarley, dated March 9, 2004, attached
hereto as Exhibit R.  Plaintiff has testified that she has never

13

had any direct contact with Dr. McCarley.  Enica Depo. at 189:11-22.

### J.  PLAINTIFF FILES HER SECOND EEO COMPLAINT

On August 21, 2002, Plaintiff contacted an EEO counselor claiming a failure to provide reasonable accommodations to her handicaps.  EEO's Counselor's Report, Oct. 10, 2002, attached hereto as Exhibit S.  EEO counseling did not result in the resolution of the complaint, therefore on October 1, 2002, Plaintiff filed a second EEO formal complaint, alleging that the VA violated the Rehabilitation Act by alleging discrimination based on disability.  See Exhibit J.  On March 11, 2004, the EEOC found that Plaintiff had failed to establish that she had been discriminated against based on her disability.  Id. at 190:9-18.  Plaintiff has subsequently filed the instant action on June 28, 2004.

## III. ARGUMENT

### A.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND PLAINTIFF HAS FAILED TO ADDUCE ADMISSIBLE EVIDENCE TO SUPPORT HER CLAIMS

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Barbour v.

14

Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir. 1995)(quoting Fed. R. Civ. P. 56).  In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor or either side."  National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant."  Smith v. F.W. Morse & Company, Inc., 76 F.3d 413, 428 (1st Cir. 1996).

    Once the moving party makes a proper showing as to the "'absence of evidence to support the non-moving party's case,' the burden of production shifts to the non-movant."  Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993)(citation omitted).  "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  Moreover, a plaintiff cannot defeat a summary judgment motion through conclusory statements, mere speculation or conjecture.  J. Geils Band Employee Benefit

15

Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir.
1996); see also Horta v. Sullivan 4 F.3d 2, 11 (1st Cir. 1993).
Even in employment discrimination cases, summary judgment is
appropriate where the non-movant relies "upon conclusory
allegations, improbable inferences, and unsupported speculation."
See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st
Cir. 1990).  Because Plaintiff cannot meet that burden with
respect to her claims, the Court must grant summary judgment,
dismissing the Complaint in its entirety.

**B.   THE VA IS NOT COLLATERALLY ESTOPPED FROM LITIGATING
        PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM**

Plaintiff has moved for partial summary judgment on her
failure to accommodate claim, on the grounds that a 2003 DOL
workers compensation decision in favor of Plaintiff collaterally
estops the VA from litigating the issue whether it failed to
provide Plaintiff with a reasonable accommodation.  Specifically,
Plaintiff contends that the doctrine of affirmative collateral
estoppel applies to the instant case because the workers
compensation officer purportedly made findings sufficient to
prove that the VA violated the Rehabilitation Act.  Plaintiff's
argument fails for several reasons.  Accordingly, the Court
should deny Plaintiff's motion for summary judgment.

**1.    The Cases Relied On By Plaintiff Do Not Stand For the Proposition Stated**

The doctrine of collateral estoppel provides "that when an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether the same or different claims." Rogers v. Town of Northborough, 188 F.Supp.2d 10, 13 (D. Mass. 2002). Before a court may apply collateral estoppel, it must first determine: "1) that the issue at stake [is] identical to the one involved in the prior litigation; 2) that the issue has been actually litigated in the prior litigation; and 3) that the determination of the issue in the prior litigation [has] been a critical and necessary part of the judgment in that earlier action." Walker v. Kerr-McGee Chemical Corp., 793 F. Supp. 688, 694 (N.D. Miss. 1992)(citing Stovall v. Price Waterhouse Co., 652 F.2d 537, 540 (5th Cir. 1981)). The public policy behind this doctrine is to "conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations." Stoddard v. Ling-Temco-Vought, Inc., 513 F. Supp. 335, 337 (D.C. Cal. 1981).

Plaintiff places heavy emphasis on Taylor v. Secretary of Navy, 852 F. Supp. 343 (E.D.Pa. 1994), and Calero-Cerezo v. United States Department of Justice, 355 F.3d 6 (1st Cir. 2004), in support of her argument that the workers compensation decision

17

bars the VA from litigating her failure to accommodate claim in
the Court.  Plaintiff's reliance on these cases, however is
misplaced.  Although both cases concern claims of disability
discrimination, neither case makes any mention of the collateral
estoppel doctrine.[1]

