# Exhibit H

======================== CHART NOTE ========================================

LC# :   000001929663                      PRINTED ON :  05/21/02   1515
                                           BY :  SCEMML0   SKB4



DO  13ENI

** NOTE: THE FINAL SIGNED COPY OF THIS DOCUMENT IS FILED IN THE     **
**        PATIENT MEDICAL RECORD AND MAY VARY FROM  THIS COPY       **

        LAHEY CLINIC LEXINGTON
        ORTHO

AME:     ENICA,LUCIA
ATE:     05/13/2002
CMC NO.: 1929663

AME: ENICA, LUCIA
C#: 1929663
DMISSION DATE:    /  /
ISCHARGE DATE:    /  /

HYSICIAN: Robert A. Provost, MD The patient returns today,
elating that the Boston VA requires further information, with
 definitive statement about this patient. Please review the
ccompanying statements on May 7, 2002 which review her past
istory.

er diagnoses at the present time include advanced severe
end-stage osteoarthritis of the right knee, bony ankylosis and
osteoarthritis of the right ankle, poliomyelitis with
 riceps palsy of the right leg, leg length inequality, and
   nic degenerative disk disease with sciatica of the left
leg.

It is my opinion that at the present time, she will not have a
full or partial recovery from her disability. I anticipate
that, with the passage of time, it is possible that her
disability may increase. At the present time, it is my opinion
that she will be able to work in her present capacity as a
psychiatric nurse with specific limitations.

It is requested that she not be placed in a position where she
is required to stand for more than 5 minutes at one time to
avoid pressure on the affective extremity. She also is not
eligible to participate in psychiatric crisis intervention due
to these limitations and possible aggravation of the
underlying problems. It is also advised that she not
participate, because of these limitations, in the walking
rounds.

Again, it is stated that these limitations are permanent and
will not improve in the future.

        Robert A. Provost, Jr., MD          PG 3 OF 5

DOD: 5/13/02 MW690/2397755/2857720



**ROBERT A. PROVOST, JR. M.D.**
LAHEY LEXINGTON ORTHOPAEDICS
16 HAYDEN AVENUE
LEXINGTON, MA 02421
TELEPHONE: 781-372-7022
FAX 781-372-7009

# Exhibit I

**Department of**

# Memorandum

**Veterans Affairs**
**VAMC Brockton**

Date: June 28, 2002

From: Karen M. Bassett RN- Coordinator Mental Health Nursing

Subj: Accommodations

To: Lucia Enica RN

After meeting with you, Mr. Warfield, and Ms. McVey, and discussing the scope of practice for a Registered Nurse in the Crisis Stabilization Unit at West Roxbury Campus (see attached) it was agreed that you would provide all functions with the following exceptions/modifications:

1.  You would not participate in the physical aspect of any crisis intervention, such as a response to a Code Green. This did not exclude you from responding, but limited your involvement to non-physical aspects of such a response.

2.  As indicated in the meeting I will ensure that Nursing management at West Roxbury division is aware of this.

3.  If you have any further concerns, please feel free to address them with me, my pager is 617-705-3279.

Karen M. Bassett RN
Coordinator Mental Health Nursing



## Scope of Practice for RNs in Crisis Stabilization Unit (Mental Heath)

1. Provide an initial nursing assessment within one hour of admission and reassessments every additional hour.
2. Implementation of medical orders.
3. Document patient care at least every two hours by exception (i.e. change in patient status).
4. Provide for release instructions/information/education with follow up plans.
5. Provide supervision for self-medication patients and ensure that patients store their medication in a secure manner.
6. Assessment of well patient for release using medically approved criteria, and documenting this assessment.
7. Notifying physician of any change in patient condition and /or need for physician evaluation prior to release.
8. Provide psychiatric consultation to the West Roxbury in-patient units.
9. Make rounds of the psychiatric patients housed on the medical units, when time allows.
10. Respond to Code Green alarms, providing assistance by verbal interventions, assisting with documentation, or directing the use of restraints.
11. Work closely with other members of the Mental Health Team, to provide appropriate care for the psychiatric population.

# Exhibit J

| **VA** Department of Veterans Affairs | **COMPLAINT OF EMPLOYMENT DISCRIMINATION** |

| 1. NAME *(Last, first, middle initial) (Please print)*<br>Enica, Lucia, Ms. | 2. MAILING ADDRESS<br>9 Birch Street<br>Belmont, Ma. 02478 | 3a. WORK TELEPHONE NUMBER *(Include Area Code)*<br>617 323 7700<br>X5177<br>3b. HOME TELEPHONE NUMBER *(Include Area Code)*<br>617 489 8845 |

| 4. ARE YOU:<br>[x] A VA EMPLOYEE<br>[ ] AN APPLICANT FOR EMPLOYMENT<br>[ ] A FORMER VA EMPLOYEE | 5a. JOB TITLE, SERIES AND GRADE<br>Registered Nurse, Grade 2<br>Step 7<br>5b. SERVICE/SECTION/PRODUCT LINE<br>Mental Health | 6. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED VA Medical Center<br>Boston Health Care System<br>West Roxbury Campus<br>1400 V. F. W. Parkway<br>W. Roxbury Ma. 02132 |

**INSTRUCTIONS:** For each employment related matter that you believe was discriminatory you must list the bases *(list one or more of the following)*: **Race** *(Specify)*, **Color** *(Specify)*, **Religion** *(Specify)*, **Sex** *(Male or Female)*, **Sexual Orientation**, **National Origin** *(Specify)*, **Age** *(Provide date of birth)*, **Disability** *(Specify)*, and **Reprisal for prior EEO activity or having opposed discrimination.**

| 7. BASIS | 8. CLAIM(S)<br>*(What employment related claim(s) - personnel action(s), incident(s), or event(s), caused you to file this complaint? Briefly, describe what happened below. Use an additional sheet of paper if necessary.)* | 9. DATE OF OCCURRENCE<br>*(Include the most recent date(s))* |
|---|---|---|
| Disability | See Attached Letter to Atty., Dated September 19, 2002, describing basis of claim, Claim, Date of Occurrence, and Resolution by EEO Counselor, Gregory E. Jone Sr. the terms of which are incorporated by reference herein as to said matters.<br><br><br>DATE FILED 10/1/02 | On or about Aug. 9, 2002 |

10. REMEDIES SOUGHT

See above referenced letter, section 'Resolution'

| 11a. DO YOU HAVE A REPRESENTATIVE?<br>Yes<br>[ ] YES  [ ] NO | 11b. IF "YES," IS HE OR SHE AN ATTORNEY?<br>Yes<br>[ ] YES  [ ] NO | 11c. PROVIDE THE NAME, ADDRESS, AND TELEPHONE NUMBER OF YOUR REPRESENTATIVE<br>Sanford A. Kowal, Esq.<br>56 Chestnut Hill Ave.<br>Boston, Ma. 02135 617 562 8100 |

| 12a. HAVE YOU CONTACTED AN EEO COUNSELOR?<br>[x] YES  [ ] NO | 12b. NAME OF EEO COUNSELOR<br>Gregory E Jones | 12c. DATE OF INITIAL CONTACT WITH ORM<br>9/12/02 |

13. **NOTE:** *If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, listed in item 9, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint, you must explain why you were untimely in seeking EEO counseling or untimely in filing a complaint. (If more space is needed, use an additional sheet of paper.)*

| 14a. HAVE YOU FILED A UNION GRIEVANCE ON ANY CLAIM(S) LISTED ABOVE?<br>No<br>[ ] YES  [x] NO | 14b. IF "YES," LIST THE CLAIM(S) AND DATE GRIEVANCE FILED | 15a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE CLAIMS LISTED ABOVE?<br>No<br>[ ] YES  [x] NO | 15b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED. |

| HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE?<br>[ ] YES  [x] NO | 16b. IF "YES," PROVIDE THE NAME AND ADDRESS | | |

| 17. SIGNATURE OF COMPLAINANT *(Do not print)*<br>Lucia Enica | 18. DATE<br>10/1/02 |

VA FORM
NOV 1999(R)    **4939**                                                                          (JetForm)



**DEPARTMENT OF VETERANS AFFAIRS**
**OFFICE OF RESOLUTION MANAGEMENT**
**LYONS, NEW JERSEY 07939**

FedEx

SEP 19 2002

*In reply refer to:* ORM/08E

Sanford A. Kowal
Attorney at Law
56 Chestnut Hill Avenue
Boston, MA 02135

Dear Mr. Kowal:

