```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
_____
                              )
LUCIA ENICA,                  )
                              )
      Plaintiff,              )
                              )   Docket No. 04CV11468-DPW
      v.                      )
                              )
ANTHONY J. PRINCIPI, as he is )
Secretary of Veterans Affairs )
of the Department             )
of Veterans Affairs,          )
                              )
      Defendant.              )
                              )
_____)
```

### DEFENDANT'S CONCISE STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

1. Plaintiff, Lucia Enica, claims that the VA failed to accommodate her in violation of the Rehabilitation Act, 29 U.S.C. §§ 791, 794(a). Also, Plaintiff claims that because she sought accommodations and submitted a workers compensation claim, the VA retaliated against her by subjecting her to a hostile work environment and denying her a promotion.

2. Starting at the age of ten months old, Plaintiff began to suffer from muscle deficiencies. Deposition of Lucia Enica Quelis Silva("Enica Depo.") at 40:9-10, all cited pages attached to Defendant's Memorandum of Law in Opposition to the Plaintiff's Motion for Partial Summary Judgment and in Support of His Counter Motion for Summary Judgment("Memo")as Exhibit A.

3. As a child, Plaintiff was diagnosed with poliomyelitis, Id. at 40:9-44:6, and fractured her right femur which led to several reconstructive surgeries. Id. at 41:10-12. As a result, Plaintiff currently has several deficits to her right leg. Id. at 42:8-9.

4. Plaintiff also suffers from severe arthritis in her right knee, and ankylosis, which causes stiffness in her right ankle.

5. In 1994, Plaintiff began her employment with the VA as a Registered Nurse of Psychiatry at the VA hospital in Jamaica

       Plain.  Id. at 25:15-16.

6. Upon being hired, Plaintiff's job functions included all aspects of basic care for patients with physical and emotional problems. Affidavit of Cecilia McVey ("McVey Aff.") at ¶ 5, attached to Memo as Exhibit B.

7. Shortly after being hired, the Plaintiff took a fitness for duty exam with Denni Woodmansee, Occupational Health Physician Assistant. See U.S. Civ. Serv. Commn. Certificate of Med. Exam., attached to Memo as Exhibit C. Woodmansee concluded that Plaintiff had no limiting conditions for her position as a registered nurse. Id.

8. In 1995, when Plaintiff learned that her unit was closing, she for the first time approached her supervisor, Mary Farren, to discuss some of her limitations. Enica Depo. at 58:21-60:1. Specifically, Plaintiff told Farren that she would not be able to work in another unit besides psychiatry because of her physical deficits. Id. The VA, therefore, transferred Plaintiff to another psychiatric unit within the Jamaica Plain campus. Id. at 61:12-62:3.

9. The following year, in 1996, Plaintiff told Beverly Reardon, Plaintiff's then supervisor, that she could not take a patient on a stretcher to electric compulsive shock therapy ("ECT") because she was in pain. Id. at 63:4-20. Reardon asked that the Plaintiff submit a doctor's note with the Plaintiff's limitations and restrictions. Id. at 63:14-20.

10. In 1996, Plaintiff saw Dr. Richard Wright, who gave her a doctor's note stating that Plaintiff should avoid repetitive low back activity and repetitive heavy pushing or pulling. Id. at 64:11-65:2. Plaintiff submitted this doctor's note to Reardon. Id. at 65:9-11.

11. Reardon asked Plaintiff to undergo a fitness for duty exam by Dr. John McA. Harris, III, Chief of Orthopedic Surgeons, to evaluate whether Plaintiff was capable of performing the essential functions of a staff nurse at the VA hospital. See Memo. Dept. of VA, Fitness for Duty Exam, dated July 8, 1996, attached to Memo as Exhibit C.

12. In the fitness for duty exam Dr. Harris stated that the Plaintiff could neither carry or push 45 pounds. Med. Rec. Progress Notes, July 25, 1996, attached to Memo as Exhibit D. He also documented in his progress notes that he "told all of this to Ms. Enica and suggested that she go to

Nursing Services with this information as soon as possible to work out with them what will be done by Nursing Service." Id.

13. Plaintiff contends that Dr. Harris told her nothing about the results of her exam, and did not give her any medical information to turn over to the nursing staff. Enica Depo. at 70:15-25.

