**UNITED STATES OF AMERICA**
**DISTRICT COURT FOR THE EASTERN DISTRICT OF MASSACHUSETTS**

**Docket No.**
**04CV 11468**

| | |
|---|---|
| Lucia Enica | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **Anthony J. Principi as he is** | ) |
| **Secretary of Veterans Affair** of the | ) |
| Department of Veteran Affairs, and | ) |
| The **Department of Veteran Affairs of** | ) |
| **The United States** | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |

**OPPOSITION IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AS TO**
**COUNT I OF THE COMPLAINT & IN OPPOSITION TO DEFENDANTS' CROSS-MOTION**
**FOR SUMMARY JUDGMENT AS TO COUNTS I AND II.**

## I.  THE PLAINTIFF'S CLAIM FOR SUMMARY JUDGMENT AS TO COUNT I BY COLLATERAL ESTOPPEL, SHOULD BE ALLOWED

**A. THERE ARE NO FACTUAL DISPUTES:** The application of affirmative
collateral estoppel to Count I of the complaint is based only
on the contents of the Decision of the Department of Labor
deciding the claim for workers compensation in favor of the

plaintiff. The V.A. does not in any manner contest the contents of the decision as the sole facts to be considered.

## B. THE LAW PERMITS AFFIRMATIVE COLLATERAL ESTOPPEL TO BE APPLIED IN THE FIRST CIRCUIT

1.Authority: In seeking the authority to apply affirmative collateral estoppel in the First Circuit, to the decisions of the workers compensation appeal-hearing officer, the plaintiff did not rely on the decisions cited by the defendant in p. 17-19 of its brief, but rather on the following definitive decisions in this circuit as follows:

"This district court is permitted to apply affirmative collateral estoppel to a case according to the First Circuit Ct. of Appeals. The said Court recognized the doctrine of **Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)** (internal citations and footnotes omitted) notwithstanding some logical problems. As the First Circuit Court has said:

**"The Supreme Court completed its break with traditional collateral estoppel doctrine in Parklane Hosiery by according district courts broad discretion to apply (even) non-mutual offensive collateral estoppel.. . . We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied". Luis A. ACEVEDO-GARCIA, et al., Plaintiffs, Appellees/Cross-Appellants, Roberto Vera MONROIG, et al 351 F.3d 547, 575 (1rst Cir. 2003). See also, Gonzalez Pina v. Rodriguez, 278 F.Supp.2d 195,203 (D. Puerto Rico, 2003) (This district court applied and explained the doctrine in this Circuit)**

When one is litigating this issue, 'Federal Common Law' is applicable. Inquiry in such circumstances is made by federal courts to establish such doctrine, in both federal and state sources. **Gonzales Pina, Id**.

Prior workers compensation decisions of federal and state agencies have been determined to have issue preclusive effect. **Bath Ironworks Corporation v. Director of Workers Compensation Programs, U.S. Department of Labor,(sic))125 F. 3d 18 (1rst Cir. 1997),(sic) Alba vs. Raytheon Co., 441** Mass. 836, 841-843 (2004), **Taylor**, Id.' (Plaintiff's **Brief p.** )

Nowhere in its brief does the V.A. contest the above authority or case law as being applicable as described. It is true that in **Bath Ironworks, supra** the Circuit Court upheld the defensive use of a state worker compensation decision, to reverse a different subsequent similar, but not identical, federal workers compensation claim at the same 'Department of Labor'. There appears to be no legal or logical difference to the application of the doctrine when using a prior federal workers compensation claim to determine similar facts between the same parties in a subsequent federal discrimination claim, nor is there any case law or is there any logic in saying there is any difference in using the doctrine in this regard, affirmatively or defensively.

