```
                    UNITED STATES OF AMERICA

                         DISTRICT COURT
              FOR THE EASTERN DISTRICT OF MASSACHUSETTS


                                          Docket No. 04CV11468

_____
                                       )
Lucia Enica                            )
                                       )
          Plaintiff                    )
                                       )
   vs.                                 )
                                       )
Anthony J. Principi, as he is Secretary)
of the Department of Veteran Affairs   )
et al.                                 )
                    Defendants         )
                                       )
_____ )
```

### RESPONSE OF LUCIA ENICA TO ALLEGED STATEMENTS
### OF AGREED FACTS PURSUANT TO RULE 56.1

Now comes plaintiff and says that she agrees with each numbered paragraph of the defendant's statement of agreed facts except those set forth below, each of which are supported by the plaintiff's affidavit and exhibits filed herewith, with the same numbered paragraphs and the answer to Defendant's Interrogatory no. 13 & 14 by the plaintiff where mentioned in said affidavit as follows:

1

#*5.* It is true that I was hired as a psychiatric nurse. I attach my resume (Exhibit 'A') which indicates that as my experience. The application was for this position and my interview was with Mary Faren, who was the head nurse on one of the psychiatric units at the time. This is true even if I was technical hired in the title of 'registered nurse' which I also was. I did not come to work in medical wards.

#7. The fitness for duty examination was done before being hired in 1994, and although I had obvious disabilities, none interfered with my work at that time.

#8. Later in **1995,** when I was informed that the psychiatric unit I was working on would close and it was said that I would be sent to work on a medical surgical unit, I reminded all my supervisors, from my Head Nurse to the Chief of nursing that I am not able to do so due to my health history of polio which was documented during the fitness for duty prior to being hired. Everybody was aware of my handicap due to my limping, not to mention the frequent questions I was constantly asked by my colleagues regarding my limping and my handicap automobile driving plates. I was asked to bring a medical note when I mentioned my physical limitations for medical work, and I did so on **10/30/95.** See also my answer to Interrogatory No 13 & 14

# 9. It is true that I was not strong enough to take the Patient to the ECT that day in 1996  which required that I also push the stretcher by myself to the operating room, stay with the patient until ECT was done and push the patient back to the floor and into his room and help him to get off the stretcher and place him in bed safely (as you know all VA patients are adults, most males and very few with a weight less than 45 lbs. I wasn't supposed to do such a physical task in the first place. The VA after this incident ordered me to bring another medical note from my doctor with specific directions regarding my physical ability to do such physical tasks, which I did on *5/6/96*. See also my answer to Interrogatory No. 13 & 14.

#11. My supervisor did not like this limitation and a fitness for duty with the VA chief Orthopedic service was done *7/25/96* and I severely limited my physical capabilities for duty. (See defendant's paragraphs 12 & 13 & 14 and the report. All this time I was assigned to take patients to ECT.

#12.  Dr. Harris' report speaks for itself.

#13 & 14. Dr Harris never discussed his report with me. He only sent me back to the nursing office. I was told to return to my unit and my supervisor floated me to a medical unit for the rest

3

of the day where I was asked to transport a patient in a wheelchair to some test.

Dr Harris written report appears to be a dictation, dated with the date of the physical exam 7/25/96, containing a correction dated 7/29/96. I never saw this report until many years later nor did anyone at to work tell me of its contents, so I did not know of its specific contents and limitations. Obviously my supervisors did since they had requested it.

#14. In any event I was aware of my physical limitations. I was the one requesting the VA administration to help me in getting accomodat1ons for my disabilities. The VA refused to accommodate my requests or my doctor's requests. Strangely enough my supervisors noticed the problems I was having. (It was not possible for anyone
not to notice my limping) But despite my supervisors' permanent involvement in patient care, and as such, in observing and evaluation of physical and emotional problems, nobody seem to be able to make the connection between my limping, the history of polio and my reports that certain physical tasks were beyond my ability to do them without hurting myself or the patient. Nor did they seem to realize the emotional stress they were inflicting on me with their continuous harassment, by pretending that they don't have enough evidence of my disability to acknowledge it as such. After the limitations in my fitness for

duty as described by Dr. Harris the supervisors did not change their actions I was still consistently required to take patients to ECT or floated to medical units, where I was assigned to do only physical tasks for patients. (See also my answer to Interrogatory Number 13 & 14.)