    In Taylor Plaintiff, a former employee of the Philadelphia
Naval Shipyard, moved for partial summary judgment on a claim of
handicap discrimination against his employer.  852 F. Supp. at
343.  The Eastern District of Pennsylvania granted partial
summary judgment because the Navy had violated § 501 and § 504 of
the Rehabilitation act by assigning Plaintiff to temporary
positions instead of an appropriate permanent position after it
became apparent that Plaintiff's medical restrictions were
indefinite.  852 F. Supp. at 353-354.  While the court's decision
mentions the fact that a workers compensation representative held
three years earlier that Plaintiff could perform light duty work,
the Court's holding was based on its own findings of fact.  See

_____

        [1]    Plaintiff also sites a myriad of other cases, all
that are distinguishable from the instant case. Bath Ironworks v.
U.S., 125 F.3d 18 (1st Cir. 1997)(holding that state workers'
compensation decision should have been given collateral estoppel
effect at federal workers' compensation hearing); Alba v.
Raytheon, 809 N.E.2d 516 (Mass. 2004)(Massachusetts Supreme Court
allowed use of defensive collateral estoppel in claim of handicap
discrimination where administrative judge in workers compensation
hearing had already determined that employee's suicide was not
caused by his employment and Plaintiff did not contend that she
had already been given a fair chance to litigate the issue).

Id.

In Calero-Cerezo, the Court of Appeals for the First Circuit never made any mention of an administrative hearing or process that precluded the defendant from litigating similar issues. 355 F.3d 6. Instead, the Court overturned summary judgment in favor of the defendant because Plaintiff had raised genuine issues of material fact whether the employee was a qualified person, and received a reasonable accommodation. Id. In sum, neither case stands for the proposition for which Plaintiff cites.

> **2. Because The Workers Compensation Hearing Is Not Sufficiently Similar to the Adjudication Process of the Federal Courts, Collateral Estoppel Does Not Apply**

Plaintiff fails to demonstrate that the procedures and quality of a workers compensation process are sufficiently similar to the federal court process so that collateral estoppel may apply, nor could she, based upon the workers compensation process. This fact is fatal to Plaintiff's argument. The Supreme Court has emphasized that courts should not apply collateral estoppel and, instead, make a new determination of an issue or claim when there are "differences in the quality or extensiveness of the procedures followed in the two courts. . . ." United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966); Newsport News Shipbuilding & Dry Dock Co. v. Director, OWCP, 583 F.2d 1273, 1278-79 (4th Cir. 1978) (differences in burden of proof between first and second

proceeding prevent use of collateral estoppel).  Moreover, the
quality and extensiveness of the procedures followed by the DOL
and the federal court are indeed very different.  For example,
unlike a trial in federal court, a claimant may introduce hearsay
evidence in a worker's compensation hearing or investigation to
support her claim.  <u>See</u> Federal Employees' Compensation Act
Procedure Manual, 2-0809-10(2)(c), attached hereto as Exhibit T;
<u>see also</u> 5 U.S.C. § 8124(b)(2).[2]  Also, the government typically
does not have counsel in these proceedings, as was the case here;
during these proceedings the government is represented by the
agencies' personnel offices.  Accordingly, as a matter of law,
the worker's compensation decision cannot preclude Defendant from
litigating the issues of this case.  <u>Cf.</u> <u>Beech Aircraft Corp. v.</u>
<u>Rainey</u>, 488 U.S. 153, 167 (1998).

> **3.    Collateral Estoppel Only Applies To Those Issues
> The Parties Litigated And Were Essential To The
> Prior Proceeding.**

Assuming *arguendo* that a workers compensation decision could
collaterally estop a defendant from "re-litigating" issues in

---

[2]    5 U.S.C. § 8124(b)(2) states: "In conducting the
[workers' compensation] hearing, the representative of the
Secretary [of Labor] is not bound by common law or statutory
rules of evidence, by technical or formal rules of procedure, or
by section 554 of this title except as provided by this
subchapter, but may conduct the hearing in such manner as to best
ascertain the rights of the claimant.  For this purpose, he shall
receive such relevant evidence as the claimant adduces and such
other evidence as he determines necessary or useful in evaluating
the claim."

this Court, the collateral estoppel doctrine limits Plaintiff to those issues that the parties litigated and were essential to the judgment in the previous proceeding.  See Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc., 567 F. Supp. 537, 539-540 (D.C.N.Y. 1982); Rogers v. Town of Northborough, 188 F.Supp.2d at 13.  Collateral estoppel is not appropriate when there is debate or a reasonable doubt whether the parties litigated an issue in the previous proceeding.  Memphis-Shelby County Airport Auth. v. Braniff Airways, Inc., 783 F.2d 251, 1283, 1289 (5th Cir. 1986); McNellis v. First Fed. Sav. & Loan Ass'n, 364 F.2d 251, 257 (2d Cir. 1966).  It is unclear from Plaintiff's brief exactly which findings from the workers compensation decision Plaintiff believes the Court should apply to the instant case. Nevertheless, it is inappropriate to apply collateral estoppel under the circumstances presented in the instant case.