I am closing the informal counseling on the matter you presented to this office on behalf of Lucia Encia on August 20, 2002. Her complaint is as follows:

**Basis: Disability (Advanced Severe and stage osteoarthritis of the right knee, bony ankylosis and osteoarthritis of the right ankle, poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disk disease with sciatica of the left leg.)**

**Claim: Failure to provide proper reasonable accommodation**

**Date of Occurrence: On or around August 9, 2002, the aggrieved employee determined that the reasonable accommodation that was provided by the agency on June 28, 2002, has not worked as a reasonable accommodation.**

**Resolution: The aggrieved employee is requesting that immediate action be taken to stop the long walks that are now required to conduct patient rounds and patient consults at the West Roxbury Division of the Boston Health Care System (BHCS). The aggrieved employee is requesting to be reassigned to the Outpatient Mental Health Clinic at West Roxbury in order to eliminate the distance that she has to walk to see patients. The aggrieved employee is also requesting immediate relief from responding to "code greens" on foot so as not to put patients or herself at risk because of her inability to respond quickly or reliably.**

Please notify me no later than September 27, 2002, If the above information is incorrect.

I am enclosing two copies of the Notice of Right to File a Discrimination Complaint (including VA Form 4939). Please sign both copies as indicated by the "sign here tabs", retain one copy for your records and return the *ORM copy* to the following address:

Department of Veterans Affairs
Office of Resolution Management (08E)
151 Knollcroft Road, Building #16
Lyons, New Jersey 07939
Attn: Gregory E. Jones, Sr.

ATTACHMENT

If you decide to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so. Please do not mail the VA Form 4939 to me; your formal complaint must be mailed to one of the addresses listed on the first page of the attached Notice of Right to File a Discrimination Complaint.

If you have any questions or need assistance, please call me on our toll free number at 1 (888)-737-3361.

Sincerely,

Gregory E. Jones, Sr.
EEO Counselor

cc: Lucia Encia
    9 Birch Street
    Belmont, MA 02178

Enclosures:  Notice of Right to File a Discrimination Complaint (VA Form 4939)

# Exhibit K

JUL 09 2003 2:12PM    HP LASERJET 3200

```
============================ CHART NOTE ============================
      LC# :    000001929663                PRINTED ON :  10/09/02  1031
                                           BY :  SCEMMLO   SKB4
```

21002ENICA, LUCIA
* NOTE: THE FINAL SIGNED COPY OF THIS DOCUMENT IS FILED IN THE        **
        PATIENT MEDICAL RECORD AND MAY VARY FROM  THIS COPY           **

         LAHEY CLINIC LEXINGTON
         ORTHO

NAME:      ENICA, LUCIA
DATE:      10/02/2002
LCMC NO.:  1929663

NAME: ENICA, LUCIA
LC#: 1929663
ADMISSION DATE:    /  /
DISCHARGE DATE:    /  /

The patient relates that she has been transferred to another
medical facility which requires increased ambulatory
activities. She now may be required to walk on a daily basis,
up to 2-1/2 miles a day, visiting patients and then returning
to her office. This seems to aggravate her disability. She
also recently has developed pain in her left hip trying to
protect the affected right lower extremity. Aching occurs in
the region of the greater trochanter; no radiation.

Examination today demonstrates full range of motion of the
left hip with exquisite tenderness over the greater
chanter.

X-rays of the left hip do not demonstrate any osteoarthritis.
The right hip demonstrates osteoporosis and early narrowing of
the hip joint, consistent with osteoarthritis.

COMMENT: In view of the patient's continued level of
disability with limited ambulatory capacity, it is recommended
strongly that she be transferred to an outpatient facility
where that would eliminate the repetitive stress to the
advanced arthritic changes in her right lower extremity.

              Robert A. Provost, Jr., MD

                                          ROBERT A. PROVOST, JR. M.D.
                                          LAHEY LEXINGTON ORTHOPAEDICS
DOD: 10/2/2002 MW795/2708855/3170957           16 HAYDEN AVENUE
DOT: 10/2/2002 2337                            LEXINGTON, MA 02421
                                          TELEPHONE: 781-372-7022
CC: 2386:Krutt, MD, Kenneth A.                 FAX: 781-372-7009

============================ END OF DOCUMENT ============================



PG 1 OF 5

# Exhibit L

### U.S. DEPARTMENT OF LABOR
### Office of Workers' Compensation Programs

DECISION OF THE HEARING REPRESENTATIVE

*In the matter of the claim for compensation under Title 5, U.S. Code 8101 et. seq. of Lucia Enica, Claimant; Employed by the Department of Veterans Affairs in Boston, Massachusetts. Case No. 012011872.*

*Merit consideration of the case file was completed on May 12, 2003. Based on this review, the decision of the District Office dated January 26, 2003 has been reversed for the reasons set forth below.*

The issue for determination is whether the claimant's condition is causally related to the work injury of September 9, 2002.

The claimant, born December 14, 1952, is employed as a Nurse for the Department of Veterans Affairs in Boston, Massachusetts. On September 9, 2002, she filed timely notice of a traumatic injury sustained on the same date as she felt leg and back pain after walking an excessive distance at work. The claimant stopped work on September 3, 2002.

The claimant has a pre-existing condition of severe end-stage osteoarthritis of the right knee, bony anklyosis and osteoarthritis to the right ankle; poliomyelitis with quadriceps palay of the right leg, leg length inequality, and chronic degenerative disc disease with sciatica of the left leg. Dr. Robert Provost recommended that she should not stand more than five minutes and limit walking.

Prior to filing the claim, on June 28, 2002, the agency indicated it would accommodate her need for restricted duty due to her pre-existing condition.

On September 9, 2002, Dr. Kenneth Krutt stated that the claimant has left hip bursitis due to excessive walking combined with her right leg issues. He noted the prior history of polio and right leg deformity.

On September 16, 2002, Dr. Provost noted the back pain resolved but the bursitis persisted. He indicated that the situation would become worse with her continued job requirements.

On October 2, 2002, Dr. Provost described the claimant's transfer to another medical facility that required walking up to two and a half miles per day which aggravated her disability. He recommended transfer to another facility to eliminate the repetitive stress to the right lower extremity.

On October 21, 2002, the agency denied the request for a transfer to another facility but instead offered to provide the claimant with a scooter. The claimant currently uses a scooter to ambulate from station to station.

On October 29, 2002, Dr. Provost released the claimant to return to work effective November 4, 2002.

By letter dated November 2, 2002, the Office requested additional factual and medical evidence from the claimant.

On January 26, 2003, the Office denied the claim for the reason that the evidence failed to establish that the claimant's condition was causally related to her federal employment.

The claimant disagreed with the decision and requested an oral hearing before an OWCP representative. I find that this case is not in posture for a hearing. Based on my review of the file, the decision of the District Office dated January 26, 2003 should be reversed.

An award of compensation may not be based on surmise, conjecture, speculation or the claimant's belief of causal relationship.[1] The claimant must present rationalized medical opinion evidence, based on a complete factual and medical background, showing causal relationship.[2] The mere manifestation of a condition during a period of employment does not raise an inference of causal relationship between the condition and the employment.[3] Neither the fact that the condition became apparent during a period of employment nor the claimant's belief that the employment caused or

---

[1] *William Nimitz, Jr.*, 30 ECAB 567, 570 (1970); *Miriam L. Jackson Gholikely*, 5 ECAB 537, 538-39 (1953).
[2] *Mary J. Briggs*, 37 ECAB 578, 581 (1986); *Joseph T. Gulla*, 36 ECAB 516, 519 (1985).
[3] *Edward E. Olson*, 35 ECAB 1099, 1103 (1984).

---

aggravated his condition is sufficient to establish causal relationship.[4]

The claimant has the burden of establishing by the weight of the reliable, probative and substantial evidence that her condition was caused or adversely affected by her employment. As part of this burden she must present rationalized medical opinion evidence, based on a complete factual and medical background, showing causal relation.[5]

In the present case, the claimant cited excessive walking in her position as a nurse as being the cause of her back and leg pain. During her attempt to seek accommodation from her employer, the claimant submitted medical evidence from her physician, Dr. Provost, which noted her pre-existing conditions and recommended that she be placed in a position that did not require excessive standing or walking.