14. After the fitness for duty exam with Dr. Harris, the Plaintiff returned back to work and her normal work functions, however the VA excused the Plaintiff from carrying or pushing more then 45 pounds. McVey Aff. at ¶ 8.

15. Over a six year period, between 1996 and 2002, the Plaintiff did not speak with anyone in a management position about her disabilities or request further accommodations. Enica Depo. at 78:12-14.

16. On April 9, 1997, based on events that purportedly occurred since her hire in 1994, Plaintiff filed an EEO administrative claim against the VA. Complaint of Employment Discrimination, dated April 9, 1997, attached to Memo as Exhibit F. Plaintiff's EEO complaint alleged discrimination based on national origin, disability, and retaliation. Id.

17. On, November 24, 1998 the EEOC issued a final agency decision finding that Plaintiff failed to establish her claims. See Final Agency Decision, dated Nov. 24, 1998, attached to Memo as Exhibit G.

18. The Plaintiff did not appeal the EEOC's decision. Enica Depo. at 93:3-95:18.

19. In 2000, the VA decided to integrate all patient care service at the Jamaica Plain campus with the West Roxbury and Brockton campuses. McVey Aff. at ¶ 9.

20. In 2001 and 2002, the VA negotiated with the labor union to transfer the employees from the Jamaica Plain campus to either of the other two campuses. Id.

21. In 2002, when Plaintiff learned that the VA was closing her unit, she immediately became concerned about where she would be transferred. Id.

22. The Plaintiff expressed her desire to stay at the Jamaica

       Plain campus in a position in mental health, however there were no positions available.  Id.

23. In 2002, upon learning that her unit was closing, the Plaintiff also became worried that she could no longer walk long distances and would need more accommodations.  Enica Depo. at 114:9-14.  The Plaintiff contends that she expressed this concern to Farren.  Id. at 115:7-17.

24. Based on the advice of Lisa Cargill, a union representative, in May of 2002, Plaintiff saw Dr. Robert A. Provost to obtain additional documentation of her physical restrictions and limitations.  Id. at 107:21-108:8.

25. Plaintiff gave Farren a note from Dr. Provost dated May 13, 2002, that stated that the VA should not place Plaintiff in a position where she has to stand for more then 5 minutes, participate in crisis intervention, or perform walking rounds.  Id. at 108:7-8, 120:20-122:2; Med. Rec. Progress Note, dated May 13, 2002, attached to Memo as Exhibit H.

26. On May 23, 2002, a dialogue began between the Plaintiff and the VA management concerning what reasonable accommodations if any, Plaintiff needed to perform the essential functions of her job.  Enica Depo. at 117:18-118:21.

27. In June 2002, the Plaintiff met with William Warfield, Chief of Employee Relations in Human Resources, Cecelia McVey, Associate Director of Nursing and Patient Care, Karen Basset, and Lisa Cargill concerning the closing of her unit at the Jamaica Plain campus.  Id. at 122:14-127:24.  In this meeting Warfield and McVey told Plaintiff that the VA was transferring her, as well as ten other nurses, to its crisis stabilization unit in West Roxbury.  Id.

28. Because this entirely new unit had only three beds, VA management anticipated that the work would be physically less demanding then Plaintiff's current position at the Jamaica Plain campus.  McVey Aff. at ¶ 11.

29. The meeting participants also discussed Plaintiff's request for accommodations of her physical limitations.  Enica Depo. at 144:7-12.  They agreed that Plaintiff did not have to respond to any physical aspects of a crisis intervention such as a "Code Green."  Id. at 129:10-20;

30. The meeting participants also agreed that Plaintiff would perform all other functions of a Registered Nurse in the

4

     Crisis Stabilization Unit.  <u>Id.</u> at 129:22-25.

31. Although the memorandum memorializing the meeting only mentions that Plaintiff did not have to respond to "Code Greens"; <u>see</u> Memo. Accommodations, dated June 28, 2002, attached to Memo as Exhibit I; Plaintiff testified that McVey and Warfield also told her that she would not have to walk excessively or do anything else that she could not physically do.  <u>Id.</u> at 131:6-12.

32. On or about July 1, 2002, the VA closed Plaintiff's unit in Jamaica Plain and transferred her to the new Crisis Stabilization Unit in West Roxbury.  <u>Id.</u> 131:1-132:9.

33. Because the crisis stabilization unit only had one or two patients a week whom stayed for a maximum of 23 hours, the VA management asked these nurses, including Plaintiff, to perform walking rounds in other medical units.  <u>Id.</u> at 137:2-20.