The cases relied on by the plaintiff and discussed by the V.A. were for a different purpose than to be the authority for affirmative collateral estoppel. These cases discussed by the V.A. on p. 17-18 of their brief were meant to show the similarity between the factual elements proved in the workers compensation case and the factual elements needed to prove this discrimination case. As set forth in the plaintiff's brief:

3

"The Plaintiff says that the decision of the 'Department of Labor' in her workers compensation case described above, in sustaining her claimed workers compensation injury, also decided all of the necessary facts she needed to prove a violation of the Rehabilitation Act by the V.A. **Taylor v. Secretary of Navy** 852 F.Supp.343, (E.D.Pa.,1994). Violation of Rehabilitation Act. **Calero-Cerezo V. United States Department of Justice,** et al, 355 F.3d 6, 15 A.D. Cases 129, 27 NDLR P 140 (2004). (herein after the 'Calero' decision) Said decision also decided that for purposes of a federal employee suit under the Rehabilitation Act, definitions in the ADA also applied to the Rehabilitation act. and used them interchangeably) **Id.** 13. (Plaintiff's Brief P.   )

## 2. The Doctrine Applies to Workers Compensation Decisions:

The doctrine cited has much more limited application to distinguish the nature of the decisions of adjudicators to whom collateral estoppel applies since **Parklane**, supra, rather than earlier decisions cited by the V. A., in its brief which were, distinguished on their facts and logic in this Circuit in **Bath Iron Works, supra.**

In addition to decisions of administrative adjudicators, the doctrine of issue preclusion is applied by federal courts generally, to enforce the prior decisions of arbitrators, a process where no 'burden of proof' is enunciated and lawyers are not required. **Pujoi v. Shearson/American Express, Inc., 829 F. 2d 1201, 1206-1207, (1st Cir.1987).**

However in this case the Workers Compensation Adjudicator made clear that she was applying **the same burden of proof** as would be required in this court to decide the discrimination

case. She also cited administrative case law, to support her
enunciation of the burden of proof. As she said:

> "The claimant has the burden of establishing by the
> weight of the reliable, probative and substantial
> evidence that her condition was caused or
> adversely affected by her employment. As part of
> this burden she must present rationalized medical
> opinion evidence, based on a complete factual and
> medical background, showing causal relation"(Cited
> Administrative Cases omitted)" Ref: 14)"

These facts are in accord with the analysis made by this
circuit court it sustained the application of the doctrine from a
state workers compensation claim from Maine in this regard. **Bath
Ironworks v. Workers Comp.,125 F.3d 18, 22 (1rst Cir. 1997)**

As to the difference in substantive standards argued by
the defendant as barring the application of the doctrine, this
circuit **limits** the application of such a difference in standards to
situations to "**only where the difference undermines the logic of
the doctrine.**" (**Bath Iron Works at 22**). This is not such a case on
its facts. Exactly those facts which caused the 'bursitis' and its
effects, were the facts of 'discrimination' as determined by the
hearing officer and required to be proved under the rehabilitation
statute in regard to the same parties.

All requirements for the application of collateral
estoppel in these regards therefore are met in this case by the
prior adjudication and it should be applied in this case.

5

### 3. The essential issues of the discrimination claim were litigated and decided by the workers compensation decision.

In the present motion for the application of collateral esttopel, Enica contends that the V.A. failed to make reasonable accommodation to her handicap because: (1) the V.A. caused her to walk excessively in violation of medical limitations placed upon her by doctors, and (2) failed to provide her with a 'reasonable accommodation' such as a 'scooter', which would permit her to perform the 'essential functions' of her job as a staff nurse prior to her injury.

The discussion in the plaintiff's brief in support of her motion, and the citations and examination of cases in that brief indicated the facts, level of proof and determinations by the prior adjudicator of the necessary elements for proof of the violation of the discrimination law for purposes of collateral esttopel in this Circuit. This proof by prior adjudication is to eliminate the need for the same parties to adjudicate the same facts again at trial, as argued in section III C of the defendant's Brief. (p.23)

### II. OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AS TO COUNT I

A. **Introduction:** If the court does not find the doctrine argued above applicable, the plaintiff says that there is sufficient evidence in the record to create **an issue of fact** as to whether

6

or not the defendant violated the Rehabilitation Act as to her. **Calero-Cerezo V. United States Department of Justice, et al, 355 F.3d 6, (2004). (herein after the 'Calero' decision).**

**B. Facts:** The plaintiff submits the following additional facts in support of her opposition as follows:

1. At a meeting with the VA June 28, 2002, in accordance with her doctor's reports and medical limitations the plaintiff requested accommodation in her new job at West Roxbury, that included her inability to walk excessively. The memo from the meeting failed to include the walking limitation although it was supposedly conveyed to her orally. (See Defendant's Statement of Facts par. 29-31 ( hereinafter D. St of F.)