#15. In my opinion #15 *is* contradicted # 16 and #15 is not correct. I was trying the best I could to get some fair treatment and to obtain reasonable work conditions. I was still consistently assigned to take patients to ECT and I was consistently floated to the medical units to work on a medical floor to do physical tasks that my doctor and the VA doctor stated clearly that I was not fit to do. (See also my answer to interrogatory 13 & 14.)

#17. The EEO did not dispute my physical limitations and they concluded that the VA by **not** transferring me to a medical unit, addressed my required limitations.

#18. I felt lost, confused and demoralized. I did not know what to do and nobody gave me any assistance in helping me with the EEO process, and I did not have the money to hire another lawyer. I have interviewed for a number of psychiatric nursing positions at the outpatient clinic at CA, JP and even Bedford VA but I was always turned down. I focused on going back to school and getting a master degree in psychiatric pursing so

5

that with more education and a higher qualification to be able to got a job in which I will not be required to do the physical tasks I was not fit to do.

#19 to 37 my disability aggravated over time and I had again requested reasonable accommodations in May 2002.

This time the Union promised to help me get through the process. I obtained Dr. Harris's report and started to refuse to lift push and pull patients. I had also developed severe arthritis to my right knee and walking began to be a serious problem for me. I requested directions (via E-mail) on what I was suppose to do in order to get reasonable accommodations.

I did everything I was told to do: providing the Employee Health with medical documentation; Sending my request for accommodation in writing to the chief of service and being specific about what I was not able to do, as instructed but nothing changed.

I sent my request (via E-mail) to everybody who was invested with authority to make a decision regarding my request *for* a position in outpatient psychiatric nursing. (including to Dr. McCarley Robert. (See Exhibit B) He therefore knew of my

disabilities directly from me. He received the e-mail as acknowledged on the document..

It is true that the plan was to close the inpatient psychiatric unit at JP, but not the outpatient psychiatry or the substance abuse program at JP.I was very qualified to work in either of these programs. However nobody took my request for reasonable accommodation by moving to such a unit into consideration.

I was basically informed that I will be transferred to West Roxbury Crisis Stabilization Unit and that they will accommodate my disability in the new job. That hospital would however require much more walking than Jamaica Plain because it was spread out over a large area.

The union said it would get me the accommodations in e writing before the transfer, but she was not able to even obtain it before the transfer.

At West Roxbury in my new position the physical demands of the job worsened. The accommodations provided did not follow my orthopedist's directions. The distance I was forced to walk in my new job was very much longer than in my previous job. I couldn't any longer continue the new walking since I was now experiencing increasing pain in my right leg.

Gradually my back started to hurt constantly, due to this continuous effort to walk as I was required to do. I was very desperate to see that the more I hurt the more I was asked to do.

I was stationed in Bdg. #3 next to the entrance there. The inpatients units are in Bldg 1 (patients units on 3rd, 4th,and 5th floors, long floors as it can be seen in the diagram) and Blg.#2 (patients units on the ground floor, 1st and 2  floor. This is a building designed for patients with spinal cord injury, and as such corridors and rooms are very large to accommodate equipment). The distance from building #3 to Bldg #2 is one quarter of a mile.

According to my new job description, I was suppose to do rounds on the medical units and "8.Provide psychiatric consultation to the West Roxbury VA in-patient units" and

"9.Make rounds of the psychiatric patients housed on the medical units, when time allows."

In the Crisis Stabilization Unit, CSU (mental health) we had 3 beds that could be used for a maximum of 23 hour stay. This was a new type of program. It turned out that we rarely had a patient in the unit, nobody during the first two weeks and about 2 per week since then. Not always on my shift. Because of this I was required

having to go to the medical units were what I was doing almost everyday I worked there.

In addition to what I have described I was also expected to participate in the Psychiatric team rounds, conducted by the director of psychiatry (scheduled 3 times a week) Dr. Muffson.

During these rounds, the speed of walking from ward to ward, the amount of walking and standing by the patients bedside and in post conference **in** the hallways was overwhelming for me. I tried not to participate in these rounds but I got pressure from my supervisors to participate.