The only issue litigated before the Office of Workers' Compensation Programs was "whether the [Plaintiff's] condition [i.e. bursitis] is casually related to the work injury of September 9, 2002."  See Exhibit L; see also 5 U.S.C. § 8102(a) (relevant inquiry - with exceptions not relevant here - is whether federal employee suffered a disability "resulting from personal injury sustained while in the performance of his duty.").  The parties did not fully litigate any of the facts

necessary to prove a failure to accommodate claim.[3]  Indeed, the
definitions of disability under the Federal Employees
Compensation Act and the Rehabilitation Act differ significantly.
Compare 20 C.F.R. §§ 10.5(f) and 10.400 with 42 U.S.C. §
12102(2).[4]  Moreover, the workers' compensation decision did not
conclude that the VA failed to accommodate Plaintiff in violation
of the Rehabilitation Act.[5]  Id.  Accordingly, Plaintiff's
motion, premised solely on the collateral estoppel doctrine,

_____

[3]     To establish a prima facie case for a failure to
accommodate claim under the Rehabilitation act, Plaintiff must
show (1) that she suffers from a disability within the meaning of
the statute, (2) that she is a qualified individual in that she
is able to perform the essential functions of her job, with or
without reasonable accommodation, and (3) that, despite its
knowledge of her disability the VA did not offer a reasonable
accommodation for the disability.  See Calero-Cerezo v. United
States DOJ, 355 F.3d at 20.

[4]     Under the FECA, disability means "the incapacity,
because of an employment injury, to earn the wages the employee
was receiving at the time of injury."  For purposes of the
Rehabilitation Act, a disability is a physical or mental
impairment that substantially limits one or more major life
activities, a record of such an impairment or being regarded as
having such an impairment.  See 42 U.S.C. § 12102(2).  The
analysis of whether Plaintiff has a disability within the meaning
of the Act is based upon three questions: (1) whether she
suffered a physical or mental impairment, (2) whether the life
activity limited by the impairment qualifies as major, and (3)
whether the impairment substantially limited the identified major
life activity.  See Calero-Cerezo, 355 F.3d at 20.

[5]     Plaintiff, however, contends that the decision makes
such a finding in paragraph 15(a), where is states: "[d]uring
[Plaintiff's] attempt to seek accommodation from her employer the
claimant submitted medical evidence from her physicians."  See
Exhibit L.  Clearly, Plaintiff is conflating the plain language
of that paragraph.

should be denied.

**C.    PLAINTIFF CANNOT PROVE HER FAILURE TO ACCOMMODATE CLAIM AS A MATTER OF LAW**

Courts follow a two-step burden shifting analysis in evaluating whether an employer failed to provide adequate accommodation in violation of the Rehabilitation Act. See Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 23-24 (1st Cir. 2004). First, the employee must request an accommodation that is "sufficiently direct and specific" and gives notice that the employee needs a "special accommodation." Id. at 23; Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). If Plaintiff meets this initial burden, then the defendant has the opportunity to prove that the proposed accommodation was not feasible and would constitute an "undue hardship." Cerezo, 355 F.3d at 23. Plaintiff's request for reasonable accommodation may also trigger a duty by the employer to enter an "interactive process with the employee to determine an appropriate accommodation." Id. (citing Reed, 244 F.3d at 262 n. 11.); 29 C.F.R. § 1630.2(o)(3). This interactive process requires open communication by both parties. 29 C.F.R. § 1630.2(o)(3). "[C]ourts should attempt to isolate the cause of the breakdown in the [interactive process] and then assign responsibility so that the '[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown.'" Rowe v. City & County of San Francisco, 186

23

F.Supp.2d 1047, 1051 (N.D. Cal. 2002).