The claimant filed her claim after walking excessively on September 9, 2002 while performing her duties. She sought treatment with Dr. Krutt who diagnoses bursitis of the left hip due to excessive walking in combination with the pre-existing right leg conditions. Dr. Krutt referred the claimant back to Dr. Provost whose reports provided the history of walking at work with pain in the back into the left hip.

As of September 16, 2002, the back pain had resolved but the claimant continued with complaints in the left hip. Dr. Provost noted that since the claimant's significant right knee degeneration has created the problems with the left hip and continuing to work in the same environment will only worsen the situation.

On October 2, 2002, Dr. Provost noted x-rays of the left hip which showed no osteoarthritis, yet he again recommended that she avoid repetitive stress to the right lower extremity. He released her to return to work effective November 4, 2002, and the claimant reports that she now uses a scooter to ambulate in her position as a nurse.

In light of the above, I find that the claimant has established that her excessive walking in her position resulted in a left hip condition. Her pre-existing right leg condition made her

---

[4]*Bruce E. Martin*, 35 ECAB 1090, 1093 (1984); *Dorothy P. Goad*, 5 ECAB 192, 193 (1952).
[5]*Arlonia B. Taylor*, 44 ECAB 591 (1993).

more susceptible to the left hip problem due to overcompensation as supported by Dr. Provost.

Upon return of the file, the Office should accept the claim for left hip bursitis and pay the appropriate entitled benefits.[6]

Consistent with the above findings, the decision of the District Office dated January 26, 2003 is REVERSED and the case file returned for further action as described above.

DATED: MAY 1 2 2000
WASHINGTON, D.C.

CHRISTINA STARK
Hearing Representative
For
Director, Office of Workers'
Compensation Programs

---

[6]As the evidence of record did not diagnose a low back condition, and the claimant's low back pain resolved as of her September 16, 2002 medical appointment, the low back condition is not accepted. Should the claimant wish to purse the low back condition, she would need to submit medical evidence which includes a history of injury, findings on low back examination, diagnosis, and physician's opinion on the causal relationship between the low back condition and her federal employment. The Office may then consider updating the accepted condition.

# Exhibit M



Network
Resource Request
(Revised 4/5/02)

Date Initiated: December 18, 2002

From:

| Terence M. Keane, PhD. | Robert W. McCarley, MD | Boston Healthcare System |
| Name | Local Service Line Manager | Facility |

To: Network Service Line Manager
Through: Local Human Resource
         Local Resource Board

Check appropriate boxes and provide information requested below:

    ☐ Vacant Position: _____
                    (Title, Series, Grade)
      ☐ VICE: _____
                (Employee Name)
      ☐ Date Vacated:

    ☒ New Position: **Nurse Practioner – III Step 5**
               (Title, Series, Grade)

    ☐ Temporary/Contract Position

    ☒ Resources (**$ amount**[1]) $ 67,452

    ☐ Other (please specify)
        ☐ Eliminate position
        ☐ Recruitment bonus
        ☐ Retention allowance
        ☐ Relocation expenses
        ☐ Reclassification
        ☐

1.  Workload documentation (Describe in detail and with supporting data the compelling reasons, including workload data across the VISN, that supports the resource request. Include national or regional benchmarks if available). Comparisons to other Medical Centers in the VISN as well as similar sized and typed facilities nationally.

*A full time nurse practitioner (NP) position is requested as part of the staffing needed to implement a new consolidated Outpatient Mental Health Clinic and the future Crisis Stabilization Clinic (CSC). The position would be for an NP who has prescription privileges and experience in prescribing for*

---

[1] Salary costs are based upon the following
    • For GS salary cost is set at step 4 of the grade
    • For FWS salary cost is set at step 2 of the grade
    • For Title 38 salary cost is set at the average salary for the occupation

*psychiatric patients. At present, the Jamaica Plain campus has specialty outpatient PTSD and Substance Abuse clinics, but it does not have an outpatient clinic for general mental health or psychiatric patients. The CSC, which will be developed as a major component of the general mental health clinic to be made operational, is to provide a time limited, but intensive outpatient program for psychiatric patients who have acute symptomatology, need immediate attention, but are not at such risk that they could not be treated in an alternative setting to an inpatient facility. The reasons that support this request are closely linked to the reasons for establishing the clinic. Behavioral health care systems (the VA system included) are under great pressure to contain and reduce costs while maintaining or improving the quality of mental health services. Given that inpatient psychiatric beds require round-the-clock staffing as well as other 24-hour services, they are considered a relatively expensive way to provide care. There is a clear impetus to divert hospitalizations when possible, and to reduce lengths of inpatient stays. The CSC will utilize a modified "crisis intervention" model of care as an alternative to hospitalization when appropriate. It will emphasize relatively rapid admission, and accept referrals from such sites as the 23 hours West Roxbury Crisis Stabilization Unit, the WR Psychiatric ER, the Jamaica Plain Urgent Care Clinic, and the Primary care Clinics at JP. Patients will be in the clinic for a period of 2-4 weeks during which time they will have a combination of group and individual psychotherapeutic interventions as well as psychopharmacological treatment or medication adjustment. The focus of the psychotherapeutic treatment will be on developing and supporting the problem solving and coping skills that will enable patients to regain and advance their baseline level of functioning. Patients with major mental illness – the population served by this clinic – will clearly need psychotropic medication management or adjustment to assist them in re-compensating or in dealing with the anxiety, depression, and stress associated with a crisis. The Nurse Practitioner will fulfill this function and be available to assess patients' medical concerns. Mental Health, Jamaica Plain Campus lost 2 Physicians (1.875 FTEE) in June and September. This request is to replace one of these two positions (VICE Mayer).*

2. What Local alternatives were attempted to accommodate the staffing shortage?

*At present, the specialized CSC clinic has been assigned one full time Psychologist (who will have both clinical and administrative duties), and a clinical social worker (who works 3.5 days/week and will divide her clinical duties between the CSC and the Urgent Care Clinic). There is a clear need for a Nurse Practitioner to prescribe psychotropic medications and be available to investigate patients' medical concerns under the expanded consolidated Mental Health clinics that will be located on the 4th floor.*

3. What VISN Care Line alternatives were attempted to accommodate the resources shortage
   a) Can workload be moved from one facility to another within the care line?
      ☐ Yes      ☒ No

   b) Can resources be shifted from one facility to another to accommodate the workload?
      ☐ Yes      ☒ No

4. What are the consequences/impact if the resources are delayed or not provided.
*With the move toward the consolidated Mental Health Outpatient Clinics and the need to reduce inpatient stays to maximize resource utilization this position needs to be in place as soon as possible.*

5. Has the Network Service Line Manager Concurred with this request?
   ☒ Yes      Date: 12-18-02      ☐ No

USA 00027

6. Has the Local Resource Board concurred with this request?
   ☐ Yes    Date:                ☐ No

7.   What is the total cost of this proposal (include equipment, such as computers, printers, fax, office
     furniture etc. requests) --please attach the following form:  "Staffing Needs Equipment form".)
*No additional specialized equipment is needed to institute this program.  Therefore only salary cost
are involved.*

USA 00028

# Exhibit N

ailMan message for LEITAO,ANNA M  PERSONNEL STAFFING SPECIALIST
rinted at BOSTON.MED.VA.GOV  02/14/03@07:54
ubj: Reassignment Opportunity  [#45523559] 02/14/03@07:54  42 lines
rom: LEITAO,ANNA M  In 'IN' basket.    Page 1
--------------------------------------------------------------------------------
acancy Announcement # 03-90 BHS

pens: 2/14/03
loses: 3/7/03

o:  Nurse Practitioners

he Mental Health Service, Jamaica Plain Division, is recruiting for a
ull-time Nurse Practitioner (APN) whose scope of practice includes
rescribing, administering, and evaluating pharmacological (particularly
sychopharmacological) and non-pharmacological treatment regimens in
ccordance with approved formulary. The work schedule of the position
ill be Monday through Friday, 8:00 AM - 4:30 PM. The selectee will be
ssigned to the Jamaica Plain Campus with a primary assignment in an
ndependent mental health clinic (the Behavioral Health/Crisis
ntervention Clinic).

andidates must be APNs from an NLN or regionally accredited school of
ursing, and must be licensed or otherwise recognized as a Nurse
ractitioner in a State, and maintain full and current certification as a
urse Practitioner from the American Nurses Association or other
ationally recognized certifying body. Recent experience in treating
atients with acute psychiatric disorders is preferred. The individual
elected must possess excellent communication and interpersonal skills
ith the ability to function well under pressure. He/she must be able to
ork collaboratively with the clinic director and other multidisciplinary
taff including clinical psychologists, a supervising psychiatrist,
ocial workers, and other disciplines.

esponsibilities will include conducting health and physical assessments,
rdering and interpreting laboratory and diagnostic studies and
rocedures, treating psychiatric disorders with medications, and engaging
n psychotherapeutic interventions including individual, group, and
amily interventions. As a member of the clinic senior professional team,
he APN will work closely with other mental health personnel in an
ngoing effort to maintain an effective therapeutic program and
nvironment in the clinic.

ll interested parties must submit a resume, and copies of their last
hree proficiencies to Anna Leitao, Human Resources Specialist, Human
esources (05), VA Boston Healthcare System, 150 940 Belmont Street,
rockton, MA 02301, by close of business 3-7-03.