34. Plaintiff alleges that she was experiencing leg and back pain and could not perform her walking rounds.  <u>Id.</u> at 142:13-18, 168:21-25.

35. Plaintiff also contends that after her transfer to the crisis stabilization unit she asked the VA to transfer her to an outpatient unit, which she presumed would be less physically demanding.  Complaint of Employment Discrimination, Oct. 1, 2002, attached to Memo as Exhibit J.

36. The VA could not transfer Plaintiff to such a position because none were available.  McVey Aff. at ¶ 13.

37. Because Plaintiff claimed that she could not perform an essential function of her job, Basset asked Plaintiff to provide the VA with updated medical documentation from her physician detailing her current physical limitations and restrictions.  <u>Id.</u> at ¶ 10.

38. Because Plaintiff was complaining of extreme pain, the VA placed Plaintiff on paid administrative leave on September 9, 2002, which allowed Plaintiff to obtain the updated medical documentation and ensured her safety while she and the VA discussed her impairments and what, if any, accommodations would allow her to perform her job.  <u>Id.</u> at ¶ 12.

39. In September of 2002, Plaintiff returned to Dr. Provost who

      diagnosed her bursitis from excessive walking. Enica Depo. at 142:13-18, 168:21-25.

40. Plaintiff also obtained an updated medical note from Dr. Provost, which she provided to the VA on or about October 2, 2002. Id. at 142:18-19. Dr. Provost's note stated that Plaintiff recently developed pain in her hip and recommended that the VA transfer Plaintiff to an outpatient facility that would eliminate the stress to the arthritic changes in her right lower extremity. See Med. Rec. Progress Note, dated Oct. 2, 2002, attached to Memo as Exhibit K.

41. The VA did not have an outpatient facility position available and therefore, discussed with Plaintiff's counsel alternative accommodations. McVey Aff. at ¶ 17.

42. After discussing Plaintiff's walking restrictions with counsel, the VA, with Plaintiff's counsel's approval, provided Plaintiff with an electronic scooter on November 4, 2002, when Plaintiff returned to work. Enica Depo. 146:24-25.

43. The scooter not only successfully addressed Plaintiff's problems with walking, but the Plaintiff reported that she was happy that she could do her rounds and work with the patients. Id. at 144:23-145:3.

44. During the time when the Plaintiff stopped working on September 9, 2002 through when she resumed working on November 4, 2002, she continued to receive full pay and benefits. Id. at 172:5-7.

45. Plaintiff filed a Workers Compensation claim against the VA for her bursitis, which she allegedly sustained on September 9, 2002. See Dec. of the Hrg. Rep., dated May 12, 2003, attached to Memo as Exhibit L.

46. On January 26, 2003, the DOL, Office of Workers' Compensation Programs District Office denied the Plaintiffs request for compensation. Id. Plaintiff disagreed with the decision and requested an oral hearing in front of a hearing representative. Id. The hearing representative denied the request for an oral hearing but conducted an investigation. Id.

47. The hearing representative reversed the District Office's decision on May 12, 2003, stating that Plaintiff's excessive walking at work caused her to develop bursitis, and,

       therefore, entitled her to receive worker's compensation benefits.  <u>Id.</u>

48.  The Plaintiff returned to work on November 4, 2002.  Enica Depo. at 145:6-20.

49.  After her return to work, Plaintiff alleges that her supervisors asked her to perform various duties that she could not physically perform.  <u>Id.</u>

50.  Plaintiff admits that when she voiced an objection to performing these tasks, her supervisors did not require her to complete the tasks nor did they discipline her.  <u>Id.</u> at 145: 6-20, 147:2-149:13.

51.  Because Plaintiff was asserting additional physical limitations that she had not discussed with the VA, on December 30, 2002, the VA, in the best interests of Plaintiff and its psychiatric patients, placed Plaintiff on paid administrative leave pending the receipt of updated medical documentation on the entire scope of the Plaintiff's restrictions and limitations.  McVey Aff. at ¶ 19.

52.  The Plaintiff remained on administrative leave with full pay and benefits from December 30, 2002, until April 7, 2003.  Enica Depo. at 164:14-20.