2. Notwithstanding her request to limit walking the plaintiff was assigned walking rounds, and was unable to do her walking rounds because of leg and back pain. (D. St of F., par. 34)

3. on September 9, 2002 the plaintiff filed a workers compensation claim from a bursitis she claimed occurred at work because of excessive walking. The Department of Labor upon appeal found tha the injury was caused by excessive walking on the job and awarded benefits.(D. St. of F. par. 45, 47)

4. Pursuant to its authority in the matter of a claim for workers compensation under (Title 5, U.S. Code 8101 et. seq.) of the said plaintiff; employed by the defendants, the 'Department of Labor' in a matter appealed to it by the plaintiff from an adverse decision by the V.A., decided in favor of the plaintiff which is set forth below in said Decision (Exhibit 'A' to plaintiff's counsel's Affidavit and an exhibit to 47 of the Defendant's) portions of which are

set forth below and renumbered as follows: **(Reference is to original unnumbered paragraphs)**

"U.S. DEPARTMENT OF LABOR
Office of Workers' Compensation Programs

### DECISION OF THE HEARING REPRESENTATIVE

In the matter of the claim for compensation under Title 5, (U.S. Code 8101 et. seq.) of Lucia Enica, Claimant; Employed by the Department of Veterans Affairs in Boston, Massachusetts. Case No.012011872.

Merit consideration of the case file was completed on May 12, 2003. Based on this review, the decision of the District Office dated January 26, 2003 has been reversed for the reasons set forth below. (Ref: Intro)

The issue for determination is whether the claimant's condition is causally related to the work injury of September 9, 2002. (Ref: 1)

1. The plaintiff, born December 14, 1952,is employed as a Nurse for the Department of Veterans Affairs (hereafter described as the "Agency") in Boston, Massachusetts. On September 9, 2002, she filed timely notice a claim for worker's compensation due to a traumatic injury sustained on the same date as she felt leg and back pain after walking an excessive distance at work. The claimant stopped work on September 3, 2002. (Ref: 2)

2. The plaintiff had a pre—existing condition of severe end-stage osteoarthritis of the right knee, bony anklyosis and osteoarthritis to the right ankle; poliomyelitis with quadriceps palsy of the right leg, leg length inequality, and chronic degenerative disc disease with sciatica of the left leg. (Ref 3)

3. As a result Dr. Robert Provost her physician, recommended that she should not stand more than five minutes and limit walking. (Ref: 3)

4. Prior to the plaintiff filing her workers compensation claim, on June 28, 2002, the Agency indicated it would accommodate her need for restricted duty due to her pre-existing condition. (Ref: 4)

8

5. On September 9, 2002, Dr. Kenneth Krutt stated that the claimant had left hip bursitis due to excessive walking combined with her right leg issues. He noted the prior history of polio and right leg deformity. (Ref: 5)

6. On September 16, 2002, Dr. Provost noted the back pain resolved but the bursitis persisted. He indicated that situation would become worse with her continued job requirements. (Ref: 6)

7. On October 2, 2002, Dr. Provost described the claimant's transfer to another medical facility that required walking up to two and a half miles per day which aggravated her disability. He recommended transfer to another facility to eliminate the repetitive stress to the right lower extremity. (Ref: 7)

8. On October 21, 2002, the agency denied the request for a transfer to another facility but instead offered to provide the claimant with a scooter. (Ref 8)

9. On October 29, 2002, Dr. Provost released the claimant to return to work effective November 4, 2002.(Ref: 9)

11. As of May 3, 2003 the claimant used a scooter to ambulate from station to station. (Reference 8)

12. On January 26, 2003, the District Office denied the claim for the reason that it said the evidence failed to establish that the claimant's condition was causally related to her federal employment." (Ref: 11)

12. The claimant disagreed with the decision of the District Office, and appealed requesting an oral hearing before an OWCP representative. Upon such review, the decision of the District Office, dated January 26, 2003 was reversed by the hearing officer." (Ref: 12)

13. The 'hearing officer' found the applicable administrative law to apply to the plaintiff's claim to be as follows:

> "An award of compensation may not be based on surmise, conjecture, speculation or the claimant's belief of causal relationship. The claimant must present rationalized medical opinion evidence, based on a complete factual and medical background, showing causal relationship. The mere manifestation of a condition during a period of employment does not raise an inference of causal relationship between the condition and the employment. Neither the fact that the condition became apparent