And again because we had no patients in the CSU, one way the nursing service decided to utilize the psychiatric RNs was to do one to one with agitated psychiatric patients housed on the in-patient units, and as "sitters" for the non psychiatric but confused and agitated patients, or patients that were risk for fall. The psychiatric nurses wanted to rotate in such instances, every hour on the hour and this implied many trips from my place of station to the units, Very often those patients needed to go to some tests someplace in the hospital and I had to walk with them.

I could never measure exactly the amount of walking I did everyday but by just adding up the trips between my place and the

buildings with the wards (without adding the walking on the wards) it was between one and a half and two and a half miles a day.

My doctor requested that I should not do the walking rounds on the word I was working at JPVA, and in my new job I was expected to do rounds in the entire hospital at WRVA and to walk the long distances between the buildings.

At the beginning of August 1 realized that I could not keep up with this amount of walking. Despite my best efforts to work with the union and the administration I wasn't able to obtain reasonable accommodation. I hired a lawyer.

Nothing was done. I continued to perform my job until September 9. I was taking Celebrex for pain (200mg a day), and the over the counter Glucosamine and Chondroitin. I was in pain constantly. On September 9 I went to stay with a patient on one to one in building 2, AG unit. After an hour a nurse came to replace me. On my way back to my station, on the corridor connecting building 1 to building 3, I felt a sharp pain in my lower back and left leg when I was stepping on my left leg (my good leg) I was about to fall. Some hospital staff helped me to the employee health. The NP from EH sends me to be evaluated by my own doctor.

At the end of October, when I was promised a "scooter" for ambulating, I accepted it Now I was using the scooter to travel

from my station to the inpatient units. (See also my answer to interrogatory 13 & 14)

#38 I was out of work on Sick leave from September 9th to Nov 3, 2002, for which I filed a workers compensation claim.

After being provided the scooter they change my job again. I was now expected to provide physical care for patients who were not able to physically care for themselves. When I refuse to do it the VA send me home on paid leave until they decided to detail me to TAP in 2003.

 60, 61. A position for a psychiatric nurse counselor gets posted at JP in 2003 for which I applied.  I tried desperately to interview for it and I get such a run around that not even with the intervention of my lawyer could I find out the circumstances of why the position disappeared until about November 2005. I got no answer before that time on my application. This was in my experience very unusual on job postings which rarely took over 6 months for a response. I got none until my lawyer insisted from the EEO counselor.

62. My lawyer moves to strike Warfield's statement of what Mc Carley did and why he terminated the jobs. My lawyer and I learned that the VA claimed that Dr. McCarley (who was aware of

my disability and the need for physical accommodation since 2002) (See Exhibit B )  did not care for a nurse counselor because he needed the position for doctor.

I do not believe that. It should be noticed that although the statement of facts say that two applicants applied for the job, including me, it does not say the other applicant was qualified as I was. In addition no notice of what was happening appeared until over three years from the date of application. Why so long? I believe I was qualified to do the job as posted for which the doctor was hired, at less cost or at least should have been asked and seen a posting which I did not.

I do not believe the motivation was as was stated but rather to prevent me from obtaining a job that would place me higher in pay and responsibilities than some of my prior supervisors in mental health notwithstanding my qualifications, and to punish me for seeking my rights including accommodation under the rehabilitation law.

Nothing in the documents provided indicate that the abolishing of the posted job for which I applied, and use of the money three years later for another purpose, was not to punish me. What happened to the original purpose to create the job for which I applied and the time that passed to do it's responsibilities?  There was a prior budget process to post the

12

job and a decision about it. Nothing was brought forward to compare with what it is alleged the doctor did in abolishing the job, and what was said to create and originally to justify it. This silence infers that objectively the alleged doctor's reasons probably are not be correctly stated. His failure to sign an affidavit as to his motives and actions infers again by silence, he may not have done what is alleged for the reasons stated.

In my opinion, it has been a pattern with the VA not providing me with accommodation and denying me any positions I have applied for.

By her Attorney,

/s/Sanford A Kowal

Sanford A. Kowal
565 Chestnut Hill Ave.
Boston, Ma. 021235
617 562 8100

Case 1:04-cv-11468-DPW     Document 27     Filed 03/27/2006     Page 14 of 14