Plaintiff contends that between 1995 until present she has been continuously denied reasonable accommodations for her handicap.[6] The record evidence, however, establishes that Plaintiff made only three requests for accommodation in the relevant time period, all of which the VA adequately responded to. Plaintiff made her first request for accommodations, after years of being able to perform her duties with minimal limitations, in May 2002 when she learned the VA was closing her unit. After Plaintiff provided the VA with medical documentation of her physical restrictions, it is undisputed that the VA discussed these restrictions with Plaintiff and excused her from participating in crisis intervention and "excessive" walking. Plaintiff made her second request for accommodations in September 2002, when she notified management that she could not perform her walking rounds due to pain. After Plaintiff provided the VA with updated medical documentation concerning her limitations in walking, it is undisputed that the VA provided Plaintiff with an

---

[6]    Clearly, Plaintiff is barred from asserting claims dating more than 45 days before she sought EEO counseling on August 21, 2002. See 29 C.F.R. §§ 1614.105(a)(1); see also Velazquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000). Further, Plaintiff filed an EEO complaint on April 9, 1997, claiming disability discrimination, which the EEOC denied on November 24, 1998. Plaintiff did not appeal this decision. Certainly, Plaintiff is also precluded from asserting discrimination dating before her 1997 EEO complaint in the instant case. See 29 C.F.R. § 1614.407(a),(b); Moore v. Potter, 217 F.Supp.2d 364, 372 (S.D.N.Y. 2002).

electric scooter to allow her to perform her job.  It is also undisputed that the scooter successfully addressed her walking restrictions and that Plaintiff's counsel found this accommodation to be reasonable.  In December 2002, the VA initiated the interactive process for a third time when Plaintiff identified new functions that she could not perform, which caused the VA to have legitimate concerns about the safety of Plaintiff and the VA's patients.  Accordingly, the VA placed Plaintiff in a position where she does not have to perform any physical labor.

Admittedly, the VA did not grant Plaintiff's request that the agency transfer her to an outpatient facility.  As stated above, no such position was vacant.  It is well-settled that an employer, particularly in a union environment, is under no obligation to create a position that does not currently exist or terminate another employee to accommodate an employer.  <u>See</u>, <u>e.g.</u>, <u>Phelps v. Optima Health, Inc.</u>, 251 F.3d 21, 27 (1st Cir. 2001).  Moreover Plaintiff is not entitled to an accommodation of her choice.  <u>See</u>, <u>e.g.</u>, <u>Bryant v. Caritas Norwood Hosp.</u>, 345 F.Supp.2d 155, 170 (D. Mass. 2004).  At all relevant times during Plaintiff's employment, the VA worked to accommodate Plaintiff's physical limitations.  Further, even if a supervisor at times asked Plaintiff to perform a duty that she could not do, the VA never disciplined her for refusing to perform the duty. Accordingly, the Court should dismiss Count 1.

D.    **PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW**

Plaintiff engaged in protected activity when she sought accommodations from the VA management in 2002, filed a workers' compensation claim in September 2002, and filed a second EEO complaint on October 1, 2002.  The only arguably adverse employment actions Plaintiff suffered after she began engaging in protective activity occurred when the VA (i) placed her on administrative leave from September 9, 2002, to November 4, 2002, (ii) asked her to perform duties that she could not physically perform when she worked in the Crisis Stabilization Unit in West Roxbury,[7] (iii) placed her on administrative leave from December 30, 2002, to April 7, 2003, and (iv) did not select Plaintiff for the Clinical Nurse Specialist position in 2003.  As discussed below, however, Plaintiff's claim fails as a matter of law.

1.    **Plaintiff Cannot Establish That the VA's Legitimate, Non-Discriminatory Reasons For Its Employment Actions Are Pretexts For Discrimination**

Because Plaintiff cannot produce any direct evidence of retaliatory intent, her claim is subject to the McDonnell Douglas

---

[7]    The incidents when Plaintiff's supervisors allegedly asked her to perform duties that she could not physically perform once the VA transferred her to Crisis Stabilization Unit in West Roxbury however do not constitute adverse employment actions because she never received any discipline or reduction in her pay or benefits. See e.g. Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996)(discharging or demoting the employee, reducing the employee's salary, or divesting the employee of significant responsibilities constitute adverse employment actions).

burden shifting analysis.[8]  See Colburn v. Parker
Hannifin/Nichols Portland Div., 429 F.3d 325, 335-336 (1st Cir.
2005).  Although Plaintiff might arguably establish a prima facie
case of retaliation,[9] she cannot establish that the VA's reasons
for placing her on paid administrative leave and not selecting
her for the Clinical Nurse Specialist position are pretexts for
discrimination.