USA 00029

# Exhibit O

MailMan message for LEITAO,ANNA M   PERSONNEL STAFFING SPECIALIST
Printed at BOSTON.MED.VA.GOV  06/05/03@11:08
Subj: Reassignment Opportunity  [#47408649] 06/05/03@11:08  43 lines
From: LEITAO,ANNA M  In 'IN' basket.    Page 1
--------------------------------------------------------------------------------
Jean,

Please forward this message to all RN'S on station.

Vacancy Announcement # 03-153 BHS
Opens: 6/5/03
Closes: 6/26/03

The Mental Health Service, Jamaica Plain Division, is recruiting for a
full-time Clinical Nurse Specialist whose scope of practice includes
prescribing, administering, and evaluating pharmacological (particularly
psychopharmacological) and non-pharmacological treatment regimens in
accordance with approved formulary. The work schedule of the position
will be Monday through Friday, 8:00 AM - 4:30 PM. The selectee will be
assigned to the Jamaica Plain Campus with a primary assignment in an
independent mental health clinic (the Behavioral Health/Crisis
Intervention Clinic).

Candidates must be APNs from an NLN or regionally accredited school of
nursing, and must possess a Masters degree from an academic program
accredited by the NLNAC or CCNE with a major in the clinical nursing
specialty to which the nurse is assigned. Recent experience in treating
patients with acute psychiatric disorders is preferred. The individual
selected must possess excellent communication and interpersonal skills
with the ability to function well under pressure. He/she must be able to
work collaboratively with the clinic director and other multidisciplinary
staff including clinical psychologists, a supervising psychiatrist,
social workers, and other disciplines.

Responsibilities will include conducting health and physical assessments,
ordering and interpreting laboratory and diagnostic studies and
procedures, treating psychiatric disorders with medications, and engaging
in psychotherapeutic interventions including individual, group, and
family interventions. As a member of the clinic senior professional team,
the Clinical Nurse Specialist will work closely with other mental health
personnel in an ongoing effort to maintain an effective therapeutic
program and environment in the clinic.

All interested parties must submit a resume, and copies of their last
three proficiencies to
Anna Leitao, Human Resources Specialist, Human Resources (05), VA Boston
Healthcare System, 940 Belmont Street, Brockton, MA 02301, by close of
business 6/26/03.

USA 00031

# Exhibit P

<u>Resource Request</u>

From:  Robert W. McCarley, M.D., Local Care Line Manager, Boston Healthcare System

To:  Network Resource Board
Through:  Network Service Line Manager
           Local Human Resource
           Local Resource Board

Check appropriate boxes and provide information requested below:
                                    Vacant Position: _____
        (Title, Series, Grade) and (see below)
                            ☒ New Position: 1.0 FTEE VM15-10
                                             (Title, Series, Grade)
                            ☐ Temporary/Contract Position

                            ☐ Resources ($ amount*) $134,000/yr + fringes

                            ☐ xOther (please specify)
                                    x☐ 2 positions eliminated for one recruit
                                    ☐ Recruitment bonus
                                    ☐ Retention allowance

                            ☐ Reclassification
                            _____

1.  Workload documentation

**This is a request to fill a critical need for a board-certified psychiatrist with additional qualifications in addiction for the VA Boston Healthcare System. Responsibilities would include management and service in the addictions program at the JP campus. More specifically the person would be charged with managing and providing psychiatric care, including psychopharmacology, in the JP SARRTP. One of the main charges would be to bring the Brockton campus and the JP campus SARRTPs under the same set of protocols and procedures, including reducing the average length of stay to a target of 21 days. The psychiatrist also would be responsible for psychiatric coverage of the JP Transitional Residences (TRs). In the JP campus outpatient mental health clinic the psychiatrist would also have management and service responsibilities for the addictions clinic, and for coordination with the addictions program at Causeway.**

| JP Campus | Comment |
|---|---|
| **Jamaica Plain (JP) SARRTP** | |
| LOS | 34 Days |
| Mean Age | 48 – 50 years |
| CENSUS | 16-18 Patients |
| Admissions/Year | 160 – 180 |
| Referred from: | Brockton Detox & other sites |
| Discharged to: | TR, Brockton Domiciliary, Crescent House in Lowell, & other sites |

USA 00004

| Transitional Residences | |
|---|---|
| Two residences for males | Pharmacotherapy; Females are treated in Women's Clinic |
| LOS | 9 months |
| Mean Age | 48-50 |
| CENSUS | 20 |
| Admissions/Year | 25 |
| Referred from: | JP SARRTP, REACH, RISE, Bedford Dom |
| Discharged to: | Various sites – Independent Housing |
| | |
| | |
| **Mental Health Clinic** | |
| Many Patients are being referred. | New Clinic needs to be set up. |
| | |

2. What Local alternatives were attempted to accommodate the staffing shortage?
A Fellow in Addictions Psychiatry had covered JP SARRTP and the Transitional Residences through 6/30/03. There is no Fellow available for the new academic year that began 7/1/03. Short-term coverage (3 months) has been worked out utilizing a combination of staff from Brockton and the JP OP Psychiatry Clinic. The outpatient staff psychiatrists are covering on a temporary basis, but this is leaving less time for them to see their outpatients. Furthermore, none of them are specialists in addiction psychiatry. (If there is no prompt recruitment for this requested position, after September other considerations for intermediate term coverage might be a temporary increase in hours of an existing part-time psychiatrist (no volunteers, so far), or if all else fails, a locum tenens). Currently, physical examinations (PE) are done by the JP Diagnostic Clinic (generally, two to three per week). However, if the patient had a PE at Brockton within the 30 days prior to admission, that PE counts as the official PE. Therefore, a new PE does not have to be carried out but does need to be reviewed and accepted by the MD assigned to this program. Ongoing follow-up of medical problems is covered by the JP Diagnostic Clinic. However, this coverage is only temporary. As a consequence, admissions to JP SARRTP have stopped until at least mid-July. A small number of admissions will be accepted after that if there are some data on the patients in GUI, and the patient is not a multi-problem patient.

A description of the programmatic aspects of this proposal and a description of the sites.

SUMMARY The JP Substance Abuse Treatment Programs constitute a major portion of our VA Clinical Center of Excellence in substance abuse and they possess an excellent clinical, research, and teaching staff. One of the programmatic needs is to bring the JP campus and the Brockton Campus SARRTPs under the same set of standards and procedures. Because of historical reasons now no longer operative the JP SARRTP had evolved into a program with a significantly longer length of stay than the Brockton Campus SARRTP, with considerable resistance to moving to a shorter length of stay. The proposed psychiatrist would have the expertise and the charge of moving the JP SARRPT into compliance with a uniform standard. The particular reason this issue of a recruitment comes up now is that the JP program is now in a state of flux and crisis due to 1) retirement of the psychologist who is the current director of the program on 9/2/03; 2)

2

USA 00005

need for physician coverage to replace the psychiatric addiction fellows who have been providing this service but who are available as of 6/30/03; 3) prolonged illness of a JP Campus psychiatrist. As described above, psychiatric coverage utilizing a combination of staff from Brockton and the JP OP Psychiatry Clinic has been worked out for the next few months, but provision for long-term coverage is urgently needed. Moreover there is a need for a psychiatrist to cover substance abuse patients in the JP MH outpatient clinic. This recruitment proposal will resolve these issues. We propose to pool existing funds and hire a 1.0 FTEE psychiatrist who specializes in the treatment of addictions.