53.  On April 7, 2003, the Plaintiff returned to work in the Telephone Advisory Program ("TAP") at the Jamaica Plain campus.  <u>Id.</u> at 165:15-17.  In the TAP, Plaintiff communicates with patients, pharmacies, and primary care providers by telephone, and does not have to perform physical labor such as walking, lifting, bending, or carrying.  <u>Id.</u> at 165:24-167:7.

54.  Plaintiff admits that since the VA placed her in the TAP, she has not had to perform any duties that she is physically unable to do.  <u>Id.</u> at 167:12-15.

55.  Plaintiff's pay and benefits have not decreased.  <u>Id.</u> at 172:5-7.

56.  In December 2002, Dr. Robert W. McCarley sought the authority from the VA to hire a full-time Nurse Practitioner in the Outpatient Mental Health Clinic on the Jamaica Plain campus, which he eventually received.  <u>See</u> Network Resource Request, dated April 5, 2002, attached to Memo as Exhibit M.

57. From February 14, 2003, to March 7, 2003, the VA posted an announcement for the Nurse Practitioner position, to which seven people from the VA's applicant supply file were referred. See Vacancy Announcement No. 03-90BHS, attached to Memo as Exhibit N.

58. Dr. McCarley, however, decided not to fill the Nurse Practitioner position, but, instead, to recruit a Clinical Nurse Specialist. See Affidavit of William Warfield ("Warfield Aff.") at ¶ 7, attached to Memo as Exhibit U.

59. Plaintiff did not apply for the Nurse Practitioner position. Enica Depo. at 183:1-184:3.

60. From June 5, 2003, to June 26, 2003, the VA posted the Clinical Nurse Specialist vacancy announcement. See Vacancy Announcement No. 03-153BHS, attached to Memo as Exhibit O.

61. Plaintiff and one other person applied for the Clinical Nurse Specialist position. Enica Depo. at 184:23-185:9; see also Warfield Aff. at ¶ 9.

62. Again, Dr. McCarley decided not to fill the vacancy. See Resource Request, attached hereto as Exhibit P. Dr. McCarley determined that it was more economical for the VA to combine the funds available for the Clinical Nurse Specialist position with other funds available to hire a psychiatrist for the Clinic. Id. Indeed, Dr. McCarley determined that this course of action would save the VA $39,000 a year. Id.

63. After the VA approved Dr. McCarley's request to hire a psychiatrist, it posted the position in different mediums. See Vacancy Announcement No. 03-197BHS and FCS Posting, dated October 2003, attached to Memo as Exhibit Q.

64. On March 9, 2004, Dr. McCarley selected Dr. Harriet Scheft for the vacant psychiatrist position. See Memorandum from Dr. McCarley, dated March 9, 2004, attached to Memo as Exhibit R. The VA later appointed Dr. Scheft to the position on April 18, 2004. Warfield Aff. at ¶ 13.

65. Plaintiff has testified that she has never had any direct contact with Dr. McCarley. Enica Depo. at 189:11-22.

66. On August 21, 2002, Plaintiff contacted an EEO counselor claiming a failure to provide reasonable accommodations to her handicaps. EEO's Counselor's Report, Oct. 10, 2002,

8

     attached to Memo as Exhibit S.  EEO counseling did not result in resolution of the complaint.

67. On October 1, 2002, Plaintiff filed a second EEO complaint alleging that the VA violated the Rehabilitation Act by alleging discrimination based on disability.  <u>See</u> Exhibit J.

68. On March 11, 2004, the EEOC found that the Plaintiff had failed to establish that she had been discriminated against based on her disability.  <u>Id.</u> at 190:9-18.

69. Plaintiff has subsequently filed the instant action on June 28, 2004.

                              Respectfully submitted,

                              Michael J. Sullivan
                              United States Attorney

                     BY:   /s/ Damian W. Wilmot
                              DAMIAN W. WILMOT
                              Assistant U.S. Attorney
                              Moakley Federal Courthouse
                              One Courthouse Way, Suite 9200
                              Boston, MA 02110
Dated: January 31, 2005      (617) 748-3398

**CERTIFICATE OF SERVICE**

    I certify that on January 31, 2006, I caused a copy of the foregoing document to be served on Plaintiff's Attorney, Sanford Kowal, 56 Chestnut Hill Avenue, Boston MA 02135, by first class mail, postage pre-paid.

                              /s/ Damian W. Wilmot
                              DAMIAN W. WILMOT
                              Assistant U.S. Attorney