9

during a period of employment nor the claimant's belief that the employment caused or aggravated his (her) condition is sufficient to establish causal relationship. (Cited cases omitted) (Ref 13)

The claimant has the burden of establishing by the weight of the reliable, probative and substantial evidence that her condition was caused or adversely affected by her employment. As part of this burden she must present rationalized medical opinion evidence, based on a complete factual and medical background, showing causal relation"(Cited Cases omitted)" Ref: 14)

14. The final decision of the Department of Labor therefore determined that the plaintiff had established that her excessive walking in her position at the Veteran's Administration resulted in or was causally related to a left hip condition as she claimed and found her pre-existing right leg condition made her more susceptible to the left hip problem due to overcompensation as supported by Dr. Provost. (Ref: 19)

15. To support that decision and order for payment, The Hearing Examiner made the following additional findings of fact:

    **a.** "In the present case, the claimant cited excessive walking in her position as a nurse as being the cause of her back and leg pain. During **her attempt to seek accommodation from her employer**, the claimant submitted medical evidence from her physician, Dr. Provost, which noted her pre-existing conditions and recommended that she be placed in a position that did not require excessive standing or walking. **(Emphasis supplied) (Ref: 15)**

    b. The claimant filed her claim after walking excessively on September 9, 2002 while performing her duties. She sought treatment with Dr. Krutt who diagnoses bursitis of the left hip due to excessive walking in combination with the pre-existing right leg conditions. Dr. Krutt referred the claimant back to Dr. Provost whose reports provided the

10

> history of walking at work with pain in the
> back into the left hip. (Ref: 16)

> c. As of September 16, 2002, the back pain had
>   resolved but the claimant continued with
>   complaints in the left hip. Dr. Provost noted
>   that since the claimant's significant right
>   knee degeneration has created the problems
>   with the left hip and continuing to work in
>   the same environment will only worsen the
>   situation. (Ref: 17)

> d. On October 2, 2002, Dr. Provost noted x-rays
>   of the left hip which showed no
>   osteoarthritis, yet again recommended that she
>   avoid repetitive stress to the right lower
>   extremity. (Ref: 18)

> e. (Dr. Provost) he released the plaintiff to
>   return to work effective November 4, 2002, and
>   the claimant reported that she now used a
>   scooter to ambulate in her position as a
>   nurse." (Ref 18)

16.  The Department of Labor Hearing Officer entered the
following orders:

> a. "Upon return of the file to it, the District
>   Office is ordered to accept the claim of the
>   plaintiff for left hip bursitis and pay the
>   appropriate entitled benefits." (Ref: 20)

> b. Consistent with the above findings, the decision
>   of the District Office dated January 26, 2003 is
>   REVERSED and the case file returned for further
>   action as described above." (Ref 21)

.

A. The said orders were not further appealed from the Hearing
Officer, to the Secretary of Labor by the plaintiff or the
defendants, but instead were complied with by the defendants.
(Ref: Plaintiff's Attorney's Affidavit, par. 2)

.

11

## ELEMENTS OF THE CLAIM

A. **Discrimination**:

Enica claims that the V.A. discriminated against her based on handicap in violation of § 504 and 501 of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides in relevant part:

**"No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or * * * by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a) (1988)."**

As the Supreme Court explained in <u>**School Bd. of Nassau County v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)**</u>, an "otherwise qualified" person in the employment context is one who is able to perform the essential functions of the job in question. See <u>id. at 287 n. 17, 107 S.Ct. at 1130-31 n. 17</u> (citations omitted).