　　As the record evidence demonstrates, the VA placed Plaintiff
on paid administrative leave on September 9, 2002: (i) to allow
Plaintiff to obtain updated medical documentation on her physical
limitations; and (ii) to ensure that Plaintiff, who was
complaining of severe pain while performing her duties, was safe

---

[8]　　"Under [the McDonnell Douglas] framework, a plaintiff
employee must carry the initial burden of coming forward with
sufficient evidence to establish a prima facie case of . . .
retaliation.  If he does so, then the burden shifts to the
employer 'to articulate some legitimate, nondiscriminatory reason
for the employee's [termination],' sufficient to raise a genuine
issue of fact as to whether it discriminated against the
employee. . . . If the employer's evidence creates a genuine
issue of fact, the presumption of discrimination drops from the
case, and the plaintiff retains the ultimate burden of showing
that the employer's stated reason for terminating him was in fact
a pretext for retaliating against him for having [engaged in
protected activity]."  Hodgens v. General Dynamics Corp., 144
F.3d 151, 160-61 (1st Cir. 1998) (citations omitted) (quoting
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

[9]　　"To make out a prima facie case [for retaliation],
plaintiff must show (1) that he engaged in a protected action . .
.; (2) that he suffered an adverse employment action . . .; and
(3) that there was some possibility of a causal connection
between the employee's protected activity and the employer's
adverse employment action, in that the two were not wholly
unrelated."  Colburn, 429 F.3d at 336 n.10.

while the parties discussed her impairments and what, if any,
accommodations would allow her to perform her job.  The VA placed
Plaintiff on paid administrative leave again on December 20,
2002: (i) to allow Plaintiff, who was then asserting additional
physical limitations that were preventing her from performing her
job duties, to obtain updated medical documentation on her
physical limitations; and (ii) to ensure that Plaintiff and the
VA's psychiatric patients were safe while the parties discussed
her additional impairments and what, if any, accommodations would
allow her to perform her job.  Finally, the record is clear that
Dr. McCarley decided not to fill the Clinical Nurse Specialist
vacancy after he determined that it was more economical for the
VA to combine the funds available for the Clinical Nurse
Specialist position with other funds available to hire a
psychiatrist instead.[10]

       Plaintiff does not, and cannot, establish that the reasons
the VA gave for placing her on administrative leave and not
selecting her for a promotion are a pretext for discrimination.
Plaintiff has failed to provide any evidence, for example, that

_____

       [10]   Moreover, Plaintiff provides no evidence that Dr.
McCarley, who was the decision maker concerning the Clinical
Nurse Specialist position, had any knowledge of her protected
activity.  Indeed, she admittedly never had any interaction with
Dr. McCarley.  This is fatal to her claim that the non-selection
was retaliatory.  See, e.g., Buettner v. Arch Coal Sales Co., 216
F.3d 707, 715 (8th Cir. 2000)(employee must show that decision
maker had actual or constructive knowledge of protected activity
to establish prima facie case of retaliation under Title VII).

(1) the VA held other employees, who did not engage in protected
activity and are similarly situated in all respects, to a
different standard, (2) the VA subjected other employees who
engaged in similar protected activity to adverse employment
actions, or (3) other instances of poor treatment toward her
occurred.  See, e.g., McDonnel Douglas, 411 U.S. at 804; Mesnick
v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991).  The fact
that Plaintiff did not want to be placed on administrative leave
or that she felt she would make a good Clinical Nurse Specialist
does not mean that the VA's reasons are pretextual.  Indeed, "the
courts may not sit as super personnel departments, assessing the
merits - or even the rationality - of employers'
nondiscriminatory business decisions."  See Mesnick, 950 F.2d at
825.  In the absence of any "evidence from which a reasonable
jury could infer, without the most tenuous insinuation," that the
VA's legitimate, non-discriminatory reasons for placing her on
administrative leave and not promoting her to Clinical Nurse
Specialist were pretexts for discrimination, the VA is entitled
to summary judgment on Plaintiff's retaliation claim.  See
Mesnick, 950 F.2d at 826.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Partial Summary Judgment, and, instead, enter summary judgment for the Defendant dismissing Plaintiff's Complaint in its entirety.

Respectfully submitted,

Michael J. Sullivan
United States Attorney

BY:  /s/ Damian W. Wilmot
DAMIAN W. WILMOT
Assistant U.S. Attorney
Moakley Federal Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02110
Dated: January 31, 2005        (617) 748-3398

## CERTIFICATE OF SERVICE

I certify that on January 31, 2006, I caused a copy of the foregoing document to be served on Plaintiff's Attorney, Sanford Kowal, 56 Chestnut Hill Avenue, Boston MA 02135, by first class mail, postage pre-paid.

 /s/ Damian W. Wilmot
DAMIAN W.  WILMOT
Assistant U.S. Attorney

30