DESCRIPTION AND HISTORY– JP SARRTP has been in existence since 1997 on 7-C. It is a 20-bed residence with intensive outpatient programming for substance abusers. The mean age is about 48 - 50 years and the average length of stay (LOS) is about 34 days. Admissions to the program run about 160 – 180 per year. Nearly 45 % of the referrals come from Brockton (mainly the detoxification unit). The remainder come from various other sources. Patients are discharged to a variety of sites including the transitional residences, the Brockton Homeless Domiciliary, Crescent House in Lowell, and elsewhere.

Funding proposal specifics. Combine the funds available for a 1.0 FTE registered nurse clinician specialist (position approved but not hired, estimated salary $60,000 without benefits) and from the salary of the current SARRTP director (1.0 FTE psychologist, current salary of $113,360 with benefits) and hire a psychiatrist, at a savings of approximately $39,000, with specialization and boards in addictions treatment who can provide both programmatic leadership and psychiatric coverage of the program. (The salary of the current SARRTP director will be available as of his retirement on 9/2/03.) Duties of the psychiatrist with an addictions specialty would include SARRTP management and overall medical responsibility for the SARRTP and the Boston CWT/TR houses in the community, as well as heading the substance abuse treatment program in the JP mental health outpatient clinic.

Time Line Urgency: If the proposal to hire an addiction specialist psychiatrist leader is approved, immediate action should be taken to obtain approval by the BHS resource board and to post the position. The need to complete the credentialing and privileging process before September 1 2003 before Dr. Wickis retires would insure programmatic continuity. Administrative delay would have obvious negative consequences.

3. What VISN Care Line alternatives were attempted to accommodate the resources shortage?
   a) Can workload be moved from one facility to another within the care line?
     ☐ Yes    X No

   b) Can resources be shifted from one facility to another to accommodate the workload?
     ☐ Yes    X No

4. What are the consequences/impact if the resources are delayed or not provided?
The JP SARRTP may have to close and, longer term, the ability of the JP campus outpatient MH clinic to meet patient need will be compromised.

5. Has the Network Service Line Manager Concurred with this request?

   X Yes    Date: 6/27/03 ☐ No

6. Has the Local Resource Board concurred with this request?

3

Pending ☒ Yes   Date: July, 2003                    ☐ No

7. What is the total cost of this proposal (include equipment, such as computers, printers, fax, office furniture etc. requests) –please attach the following form: "Staffing Needs Equipment form".)

No new equipment or office costs are required.

Note:  Please attach an up-to-date Organizational Chart for all requests to fill positions.

4

# Exhibit Q

*FYI*

*Psychiatric Tim*

Place Classifieds Online at www.mhsource.com/classified/adform.html



**BALTIMORE, MARYLAND**
100% outpatient care. Salary positions, no call! For more information on these and other exciting opportunities, call, FAX, or Email your CV to:

FCS
ATTN.: ROSE NORRIS
(800) 783-9152, FAX (270) 782-1055
Visit our Web site: www.fcspsy.com
Email: fcsinfo@fcspsy.com

**MASSACHUSETTS**

**TRI-CITY MENTAL HEALTH CEN-TER**, which provides a comprehensive continuum of behavioral health care serv-ices, has the following position available:

**Psychiatrist**—board-certified or eligible, or RNCS with interest and experience in treating an ambulatory population, includ-ing substance abuse and dual-diagnosis clients in the greater Everett, Mass., area. Work with a dedicated multidisciplinary team within a large outpatient clinic sys-tem. Hours: 5-8 hrs/week, with potential for expansion.

Please send or FAX cover letter and resume to: Dr. Monte Kay, M.D., TCMH&RC, 26 Princess St., Wakefield, MA 01880; FAX: (781) 224-0141 AA/EOA

**JAMAICA PLAIN**—The Department of Veterans Affairs Substance Abuse Residential Rehabilitation Treatment Program (SARRTP) at the Jamaica Plain campus of the VA Boston Healthcare System has a vacancy for a full-time or part-time psychiatrist for its programs to specialize in treatment of addictions. Experience in psychopharmacology is desired. The SARRTP is a satellite clinic to the VA Boston Healthcare System, a major academic psychiatric center. Academic appointment is possible at a level, depend-ing on qualification. Send CV and letter to: Chester P. Swett, M.D., (116A) Brockton Campus, VA Boston Healthcare System, 940 Belmont Street, Brockton, MA 02301. Equal Opportunity Employer.

 **Adolescent Psychiatrist**

is an innovative, non-profit agency seeking a full time BC/BE Adolescent Psychiatrist. The ideal candidate will be providing services in Northern



**BOSTON, MASSACHUSETTS**
C/A psychiatrist needed for staff posi-tion, includes academic responsibilities. Above-average salary, and great benefits! For more information on these and other exciting opportunities, call, FAX, or Email your CV to:

FCS
ATTN.: DAVID HENRY
(800) 783-9152, FAX (270) 782-1055
Visit our Web site: www.fcspsy.com
Email: fcsinfo@fcspsy.com

**STAFF PSYCHIATRIST**

Caritas Carney Hospital, located in Dorchester, Mass., is seeking a board-eli-gible/board-certified staff psychiatrist with prior experience treating inpatient adults. Experience or interest in working with diverse populations and familiarity with ECT preferred. Additional opportunities exist for the development of private prac-tice and participation in medical student teaching. Income potential is generous and benefit package is attractive. Caritas Carney Hospital, a general acute care teaching facility, is a member of Caritas Christi Health Care System.

Send or FAX resume to: James Greenblatt, M.D., Chief of Psychiatry, Caritas Carney Hospital, 2100 Dorchester Avenue, Dorchester, MA 32122. FAX: (617) 298-3271

**MICHIGAN**

**JOIN 2 BC PSYCHIATRISTS** in a well-established CMH-OP clinic providing services to children and adults with a severe mental illness and/or developmen-tally disability. Alpena is located on beau-tiful Lake Huron in northern, lower Michigan. A small town with excellent schools, community college, yr.-round cul-tural activities and a haven for outdoor enthusiasts—BC Prof., with experience in working with children and adolescents. Generous salary, CME, health, dental, vision insurance, long/ short-term disabili-ty life ins., pension.

Contact: Jackie Kennedy, NE Michigan CMH, 400 Johnson, Alpena, MI 49707; FAX CV: (989) 354-5898 or Email: jkennedy@nemcmh.org

**PETOSKEY, MICHIGAN.** Practice in beautiful Petoskey, a four seasons resort town on the shores of Lake Michigan. Join three board-certified, adult psychiatrists for inpatient/outpatient practice at a regional medical referral center. No J-1 visa waiver. Contact Dr. Robert Fawcett at: (231) 487-2415.

**MINNESOTA**

**"THE MINNESOTA RECRUITER"** specializes in providing physician practice opportunities in Minnesota and nearby states. Currently, we have several outstand-ing psychiatry opportunities. Access our opportunities online: or confidentially call: (800) 967-2711.

**MISSOURI**

**GENERAL OR CHILD/ADOLESCENT PSYCHIATRIST**

Royal Oaks Hospital, a progressive behavioral healthcare organization located in central Missouri has immediate open-ings for full-time psychiatrist in our inpa-tient units and outpatient clinics located throughout central and S.W. Missouri. Must be able to work with patients of all ages with minimal supervision. J-1 waiver applicants considered. We provide attrac-tive contract and benefit plan. Direct your CV to:

Medical Staff Coordinator
Royal Oaks Hospital
307 N. Main
Windsor, MO 65360
www.royal-oaks.com
EOE

**OUTPATIEN[...]**
**PERMANEN[...]**
opportunity w[...]
trists in this lar[...]
or overtime o[...]
locum tenens c[...]
Please contact [...]
Housing, car [...]
malpractice, a [...]
Please contact [...]
8261, ext. [...]
(703) 385-2[...]
medsourcecon[...]

**PROGRESSI[...]**
**COMMUNITI[...]**
positions ava[...]
psychiatrists [...]
opportunity to [...]
F/P residents [...]
employed p[...]
salary and fu[...]
call Rona Sp[...]
ext. 216, F[...]
385-4435, [...]
medsourcecon[...]