The Court qualified this definition by requiring "reasonable accommodation" on the part of the employer:

**"When a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any "reasonable accommodation" by the employer would enable the handicapped person to perform those functions. Accommodation is not reasonable if it either imposes "undue financial and administrative burden" on a grantee, <u>Southeastern Community College v. Davis, [442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979)</u> ], or requires a "fundamental alteration in the nature of [the] program," <u>id. at 410[, 99 S.Ct. at 2369]</u>. <u>Arline, 480 U.S. at 487 n. 17, 107 S.Ct. at 1242-43 n. 17</u>. See also <u>Nelson v. Thornburgh, 567 F.Supp. 369, 379-82 (E.D.Pa.1983)</u>, aff'd without op., <u>732 F.2d 147 (3d Cir.1984)</u>. "**

The employer has the burden of proving inability to accommodate a handicapped employee and/or that accommodation would impose an undue hardship on the agency. See <u>**Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1387 (3d Cir.1991)**</u>; <u>**Prewitt v. United**</u>

12

**States Postal Service, 662 F.2d 292, 308 (5th Cir.1981).**

Section 501 of the Act, 29 U.S.C. § 791, which applies only to federal employers rather than to federal grantees generally, goes beyond Â§ 504's reasonable accommodation requirement by requiring federal employers to take affirmative action with respect to employment of the handicapped. Specifically, Â§ 501(b) requires each agency to submit "an affirmative action program plan for the hiring, placement, and advancement of handicapped individuals" that describes "the extent to which and methods whereby the special needs of handicapped employees are being met." The plan is reviewed annually to determine that it provides "sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for handicapped individuals."

In the present motion, Enica contends that the V.A. failed to make reasonable accommodation to her handicap because: (1) the V.A. caused her to walk excessively in violation of medical limitations placed upon her by doctors, and (2) failed to provide her with a 'reasonable accommodation' such as a 'scooter', before she was injured, which would permit her to perform the 'essential functions' of her job as a staff nurse.

The plaintiff clearly with explicit authority, showed how the decision adjudicated each issue necessary to create an issue of fact as to the violation of the rehabilitation act in this matter to the extent necessary to deny the defendants' motions for summary judgment.

By said labor department decision and other facts set forth, the plaintiff says that the 'Decision' also decided that such failure to accommodate, caused her injury and interference with her life activity i.e. 'to walk' and 'to 'work', in violation of

13

the Rehabilitation Act. Said failure of accommodation was expressly found by the said Department of Labor's decision and that such failure of accommodation caused the plaintiff physical injury. (See paragraph 15 (a) of the decision above among other things)

The decision also found the department corrected this failure of accommodation later, when the agency provided the plaintiff 'a scooter' to do her 'rounds' and thereby limit her 'excessive walking' on the job as required to accommodate her conditions. (See paragraph 11, 15 (e))

As described in the decision, the employer was on notice of the necessity to limit the walking of the plaintiff among other activities due to her physical condition, and the need to provide such a 'reasonable accommodation' to permit her to do the 'essential' functions of her job as reported to it by competent medical opinion and warnings. (Decision paragraphs 2-8, 11)

When accommodated as the VA was required to do, and recovering from the 'bursitis' as described in the decision, she was able to perform the essential functions of her position. (paragraphs 10, 11).'

The plaintiff therefore was also found to have suffered from acts and been caused harm, which were necessary to prove she was discriminated against by her employer, in violation of the Rehabilitation Act.

## A. The Decision: Introduction

This motion seeks to apply the doctrine of 'affirmative collateral estoppel' to decide that the facts decided in the decision, also determine the liability of the V. A. for her

14

claims for liability in Count I of the complaint in this case alleging violations of the Rehabilitation Act.

The Plaintiff says that the decision of the 'Department of Labor' in her workers compensation case described above, in sustaining her claimed workers compensation injury, also decided all of the necessary facts she needed to prove a violation of the Rehabilitation Act by the V.A. **Affirmative Collateral Estoppels: Taylor v. Secretary of Navy** 852 F.Supp.343, (E.D.Pa.,1994. Violation of Rehabilitation Act. **Calero-Cerezo V. United States Department of Justice**, et al, 355 F.3d 6, 15 A.D. Cases 129, 27 NDLR P 140 (2004). **(herein after the 'Calero' decision)** Said decision also decided that for purposes of a federal employee suit under the Rehabilitation Act, definitions in the ADA also applied to the Rehabilitation act. and used them interchangeably) **Id.** 13.

## B. Disability.

"The ADA defines "disability" as either (a) a physical or mental impairment which substantially limits one or more of an individual's major life activities;  (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); see also 29 C.F.R. § 1630.2(g). Here, plaintiff contends, under subsection (a), that she actually suffered a mental impairment that limited one or more of her major life activities. If an employer, aware of an employee's disability, refuses to provide a requested reasonable accommodation, the employer violates the Rehabilitation Act, unless it can show that the proposed accommodation would pose an undue hardship for its business. *See Higgins, 194 F.3d at 264*. " Id 13.