**HELI[...]**
**GENE[...]**
Enjoy the [...]
Montana an[...]
practice. St[...]
BC/BE psyc[...]
tient practice [...]
marketing, [...]
Montana, of[...]
amenities an[...]
tunities. Th[...]
raise a fam[...]
Physician I[...]
FAX CV [...]
Email at: k[...]
www.stpete[...]



We have a place fo[...]

Mercy Hospital–Coon Rapids, M[...]
• 1 Adult Psychiatrist [...]
(IP, OP, IP/OP)

• 2 Psychiatrists: [...]

• Child Psychiatrist [...]

United Hospital – St. Paul, Mi[...]
• 1 Adult/Geriatric (O[...]



# Title 38 Entry was successfully submitted

### *Now please use your browser printing this page.*

**Announcement Number:** 03-197 BHS
**Your Email Address:** elizabeth.stenerson@med.va.gov
**Facility Number:** 523
**Facility Location:** VA Boston Healthcare System, Jamaica Plain Campus
**Occupational Title:** Physician
**Position Title:** Psychiatrist
**Assigned To:** Mental Health Service Line
**Grade:** Commensurate with Experience
**Salary:** Commensurate with Experience
**Opening Date:** 08/20/2003
**Closing Date:** 09/11/2003
**FullTime:** Yes
**Supervisory Status:** No
**Positions Available:** One position
**Required Forms:** Letter of intent and CV
**Position Summary:** The Department of Veterans Affairs Substance Abuse Residential Rehabilitation Treatment Program (SARRTP) at the Jamaica Plain campus of the VA Boston Healthcare System, Boston, MA has a vacancy for a full-time or part-time psychiatrist for its programs who specializes in treatment of the addictions. Experience in psychopharmacology is desired. The SARRTP is a satellite clinic to the VA Boston Healthcare System, a major academic psychiatric center. Academic appointment is possible at a level depending on qualification.
**Location Summary:** Boston, MA
**Job Requirements:** N/A (see position summary)
**Organization Address:** VA Boston Healthcare System, Human Resources, 940 Belmont St., Brockton, MA 02301
**Organization Contact:** Ms. Anna Leitao, Human Resources
**Organization Phone:** 508-583-4500 ext 1192 FAX 508-895-0085
**Relocation Expenses:** No
**Relocation Bonus:** No
**Rating Factors:** N/A
**Application Procedures:** Send CV and letter to: Chester P. Swett, M.D., (116A) Brockton Campus, VA Boston Healthcare System, 940 Belmont Street, Brockton, MA 02301. Interested internal applicants should also have their Human Resources Management Service send a message via Exchange/Outlook to Anna Leitao, Human Resources Specialist (05D) by the closing date. Equal Opportunity Employer
**Promotion Potential:** N/A

*[handwritten: Corrected 8/31/04 GM']*

USA 00009

## Remember to print a copy of your entry for review and approval

## Click Here to Enter Another Vacancy, to Edit an Existing Vacancy or to Release an Existing

# Exhibit R

**Department of
Veterans Affairs**

# Memorandum

Date: March 9, 2004

From: Mental Health Care Line Manager (523A5/116A)

Subj: Appointment of Practitioner – SCHEFT, Harriet M.D.

To: Chair, Professional Standards Board (523/11P)

1. Professional Standards Board action and approval is requested for the full Time Appointment with privileges for Harriet Scheft, M.D., VA Boston Healthcare System – Mental Health Care Line with the effective date of April 18, 2004.

2. Dr. Scheft is licensed as a MD and is board certified in American Board of Psychiatry and Neurology with additional subspecialty in Addiction Psychiatry. Dr. Scheft is currently affiliated as a Staff Psychiatrist, Department of Clinical Neuroscience, Lemuel Shattuck Hospital Jamaica Plain, MA

3. Dr. Scheft will fill a critical outpatient position in the new Substance Abuse Intensive Outpatient Clinic at the Jamaica Plain Campus. Dr. Scheft will be the only FT Psychiatrist assigned to the SAIOP that is currently reflecting a full workload of uniques.

4. It is hereby recommended that Dr. Harriet Scheft be appointed at the Chief Grade, Step 10 Level.

ROBERT W. MCCARLEY, M.D.
Mental Health Care Line Manager
VA Boston Healthcare System

# Exhibit S



# DEPARTMENT OF VETERANS AFFAIRS
## OFFICE OF RESOLUTION MANAGEMENT
## LYONS, NEW JERSEY 07939

### EEO COUNSELOR'S REPORT

**CASE NUMBER: 200G-0690-2003100088    COUNSELOR'S NAME: Gregory E. Jones, Sr.**

| | |
|---|---|
| Name of Aggrieved Employee: | Lucia Enica |
| Home Address: | 9 Birch Street, Belmont, MA 02178 |
| Home Telephone Number: | (617) 489-8845 |
| Business Address: | 1400 VFW Parkway, W. Roxbury, MA 01232 |
| Business Telephone Number: | (617) 323-7700 Ext. 5177 |
| Employee [ ✓ ] | Former Employee [ ]          Job Applicant [ ] |
| Position Title/Series/Grade: | Registered Nurse, Grade II |
| Title 5 [ ]      Title 38 [ ✓ ] | Hybrid T38 [ ]    Full Time [ ✓ ]    Part Time [ ] |
| Temporary [ ]    Probationary [ ] | Career Conditional [ ]    Career [ ✓ ]    Term [ ] |
| Name of Facility: | Boston Health Care System-West Roxbury |
| Service/Section: | Mental Health |
| Address of Facility: | 1400 VFW Parkway, W. Roxbury, MA 01232 |
| Facility Telephone Number: | (617) 323-7700 |
| Name of Representative: | Sanford A. Kowal          Attorney: Yes[ ✓ ] No[ ] |
| Representative's Address: | 56 Chestnut Hill Avenue, Boston, MA 02135 |
| Representative's Telephone: | (617) 562-8100 |

## NOTIFICATION OF PROCEDURAL RIGHTS

| | | | | |
|---|---|---|---|---|
| Initial Contact (Date): | | | | 08/21/02 |
| Initial Interview (Date): | | | | 08/22/02 |
| Rights, Waiver & Claim Letter: | Mailed: | 08/22/02 | Rec'd: | 08/30/02 |
| Agreed to Waive Anonymity: | YES    [ ✓ ] | NO    [ ] | | 08/30/02 |
| Agreed to Inform Facility: | YES    [ ✓ ] | NO    [ ] | Date: | 08/30/02 |
| Notification to Facility: | Mailed: | | | 09/04/02 |
| ADR Offered: | YES    [ ✓ ] | NO    [ ] | Date: | 08/22/02 |
| ADR Agreed To: | YES    [ ] | NO    [ ✓ ] | Date: | 08/30/02 |
| ADR Agreement: | Mailed/Faxed: | None | Rec'd: | |
| Extension (Non-ADR): | Mailed/Faxed: | None | Rec'd: | |
| Release of Medical Information: | Mailed/Faxed: | None | Rec'd: | |
| Settlement Agreement: | YES    [ ] | NO    [ ✓ ] | Date: | |
| Notice of Right to File: | Mailed: | 09/19/02 | Rec'd: | 09/23/02 |

PG 1 OF 5



Revised 12/2000

Name of Aggrieved Employee: Lucia Encia
Name of Facility: Boston HCS-West Roxbury
Date of Initial Contact: August 21, 2002

| BASIS | CLAIM | EVIDENCE AND DATES OF OCCURRENCE | RESOLUTION SOUGHT |
|-------|-------|----------------------------------|-------------------|
| Disability (Advanced severe end stage osteoarthritis of the right knee, bony ankylosis and osteoarthritis of the right ankle, poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disk disease with sciatica of the left leg). | Failure to provide reasonable accommodation. | On or around August 9, 2002, the aggrieved employee determined that the reasonable accommodation that was provided by the agency on June 28, 2002 has not worked as a reasonable accommodation. | The aggrieved employee is requesting that immediate action be taken to stop the long walks that are now required to conduct patient rounds and patient consults at the West Roxbury Division of the Boston Health Care System (BHCS). The aggrieved employee is requesting to be reassigned to the Outpatient Mental Health Clinic at West Roxbury in order to eliminate the distance that she has to walk to see patients. The aggrieved employee is also requesting immediate relief from responding to "code greens" on foot so as not to put patients or herself at risk because of her inability to respond quickly or reliably. |

The aggrieved employee contacted the Office of Resolution Management (ORM) on August 21, 2002, because she believes that she was discriminated against based on disability (Advanced severe end stage osteoarthritis of the right knee, bony ankylosis and osteoarthritis of the right ankle, poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disk disease with sciatica of the left leg). An interview was conducted with the aggrieved employee on August 22, 2002, the aggrieved employee agreed to waive her right to anonymity. A telephonic interview was conducted the William Warfield, Chief, Employee Relations on September 6, 2002.