[14] It is well established that the determination of whether a plaintiff has a disability must be made on a case-by-case basis. *See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)*; *Sutton v. United Air Lines, Inc., 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)*.  The analysis leading to this determination requires the court to consider the record in the light of three questions. First, did the plaintiff suffer a physical or mental impairment? Second, did the "life activity" limited by the impairment qualify as "major"? Finally, did the impairment, in fact, *substantially* limit the plaintiff's identified major life activity? *See Bragdon v. Abbott, 524 U.S. 624, 630- 31, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)*.  The burden is on the plaintiff to establish these three elements.  *See Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1167 (1st Cir.2002)*; *Carroll, 294 F.3d at 238*." Id. 14.

c. **Impairment of a Life Function.**

There is clear evidence in paragraphs 1-5 of the 'Decision' of the Department of Labor set out above, that Enica's physical impairments did "substantially" limit a major life activity i.e. her ability to walk and then by the failure to 'Accommodate,' her ability to work.

"The Supreme Court has assumed, without deciding, that working itself may be considered a major life activity for purposes of the ADA. *Sutton*, 527 U.S. at 492, 119 S.Ct. 2139. Likewise, this court has on occasion assumed *arguendo* that working might be deemed a major life activity under the Rehabilitation Act. *See, e.g., Bailey*, 306 F.3d at 1168 n. 5; *Carroll*, 294 F.3d at 239; *Gelabert-Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 58 (1st Cir.2001). *Calero* at 21.

'Although the federal statutes do not explicitly define the phrase "substantially limits," in *Sutton* the Supreme Court instructed that the phrase "suggests 'considerable' or 'specified to a large degree.' " *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139. Even so, "while substantial limitations should be considerable, they also should not be equated with 'utter inabilities.' " *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir.1999). The Supreme Court has stated that "[w] hen significant limitations result from an impairment, the disability definition is met *22 even if the difficulties are not insurmountable." *Bragdon*, 524 U.S. at 641, 118 S.Ct. 2196. An impairment can substantially limit a major life activity, even though the plaintiff is still able to engage in the activity to some extent. *See Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 22 (1st Cir.2002). " *Calero* at 21,22.

B. **Failure to Accommodate.**

"If an employer, aware of an employee's disability, refuses to provide a requested reasonable accommodation, the employer violates the Rehabilitation Act, unless it can show that the proposed accommodation would pose an undue hardship for its business. *See Higgins*, 194 F.3d at 264.

[24] Reasonable accommodations may include "job restructuring, part- time or modified work schedules, reassignment to a vacant position ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). A careful, individualized review of an accommodation request in light of the specific facts of the case is needed to determine whether the request was reasonable. *García-Ayala*, 212 F.3d at 647.

[25][26] To show that a proposed accommodation was reasonable, a plaintiff must prove "not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Reed*

*v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir.2001). The request for accommodation must be " 'sufficiently direct and specific,' giving notice that she needs a 'special accommodation.' " *Id.* at 261 (quoting *Wynne v. Tufts Univ.*, 976 F.2d 791, 795 (1st Cir.1992)). Colera at 23.

By said labor department decision the plaintiff says that the 'Decision' raises the issue that such failure to accommodate, caused her injury and interference with her life activity i.e. 'to walk' and 'to work', in violation of the Rehabilitation Act. Said failure of accommodation was expressly found by the said Department of Labor's decision and that such failure of accommodation caused the plaintiff physical injury. (See paragraph 15 (a) above among other things)

The decision also found the department corrected this failure of accommodation later, when the agency provided the plaintiff 'a scooter' to do her 'rounds' and thereby limit her 'excessive walking' on the job as required to accommodate her conditions. (See paragraph 11, 15 (e) above.)

As described in the decision, the employer was on notice of the necessity to limit the walking of the plaintiff among other activities due to her physical condition, and the need to provide such a 'reasonable accommodation' to permit her to do the 'essential' functions of her job as reported to it by competent medical opinion and warnings. (Decision paragraphs 2-8, 11)

When accommodated as the VA was required to do, and recovering from the 'bursitis' as described in the decision, she was able to perform the essential functions of her position. (paragraphs 10, 11)

## B. The Appearance of a Limitation:

17

This was also a case where the decision described obvious physical limitations, which also gave the 'appearance' of a disability; and should have been accommodated even without the necessity of medical reports. (Among the injuries reported in paragraph two was 'leg inequality' from which one can infer that Enica limped at all times, and from the other conditions described would appear to have a handicap.