PG 2 OF 5

Name of Aggrieved Employee: Lucia Encia
Name of Facility: Boston HCS-West Roxbury
Date of Initial Contact: August 21, 2002



**Below is a description of the claim and resolution as presented by the aggrieved employee:**

| Claim #1: | Failure to provide reasonable accommodation. |
|---|---|
| Evidence and Date of Occurrence: | On or around August 9, 2002, the aggrieved employee determined that the reasonable accommodation that was provided by the agency on June 28, 2002 has not worked as a reasonable accommodation. |
| Basis: | Disability (Advanced severe end stage osteoarthritis of the right knee, bony ankylosis and osteoarthritis of the right ankle, poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disk disease with sciatica of the left leg). |
| Responding Management Official: | William Warfield, Chief, Employee Relations |
| Mixed Case Issue:         [ ] Yes  [✓] No | |
| MSPB Filed:               [ ] Yes  [✓] No | |
| Union Grievance Filed:    [ ] Yes  [✓] No | |

**Brief Description of Claim:** The aggrieved employee is a Registered Nurse, Grade II at the Boston Health Care System (BHCS) West Roxbury Division. The aggrieved employee stated that she has worked for the Boston Health Care System since 1994. The aggrieved employee stated that because Unit 12C at the Jamaica Plains Division closed she and other coworkers were offered vacant positions within the BHCS organization. The aggrieved employee stated that on June 28, 2002, she met with Ms. Karen Bassett, Registered Nurse Coordinator, Mr. William Warfield, Chief, Employee Relations and Ms. Cecilia McVey, Associate Director, Patient Care Services to discuss the reassignment. The aggrieved employee stated that it was agreed that she would perform the full range of nursing responsibilities with the exception that she would not be required to actively participate in Code Green's because of her limited mobility due to her disability. The aggrieved employee stated that she chose to accept an assignment in the Crisis Stabilization Unit at the West Roxbury Division starting July 1, 2002. The aggrieved employee stated that since that agreement was made on June 28, 2002, she has been assigned to conduct patient consults on units outside of her immediate work area. The aggrieved employee stated that she has been asked to perform other duties that require her to walk distances that seem long to her because of her disability. The aggrieved employee stated that she is also required to meet with patients that are unstable and believes that management has created an environment that is not safe for herself or the patient. The aggrieved employee stated that the environment would not be safe because she can not assist the patients in the event of a fall because she can not perform the physical tasks that are required to assist a patient that has fallen such as lifting and pulling. The aggrieved employee stated that she has requested an alternative accommodation such as providing a scooter to transport her to the patients' areas that are outside of her immediate work area. The aggrieved employee stated that she has also requested to be reassigned to the Mental Health Clinic at the Jamaica Plains as a Clinical Intern or the West Roxbury Division as a Mental Health Therapist. The aggrieved employee stated that she is awaiting management's response to her request.

**Documents Suggested for Review:**
June 28, 2002, accommodation letter.
Request for alternative accommodation
Medical Center's response to request for alternative accommodation

PG 3 OF 5



Name of Aggrieved Employee: Lucia Encia
Name of Facility: Boston HCS-West Roxbury
Date of Initial Contact: August 21, 2002

**Witness(es) Suggested for Interview:**
The aggrieved employee suggested no witnesses.

**Resolution Sought:** The aggrieved employee is requesting that immediate action be taken to stop the long walks that are now required to conduct patient rounds and patient consults at the West Roxbury Division of the Boston Health Care System (BHCS). The aggrieved employee is requesting to be reassigned to the Outpatient Mental Health Clinic at West Roxbury in order to eliminate the distance that she has to walk to see patients. The aggrieved employee is also requesting immediate relief from responding to "code greens" on foot so as not to put patients or herself at risk because of her inability to respond quickly or reliably.

**Responding Management Official Contacted:** Mr. William Warfield, Chief Employee Relations, (617) 232-9500 Ext. 5564.

**Response to Claim #1:** Mr. Warfield stated that Ms. Enica was displaced when the Jamaica Plains Division closed Unit 12C at the end June 2002. Mr. Warfield stated that the staff on Unit 12C was given new assignments within the BHCS. Mr. Warfield stated that he attended a meeting that was held with Ms. Enica that included the union and nursing management. Mr. Warfield stated that at the meeting two (2) positions were identified as being within Ms. Enica's identified physical limitations. Mr. Warfield stated that one of the positions in building 2 at the Brockton Division was similar to her existing position on Unit 12C and the other being a position on the Observation Unit at the West Roxbury Division. Mr. Warfield stated that Ms. Encia chose the position in the Observation Unit at the West Roxbury Division and the reassignment became effective July 1, 2002. Mr. Warfield stated that Ms. Enica rquested to be excused from active participation on the Psychiatric Emergency Team (Code Green). Mr. Warfield stated that Ms. Enica's request was acceptable to management with the provision that Ms. Encia would be responsible for observing and evaluating any code green. Mr. Warfield stated that on or around August 16, 2002, Mr. Sanford A. Kowal, attorney for Ms. Enica contacted him and stated that the Ms. Encia's original accommodation request would need to be modified because it was not working out for her. Mr. Warfield stated that this "surprised" him because he was not aware that Ms. Enica was experiencing problems with her new assignment.

**Witness(es) suggested by Responding Management Official to Interview:** None

**Response to Resolution Sought by Aggrieved Employee:** Mr. Warfield stated that after discussing the issues with nursing service and evaluating Ms. Enica's work area it was agreed that Mr. Kowal's request to provide Ms. Enica with a scooter was a satisfactory option. Mr. Warfield stated that nursing service would not require Ms. Enica to walk more than she could manage until such time as the scooter became available to Ms. Enica.

**Proposed Alternative Resolution:** The aggrieved employee stated that she requested alternative accommodations such as providing a scooter to transport her to the patients' areas or reassigning her to the Mental Health Clinic at the West Roxbury Division as a Mental Health Therapist. The aggrieved employee stated that she also requested to be reassigned to the Jamaica Plains Division for a Mental Health Clinical Internship.



PG 4 OF 5



Name of Aggrieved Employee: Lucia Encia
Name of Facility: Boston HCS-West Roxbury
Date of Initial Contact: August 21, 2002

**Response to Proposed Alternative Resolution Sought by Aggrieved Employee**
Mr. Warfield responded to the aggrieved employee's proposed alternative resolution request regarding the mental health clinical internship by stating that the MHC at the Jamaica Plains Division is currently under development and has not been established to the extent that would allow him to offer such a position to Ms. Enica. Mr. Warfield stated that the internship might be available sometimes next year

**Results of Witness Interviews:** None

**Summary of Resolution Efforts:** The information that was gathered from the interview with Mr. Warfield was shared with Mr. Kowal.

**FINAL INTERVIEW**
On September 19, 2002, the results of resolution efforts and the following claim were discussed with the aggrieved employee:

Claim #1: The aggrieved employee was discriminated against based on her disability (Advanced severe end stage osteoarthritis of the right knee, bony ankylosis and osteoarthritis of the right ankle, poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disk disease with sciatica of the left leg) when management failed to provide the aggrieved employee with a reasonable accommodation.

The aggrieved employee was informed that the claim listed above was the only claim addressed during the informal EEO counseling and, if a formal EEO Complaint of Discrimination is filed, claims not discussed with me may not be accepted for formal complaint processing.

The Notice of Right to File a Discrimination Complaint and VA Form 4939 were FedExed to the aggrieved employee and her representative on September 20, 2002, and received by them on September 23, 2002.