With one leg shorter than the other, her limp was obvious at all times.   (She should not have had to wait to ask for the accommodation, and receive it only after she was injured by an exacerbation of her obvious condition, so bad that it caused a 'bursitis' to develop.)

## OPPOSITION TO COUNT II

The plaintiff says she was retaliated against by the VA in being denied a promotional position for which she applied as alleged paragraph 23, 25, and 26 of the complaint. The defendant's statement of facts allege that the decisions and reasons to deny her the promotional position were   those of one Doctor Robert W. Carley. Par. -56-64 (Warfield affidavit, certain paragraphs sought to be striken, by plaintiff's motion to strike)

Exhibit 'B' to the Affidavit of the Plaintiff indicates that Dr. McCarley was aware of the plaintiff's disabilities by an e-mail on June 17, 2002. This by itself creates an issue of fact as to the motives of Dr. McCarley and contradicts his alleged assertions.   The plaintiff further said in her affidavit as follows:

18

"A position for a psychiatric nurse counselor gets posted at JP in 2003 for which I applied.  I tried desperately to interview for it and I get such a run around that not even with the intervention of my lawyer could I find out the circumstances of why the position disappeared until about November 2005. I got no answer before that time on my application. This was in my experience very unusual on job postings which rarely took over 6 months for a response. I got none until my lawyer insisted from the EEO counselor.

62. My lawyer moves to strike Warfield's statement of what Mc Carley did and why he terminated the jobs. My lawyer and I learned that the VA claimed that Dr. McCarley (who was aware of my disability and the need for physical accommodation since 2002) (See Exhibit B) did not care for a nurse counselor because he needed the position for a doctor.

I do not believe that. It should be noticed that although the statement of facts say that two applicants applied for the job, including me, it does not say the other applicant was qualified as I was. In addition no notice of what was happening appeared until over two and one half years from the date of application. Why so long? I believe I was qualified to do the job for which the doctor was hired, at less cost or at least should have been asked and seen a posting which I did not.

I do not believe the motivation was as stated but rather to prevent me from obtaining a job that would place me higher in pay and responsibilities than some of my prior supervisors in mental health notwithstanding my qualifications, and to punish me for seeking my rights including accommodation under the rehabilitation law.

Nothing in the documents provided indicate that the abolishing of the posted job for which I applied, and use of the money over two years later for another purpose, was not to punish me. What happened to the original purpose to create the job for which I applied and the time that passed to do it's responsibilities?   There was a prior budget process to post the job and a decision about it.  Nothing was brought forward to compare with what it is alleged the doctor did in abolishing the job, and what was said to create and originally justify it. This silence infers that objectively the doctor's alleged reasons probably are not correctly stated. His failure to sign an affidavit as to his motives and actions infers again by silence,  he may not have done what is alleged for the reasons stated.

In my opinion, it has been a pattern with the VA not providing me with accommodation and denying me any positions I have applied for."


## D. CONCLUSION:

In  sum,  the  'Decision'  of  the  'Department  of  Labor'

determined by collateral estoppel or with other facts in the affidavit of the plaintiff, describes sufficient facts to create an issue of fact that the defendants, being aware of plaintiff's disability and of her request for accommodation, failed to make a reasonable response. Given that the decision contained findings that (1) that Enica did suffer from a disability within the meaning of the statute which interfered with life functions i.e. her ability to 'work' and/or 'walk' (2) that she was a qualified individual who was able to perform the essential functions of her job with reasonable accommodation and (3) that her employer failed to reasonably accommodate her disability when on notice.

2 An issue of fact is created on the facts submitted as to the motivation to refuse to promote the plaintiff to the position of Nurse Counselor.

The Plaintiff,
By her Attorney,

/s/Sanford A. Kowal

Sanford A. Kowal
BBO No. 278420
56 Chestnut Hill Avenue
Boston, Ma. 02135
617 562 8100
e mail: SANKOW@MSN.com

21