Gregory E. Jones, Sr., EEO Counselor         10/10/02
                                              Date

5


PG 5 OF 5

**Exhibit T**

## 2-0809-10  Weighing Factual Evidence and Drawing Conclusions

10.  <u>Weighing Factual Evidence and Drawing Conclusions</u>.

    a.  <u>The CE is responsible for determining the facts</u> in a case by weighing the evidence which has been developed and drawing conclusions based on that evidence.  When the relevant information has been received and the parties to the claim have had a chance to refute any disputed evidence, the CE is ready to evaluate the evidence for credibility and validity.

    b.  <u>Evidence can be classified as direct or indirect</u>.  The value of each varies and is not fixed for all circumstances.  For instance, while direct evidence is generally regarded as superior, it may be overridden by indirect evidence which is more plausible or consistent with all the other facts in a case.  For this reason the CE must exercise discretion and logic in drawing conclusions or making inferences based on the factual information in a claim.

    (1)  <u>Direct evidence</u> is typified by the accounts of eyewitnesses to an injury or statements from a supervisor that certain alleged orders or job requirements were imposed.  Testimony about events observed at the scene of an injury or death either at the time or shortly after the occurrence is direct evidence if it reflects actual observations.  Because direct evidence is a first-hand account, it must ordinarily be assigned greater probative value than other evidence.  Direct evidence is also referred to as positive evidence.

    (2)  <u>Indirect evidence</u> is circumstantial, and its value depends largely on how far the provider of the evidence is removed in time, place or telling from the actual events.  The CE need not reject evidence because it bears the label "circumstantial," but should scrutinize it closely to ensure that it is internally consistent and that it either corresponds with or is more probative than any direct testimony available.

If indirect evidence conflicts with direct evidence, and all other factors such as the testifiers' veracity are equal, direct evidence must be assigned greater value.  Three common types of indirect evidence are described below:

    (a)  Negative evidence is based upon a failure to recollect, an absence of records, or statements as to what did not occur.  Examples of this type of evidence are: "I don't recall the claimant's working late the night before his heart attack"; or, "records do not indicate the reason for the claimant's absences from work during that period"; and, "if the medical records do not mention any adverse reaction to the shots he was given in the health unit, he must not have had one." (See <u>Edward Gardner</u>, 3 ECAB 93.)

These statements might contribute to a CE's findings that a claimant did not work overtime, was not disabled due to an alleged injury, or did not have an adverse reaction to a shot, but they are not conclusive proof by themselves.  Such evidence as these statements present must be evaluated in light of other facts or testimony.  If enough evidence exists to prove the opposite conclusion, the CE must disregard the negative evidence in favor of the more persuasive evidence.

    (b)  Conclusions or opinions of others are statements which are unexplained or

which lack sufficient facts to confirm or deny the existence or occurrence of an event.

For example, a witness may state that a claimant was injured during a fight which arose from a work-related dispute because he had heard the two participants arguing about having to work side by side on a work crew. This conclusion may or may not be valid, but the statement contains little to establish the truth. Further investigation might show that the animosity stemmed not from work but from a gambling debt owed one worker by the other.

As with negative evidence, the value of this type of evidence depends on the degree to which it supports or refutes direct evidence and is logically consistent with known events.

(c)    Hearsay evidence is based on the reports of others, not first-hand observation. Hearsay is generally inferior to direct evidence on two grounds: first, the further removed the testifier is from the originator of the evidence, the greater the likelihood that facts will be distorted; and second, by its very nature it affords no opportunity for cross-examination. When using such evidence as a basis for a decision, a CE must exercise care that the hearsay is persuasive and not founded on rumor or gossip.

c.    Some evidence may serve in a dual capacity in a claim; i.e., it may be both direct and indirect. For instance, questions arise as to whether the claimed injury occurred in the manner and at the time alleged. Upon inquiry as to when the claimant first obtained medical care for the injury, the CE learns from the occupational health nurse that the employee was seen on the day of the alleged injury at the infirmary and walked with a limp. This statement would serve as direct evidence that the claimant sought timely treatment for the injury (assuming the treatment was for a leg injury), and as indirect evidence that the injury occurred at the time and in the manner alleged (because the claimant was limping).

d.    In making findings, the CE is obliged to apply certain principles of logic and evidence. By doing so, the CE ensures that the conclusions drawn are supportable and that the outcome is just. These guidelines for fact-finding are based on legal principles of evidence, Larson's Workmen's Compensation Law, OWCP policies and ECAB decisions.

(1)    An injury or death need not be witnessed for a CE to find that it occurred as described by the claimant or to make inferences as to how it occurred.

(2)    The CE must make findings which take into account all relevant evidence. Disregarding factual information will diminish the validity of the SOAF even though the omission might not have materially affected the outcome. The ECAB has remanded cases because facts were omitted and the OWCP could not prove that the decision was not compromised as a result (see Richard A. Sroka, 35 ECAB 209). A greater injustice may be done if a benefit is denied as the result of selective incorporation of evidence, and the case is not appealed.

(3)    The CE must include in the findings evidence which might be labeled subjective, as well as evidence which lends itself to observation or objective confirmation. For

example, if a claimant cites personal reactions or describes feelings associated with an incident, such as pain, anxiety, fear, palpitations, etc., the inclusion of these experiences as facts is altogether fitting. Subjective evidence, however, must meet all the tests imposed on other forms of evidence, including probity and consistency with the facts of the claim and the actions of the claimant.

## 2-0809-11  Requirements for SOAFs

11.    Requirements for SOAFs.

a.    All evidence on which the statement is based must be part of the case record.  The CE may not make findings based on an undocumented conversation or an investigative report which is not subject to examination or refutation.  The CE must also avoid making findings based on similar evidence found in other case files (e.g., position descriptions).

b.    Facts should be correctly stated.  A medical opinion based on an accurate SOAF has enhanced probative value, whereas an opinion based on incorrect findings is of diminished or no value.

c.    Facts should be complete in all essentials.  Omission of a critical fact diminishes the validity of a medical opinion or decision as much as an incorrect statement.  (See paragraph 10d (4) above.)

d.    Facts should be specific as to time of occurrence and such matters as weight of objects lifted, numbers of hours worked over particular periods of time, frequency and types of stress and confrontations in the workplace, etc.

# Exhibit U

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LUCIA ENICA,                          )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Docket No. 04cv11468-DPW
                                      )
ANTHONY J. PRINCIPI, as he is         )
secretary of Veterans Affairs         )
of the Department of                  )
Veterans Affairs,                     )
                                      )
        Defendant.                    )
                                      )

## AFFIDAVIT OF WILLIAM WARFIELD

I, William Warfield, hereby state as follows:

1.    I am over the age of 18, and am mentally competent to
      testify as to the matters contained in this affidavit.

2.    The information contained in this affidavit is based
      upon my personal knowledge.

3.    I make this affidavit knowingly and voluntarily.

4.    I am the Chief of Human Resource Services for the
      Veteran Affairs ("VA") Boston Healthcare system.

5.    In December 2002, Dr. Robert W. McCarley sought
      authority from the VA to hire a full-time Nurse
      Practitioner in the Outpatient Mental Health Clinic on
      the Jamaica Plain campus, which he eventually received.

6.    From February 14, 2003, to March 7, 2003, the VA posted
      an announcement for the Nurse Practitioner position, to
      which seven people from the VA's applicant supply file
      were referred.

7.    Dr. McCarley decided, however, not to fill the Nurse
      Practitioner position, but, instead, to recruit a
      Clinical Nurse Specialist.

8.    From June 5, 2003, to June 26, 2003, the VA posted the
      Clinical Nurse Specialist vacancy announcement.

9.    Ms. Enica and one other person applied for the Clinical

Nurse Specialist position.

10.   Again, Dr. McCarley decided not to fill the vacancy.

11.   Dr. McCarley determined that it was more economical for
      the VA to combine the funds available for the Clinical
      Nurse Specialist position with other funds available to
      hire a psychiatrist for the Clinic.   Indeed, Dr.
      McCarley determined that this course of action would
      save the VA $39,000 a year.

12.   After the VA approved Dr. McCarley's request to hire a
      psychiatrist, it posted the position in different
      mediums.

13.   On March 9, 2004, Dr. McCarley selected Dr. Harriet
      Scheft for the vacant psychiatrist position, and the
      VA later appointed Dr. Scheft to the position on April
      18, 2004.

Signed this 31th day of January, 2006, under the pains and
penalties of perjury.

William Warfield