UNITED STATES OF AMERICA
DISTRICT COURT FOR THE EASTERN DISTRICT OF MASSACHUSETTS
Docket No. 04CV11468-DPW

2006 MAY 25 P 2: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| **Lucia Enica** | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **Anthony J. Principi as he is** | ) |
| **Secretary of Veterans Affair** of the | ) |
| Department of Veteran Affairs, and | ) |
| The **Department of Veteran Affairs of** | ) |
| **The United States** | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |

## PLAINTIFF'S ANSWERS TO DEFENDANTS'
## FIRST SET OF INTERROGATORIES

Interrogatory Number 1:

Please list each and every employer for whom you have worked since January 1, 1994. Include in your answer (i) the position(s) you held with each employer; (ii) the name and address of each employer; (iii) the name of your supervisor at each employer; (iv) the physical expectations for each position; and (v) any steps taken by previous employers to accommodate your disabilities.

ANSWER: See generally Department of Veterans Affairs, Office of Resolution Management, Investigative Report, dated December 29, 2003, already in defendant's possession. The answer is contained therein.

Interrogatory Number 2:

Describe each of the disabilities that you allegedly have had since your employment with the VA began in 1994. Include in your answer (i) a brief medical description of the disability; (ii) the date when you began to experience any symptoms from your alleged disabilities; (iii) what caused the onset of your symptoms; (iv) when and who diagnosed you with the alleged disabilities; (v) when you informed a supervisor at the VA about your condition; and (vi) the name of the supervisor whom you informed about your condition.

ANSWER:

See answer to Interrogatory Number 1 above.

Interrogatory Number 3:

Please identify each medical professional who has treated, examined, or in any other way consulted with you regarding your purported disabilities/impairments during the

2

period of time covered by the Complaint. For each individual, please identify:

a.    Their full name, business address, and medical qualifications;

b.    A summary of the treatment, examination, or consultation;

c.    Any documentation or report made by a treating, examining, or consulting physician.

ANSWER:

See Department of Veterans Affairs, Office of Resolution Management, Investigative Report, dated December 29, 2003, already in defendant's possession. See also U.S. Department of Labor Compensation Claim File of Ms. Lucia Enica (Case No. 012011872), Attached.   See also attached report of R.J. Wright, M.D., dated May 6, 1996.


Interrogatory Number 4:

With regard to the disabilities that you have allegedly have had since your employment with the VA began in 1994, please specify each physical limitation or accommodation prescribed for you by the medical professionals identified in your response to Interrogatory Number 3.

3

Answer:

See attached letter of Robert A. Provost, Jr., MD, dated May 13, 2002. See also attachment C-6 to Department of Veterans Affairs, Office of Resolution Management, Investigative Report, dated December 29, 2003, already in defendant's possession.

Interrogatory Number 5:

Please list all medications you were prescribe and/or currently are taking as a result of your disabilities, as well as any disability-related medication previously taken during the time period covered by the Complaint.

Answer:

See Attachment B-1a to Department of Veterans Affairs, Office of Resolution Management, Investigative Report, dated December 29, 2003, already in defendant's possession. I am also presently being prescribed medication for a condition in my arm and shoulder, which may be related to these disabilities.

Interrogatory Number 6:

Provide an explanation of how, if at all, your alleged disabilities impacted your ability to be a staff nurse at the VA.

4

Answer:

See answer to Interrogatory Number 1 above.

Interrogatory Number 7:

State whether you have recovered from any of your alleged disabilities. Include in your answer when, if appropriate, you recovered from any of your alleged disabilities.

Answer:

I believe I have not, except the bursitis.

Interrogatory Number 8:

Provide each and every date(s) that you applied for or requested a reasonable accommodation from the VA based on any of your alleged disabilities. Include in your answer how you applied for or requested a reasonable accommodation; what accommodation you requested; whom you submitted your application or request for accommodation to; and what the VA's response was.

Answer:

See answer to Interrogatory Number 1 above. See also U.S. Department of Labor, Workers Compensation Claim File of Ms. Lucia Enica (Case No. 012011872) attached and attached records.

Interrogatory Number 9:

Identify each and every individual having knowledge of the facts alleged in your Complaint, including each person's knowledge of the impact on your life (including medical, economic, social, emotional, personal, effects).

Answer:

Objection to the question. The plaintiff cannot and does not know the answer to the question.

Interrogatory Number 10:

Please identify each person whom you intend to call as witness at trial in this matter. For each person, state:

    a.  The name and business address of the person;

    b.  A full, complete, and detailed description of the subject matter upon which the person is expected to testify.

Answer:

The Plaintiff has not yet determined the witness list for witnesses intended to be called at trial. The Plaintiff reserves the right to amend this response in a timely fashion before trial.

Interrogatory Number 11:

6

Please state the name, title (if any), specialty, employer, and business address of any person whom you plan to call as an expert witness at trial. With respect to each person, describe the following:

a.  The subject matter on which the person will testify;

b.  Whether such person has prepared or will be preparing a written report of findings;

c.  The academic and other qualifications of such person;

d.  The substance of the facts and explanations of data to which such person is expected to testify;

e.  A summary of the grounds for each explanation of data listed in answer to part (d) of this interrogatory;

f.  All documents and any other material that such person relied upon or consulted in any manner in determining any facts and formatting any opinions listed in answer to part (d) of this interrogatory;

g.  All documents and any other material that such person is expected to rely upon at the trial;

h.  A complete bibliography of the textbooks, treatises, articles and other works of such person regarded as authoritative on the subject matter on which he will be testifying; and

7

i.    The manner in which such person became familiar with
      the facts of the case.

Answer:

Plaintiff has not yet determined the names of experts
intended to be called as witnesses at trial.  The plaintiff
reserves the right to amend this response in a timely fashion
before trial.

Interrogatory Number 12:

Please itemize separately and in full, complete, and
specific detail each and every element of damage which you
claim to have suffered as a result of the allegations of your
Complaint, specifically those damages referred to paragraphs
35 and 41 in your prayer for relief.   For each element of
damage identified, please specify:

a.    The count or defense to which the item of damages
      Relates;

b.    The category into which each item of damage falls
      (i.e.  lost  wages,  general  damages,  special
      consequential  damages,  interest,  and  any  other
      relevant categories);

c.    The factual basis for each item of damages;

d.    The exact monetary amount of the damage;

e.  Explanation of how you computed each item of damages, including any mathematical formula used;

f.  And identify by whom it was calculated.

g.  Please identify each document pertaining to each item of damages stated in your response.

Answer:

I am informed that the elements of damage are questions of fact for the fact finder, and cannot be estimated by the plaintiff for all items, in the manner requested. I am informed that the same is true as to the relationship of facts to the particular incidents that occurred.

I am informed that the only loss of wages would relate to discrimination in regard to a failure to promote me to clinical nurse specialist and/or nurse practitioner. I cannot estimate the amount but it will also include considerations of professional growth for matters in regard to which I went to graduate school. She should recover the cost of graduate school, if denied the use of these degrees by discrimination or failure to accommodate.

Humiliation: $1,500,000, I am informed by my attorney, based on estimates of damages awarded in other cases.

Personal Injuries: Pain and suffering of both body and mind, including mental health, caused by continued

9

exacerbation of preexisting conditions by physical harm

caused by discrimination and failure to accommodate,

Attorney's estimate $1,000,000.

I am informed by my attorney of an Attorney's Fees

Estimate of $100,000 if case is tried.

Interrogatory Number 13:

Please list and describe each and every discrete
incident of handicap discrimination that the VA allegedly
subjected you to. Specifically, provide all evidence you
have in support of Paragraphs 32 through 34 of the Complaint.
For each alleged act of handicap discrimination, identify in
your response:

a.   The time, date, and location of the incident;

b.   The names and titles (if any) of all persons
     involved in the incident;

c.   The names and titles (if any) of all persons who
     witnessed the incident;

d.   The date that you reported the incident to VA
     management, and to whom;

e.   If applicable, the accommodation that the VA
     allegedly denied and the VA's stated reason for the
     alleged denial;

10

Case 1:04-cv-11468-DPW   Document 33   Filed 05/25/2006   Page 11 of 31

   f.    Any physical or emotional problems ensuing from the
         alleged act of discrimination; and

   g.    Each and every document in support of these claims.

## Answer:

   In regard to a-f, the plaintiff says in summary as follows:

1. In or about 1995 or 1996 while working at her job as a
   psychiatric  nurse,  Enica  began  to  suffer  severe
   disabling pain when doing certain functions at the VA,
   i.e.  when  she  was  required  to  push  patients  on
   stretchers from their rooms to have electric convulsive
   shock  treatment  among  other  things.  Her  doctor  in
   reports  on  her  behalf  in  regard  to  such  matters,
   submitted to the VA at its request, asked for physical
   accommodations for her indicating among other things
   that because of her polio, low back pain and leg length
   discrepancy, Enica could not be ordered to crouch, lift
   over 15 pounds do repetitive low back activity and was
   not suited for med-surgical floor nursing or repetitive
   pushing  and  pulling  and  also  suggested  it  was  not
   "possible  to  spell  out  physical  restrictions  for  all
   circumstances, nurse must be permitted some discretion
   among other things due to her disabilities." In said
   year 1996 the employer also had Enica examined by a
   doctor employed by the VA as Chief of Orthopedics. His
   report confirmed her disabilities and in essence also
   specifically suggested that her doctor's recommendation
   of  limitation  for  physical  activity  might  not  be

11

restrictive enough. This report was delivered to the employer including the supervisors of the plaintiff.

2. As a result of her conditions and these physical limitations confirmed by the doctors' reports, the VA determined that Ms. Enica was required to be accommodated by limiting her work to 'psychiatric' nursing at the VA with the physical limitations required by the doctors in the reports in regard to walking, pushing, lifting and/or standing.

3. The medical and occupational limitations described above in were part of her personnel files and/or reported to and known to her supervisors in the Nursing Department of the now described 'Boston Health Care System', where she was continuously employed by the employer from 1994 until the present and continuing. The Responding Management Officials (hereinafter RMO) at these facilities involved at all relevant times in these matters of alleged discrimination at the facility where the employee worked, she is informed and believes were Ms. Karen Bassett, Coordinator of Mental Health Nursing, Ms. Cecelia McVey, Associate Director of Nursing and Patient Care, Ms. Marry Farren, Nurse Manager the direct supervisor of the plaintiff at Jamaica Plain and at the Nurse Stabilization Unit in West Roxbury, Mr. Denni Woodmansee, Director of the Worker Injury Program, Mr. William Warfield, Chief of Employee Relations in Human Resources Craig S. Poucha, Chief Human Resources Management Services.

12

4. At all times during her employment with the VA, Enica walked with a noticeable limp and observable limited ability to lift, push or stand, and had therefore had the 'appearance' from this and other things of a person who was obviously disabled and inhibited in certain of her life's functions.

5. At all times following the medical reports in 1995 and 1996 described above, Enica was treated in certain ways as a person with a 'disability' by her employer, its agents servants and employees, however at all such times the employer its agents servants or employee did not 'reasonably' accommodate all the disabilities as required. Among other things the employer required her to walk longer distances and for long times without aid than was permitted and to lift, pull and do other restricted activities.

6. From 1995 to 2002 while she worked at the psychiatric unit in Jamaica Plain, notwithstanding the required restrictions, the VA failed to reasonably accommodate her in regard to such physical activities to which it assigned her knowing of her limitations, and she was required to continuously do much of the restricted physical activity which continue to cause her constant pain for which she was required to take medication. Her supervisors at the VA did not show Enica the report of the VA Chief of Orthopedics described above during such time period, nor tell her of the limitation he described, and the employer's limitation to the role of a 'psychiatric nurse' with such physical restrictions,

13

but such supervisors continued to wrongfully assign her
to among other duties walking long distances and for
long times without aid and do other duties of a
'floating' floor nurse in medical settings specifically
restricted for her.

7. In June 2002, Enica was transferred to the 'Crisis
Stabilization Unit' at West Roxbury when the Jamaica
Plain psychiatric unit was purportedly closed. When the
Jamaica Plain psychiatric unit was planning the move of
some its personnel to said West Roxbury, Enica brought
her physical limitations to her supervisor (s) and human
relation's attention in regard to the job to be
performed at West Roxbury. Enica at the request of said
supervisor(s) and human relations obtained another
report from her doctor dated May 12, 2002, which she
presented to them, incorporated by reference herein.
This medical report again clearly listed what
occupational limitations applied to her and what
accommodations she needed which would still permit her
to perform the essential functions of her job. The
report again also set forth specific information about
what Enica could not do at work. Enica asked to stay at
Jamaica Plain, but instead Enica was given a notice of
transfer on June 28, 2002 to West Roxbury to a new
position. The notice included a document 'scope of
practice' which listed some accommodation to some of her
physical conditions, but which document ignored many of
the restrictions described by the doctor in the said May
2002 letter and the other medical letters in 1995 and
1996 described above. She was still transferred and

14

required to do the work of the unit in pain due to the lack of the requested and/or required accommodations being provided for her to be able to do the job.

8. Due to the increased pain from the increased required walking among other things at West Roxbury after her transfer, the plaintiff's representative requested on August 9, 2002 that the facility reconsider the transfer among other things, and asked the employer to comply with the accommodations required in the doctors' letters described above. As of October 1, 2002 the employer did not respond and the situation had not changed so the employee filed 'formal' discrimination charges with the VA.

9. At or about this time as a result of the additional physical activity at West Roxbury from which she was medically restricted but required to do, including but not limited to greatly increased walking every day compared to the walking required at Jamaica Plain, Enica suffered a 'worker compensation' injury arising out of or in the course of her employment, which disabled her from working. As a result she was required to leave work and make a claim for compensation. This injury included but was not limited to developing a 'bursitis' condition in her hips and/or legs aggravating her previous disabilities and causing her great pain among other things.

15

10. The Veteran's Administration for discriminatory reasons denied her workers compensation claim and her requested accommodations by said claim.

11. The 'Office of Worker's Compensation Program' of the Department of Labor, of the United States, to whom Enica appealed, reversed the January 2003 denial of her claim by the VA, in an appellate decision issued in May 2003 incorporated by reference herein and marked Exhibit 'A'. The decision among other things found that Enica suffered an 'on the job injury' causing increased injury to her prior disabled conditions, requiring further accommodation and compensation from the VA since the failure to accommodate her had led to unsafe conditions at work for Enica causing her the said workers compensation injury.

12. When she returned to work in 2003 after recovering from the injury, the VA upon her request, provided her a 'motorized' scooter as an accommodation to her disabilities, to help with the assigned walking at West Roxbury.

13. Her supervisors however kept assigning her to medical situations on the wards ignoring the other physical restrictions on her of which they knew including being excluded from medical duties on the wards described in among other places the 1995 and 1996 medical reports. These assignments required physical actions with patients to physically support or move them in bed or walking, which the supervisors knew or should have known

16

Enica could not do because of her other physical
limitations described in the prior medical reports.

14. The supervisors also failed to notify or seek or gain
the help of the floor nurses where she was assigned to
aid these physical restrictive conditions of Enica, and
caused Enica thereby continued embarrassment, physical
and emotional pain, when she could not perform or get
help to perform the assigned physical tasks with the
patients. These assignments because of her physical
limitations to help the patients, put her patients to
whom she was assigned to do tasks she could not, in
danger. She so noted these matters in the records and
her supervisors retaliated by falsely claiming she could
not do appropriate medical jobs, from which jobs she had
been restricted by medical reports to the employer and
in regard to which the supervisors were aware. The acts
described in this paragraph in of themselves were
directly discriminatory, and/or a refusal to provide
reasonable accommodation and/or retaliatory.

15. When Enica complained about the assignments described in
21 above, the supervisors 1) falsely charged her with
inability to perform the required medical tasks such as
supporting patients who might fall from bed or while
walking to the lavatory, 2) put her on administrative
leave requiring her to remain at home and not work, and
then later in 2003 3) detailed Enica temporarily to the
'TAP' program so called, (a telephone medical triage
system at the hospitals carried out by registered
nurses.) She is not required at 'TAP' a nursing

17

position, to walk push or lift.  She has successfully
performed all of the nursing duties of this position
without further accommodation.

16. The VA published by e-mail a notice for an opening at
    Jamaica Plain for the position of 'Clinical Nurse
    Specialist' in June 5, 2003 incorporated by reference
    herein as Exhibit 'B', for which position Enica timely
    applied. She was at the time of her application eligible
    in all respects for the position as described. She
    believes and says she can perform the essential
    functions of the said position as described in the
    notice, without any accommodation.

17. The VA then issued a Final Agency Report, which denied
    the plaintiff's charges for false reasons and failed to
    address her promotional allegations. The plaintiff says
    that such report itself continued the acts of handicap
    discrimination and/ or retaliation by among other things
    wrongfully denying the employer's responsibility under
    the applicable law to provide her reasonable
    accommodation and/or for acting in a retaliatory manner.

18. After appropriate demands to the employer by the
    employee's agent, for information about the course of
    the application and the job, the employer in late April
    2004, refused in writing to appoint the plaintiff to the
    position and the employee believes based on the events
    described above, the unusually long time  to respond,
    gave false reasons by letter dated May 18, 2004,
    (incorporated by reference herein a Exhibit C), as part

18

of the pattern of denying her a reasonable accommodation for her handicap and/or as direct handicap discrimination, and or retaliation for filing the formal charges described above.

19. Enica says she believes based on the events described above that the real reason she was denied the promotional position was as part of a continuing pattern of denying her a reasonable accommodation for her handicap, of direct handicap discrimination and/or in retaliation for her filing the above-described discrimination claims against the VA its agents, servants and/or employees. As a result she believes she has also been denied a promotion for which she was eligible and entitled, and thereby suffered also a loss of future higher income to which the position would have exposed her, and other employee benefits among other things.

h.      Incorporate answer to 1 above and include also additional documents provided in response to request for documents.


Interrogatory Number 14:

Please list and describe each and every discrete incident of alleged retaliation that the VA allegedly subjected you to. Specifically, provide all evidence you have in support of Paragraphs 37 through 40 of the Complaint.

19

For each alleged act or retaliation, identify in your
response:

    a.    The time and date of the alleged retaliation;

    b.    The names and titles (if any) of all persons
involved in the alleged retaliation;

    c.    The names and titles (if any) of all persons who
witnessed the alleged retaliation;

    d.    The date that you reported the act of retaliation
to VA management, and to whom;

    e.    The protected activity you were engaged in at the
time;

    f.    The nature of the alleged retaliation, including
any disciplinary actions; and

    g.    Each and every document in support of these claims.

Answer:

In regard to a-f, the plaintiff says in summary as
follows:

    1. In or about 1995 or 1996 while working at her
job as a psychiatric nurse, Enica began to
suffer severe disabling pain when doing
certain functions at the VA, i.e. when she was
required to push patients on stretchers from
their rooms to have electric convulsive shock
treatment among other things. Her doctor in

20

reports on her behalf in regard to such matters, submitted to the VA at its request, asked for physical accommodations for her indicating among other things that because of her polio, low back pain and leg length discrepancy, Enica could not be ordered to crouch, lift over 15 pounds do repetitive low back activity and was not suited for med-surgical floor nursing or repetitive pushing and pulling and also suggested it was not "possible to spell out physical restrictions for all circumstances, nurse must be permitted some discretion among other things due to her disabilities." In said year 1996 the employer also had Enica examined by a doctor employed by the VA as Chief of Orthopedics. His report confirmed her disabilities and in essence also specifically suggested that her doctor's recommendation of limitation for physical activity might not be restrictive enough. This report was delivered to the employer including the supervisors of the plaintiff.

2. As a result of her conditions and these physical limitations confirmed by the doctors' reports, the VA determined that Ms. Enica was required to be accommodated by limiting her work to 'psychiatric' nursing at the VA with the physical limitations required by the

21

doctors in the reports in regard to walking, pushing, lifting and/or standing.

3. The medical and occupational limitations described above in were part of her personnel files and/or reported to and known to her supervisors in the Nursing Department of the now described 'Boston Health Care System', where she was continuously employed by the employer from 1994 until the present and continuing. The Responding Management Officials (hereinafter RMO) at these facilities involved at all relevant times in these matters of alleged discrimination at the facility where the employee worked, she is informed and believes were Ms. Karen Bassett, Coordinator of Mental Health Nursing, Ms. Cecelia McVey, Associate Director of Nursing and Patient Care, Ms. Marry Farren, Nurse Manager the direct supervisor of the plaintiff at Jamaica Plain and at the Nurse Stabilization Unit in West Roxbury, Mr. Denni Woodmansee, Director of the Worker Injury Program, Mr. William Warfield, Chief of Employee Relations in Human Resources Craig S. Poucha, Chief Human Resources Management Services.

4. At all times during her employment with the VA, Enica walked with a noticeable limp and observable limited ability to lift, push or stand, and had therefore had the 'appearance' from this and other things of a person who was obviously disabled and inhibited in certain of her life's functions.

5. At all times following the medical reports in 1995 and 1996 described above, Enica was treated in certain ways as a person with a 'disability' by her employer, its agents servants and employees, however at all such times the employer its agents servants or employee did not 'reasonably' accommodate all the disabilities as required. Among other things the employer required her to walk longer distances and for long times without aid than was permitted and to lift, pull and do other restricted activities.

6. From 1995 to 2002 while she worked at the psychiatric unit in Jamaica Plain, notwithstanding the required restrictions, the VA failed to reasonably accommodate her in regard to such physical activities to which it assigned her knowing of her limitations, and she was required to continuously do much of the restricted physical activity which continue to cause her constant pain for which she was required to take medication. Her

supervisors at the VA did not show Enica the
report of the VA Chief of Orthopedics
described above during such time period, nor
tell her of the limitation he described, and
the employer's limitation to the role of a
'psychiatric nurse' with such physical
restrictions, but such supervisors continued
to wrongfully assign her to among other duties
walking long distances and for long times
without aid and do other duties of a
'floating' floor nurse in medical settings
specifically restricted for her.

7. In June 2002, Enica was transferred to the
'Crisis Stabilization Unit' at West Roxbury
when the Jamaica Plain psychiatric unit was
purportedly closed.   When the Jamaica Plain
psychiatric unit was planning the move of some
its personnel to said West Roxbury, Enica
brought her physical limitations to her
supervisor (s) and human relation's attention
in regard to the job to be performed at West
Roxbury. Enica at the request of said
supervisor(s) and human relations obtained
another report from her doctor dated May 12,
2002, which she presented to them,
incorporated by reference herein. This medical
report again clearly listed what occupational
limitations applied to her and what
accommodations she needed which would still
permit her to perform the essential functions

24

of her job. The report again also set forth specific information about what Enica could not do at work. Enica asked to stay at Jamaica Plain, but instead Enica was given a notice of transfer on June 28, 2002 to West Roxbury to a new position. The notice included a document 'scope of practice' which listed some accommodation to some of her physical conditions, but which document ignored many of the restrictions described by the doctor in the said May 2002 letter and the other medical letters in 1995 and 1996 described above. She was still transferred and required to do the work of the unit in pain due to the lack of the requested and/or required accommodations being provided for her to be able to do the job.

8. Due to the increased pain from the increased required walking among other things at West Roxbury after her transfer, the plaintiff's representative requested on August 9, 2002 that the facility reconsider the transfer among other things, and asked the employer to comply with the accommodations required in the doctors' letters described above.   As of October 1, 2002 the employer did not respond and the situation had not changed so the employee filed 'formal' discrimination charges with the VA.

25

9. At or about this time as a result of the additional physical activity at West Roxbury from which she was medically restricted but required to do, including but not limited to greatly increased walking every day compared to the walking required at Jamaica Plain, Enica suffered a 'worker compensation' injury arising out of or in the course of her employment, which disabled her from working. As a result she was required to leave work and make a claim for compensation.  This injury included but was not limited to developing a 'bursitis' condition in her hips and/or legs aggravating her previous disabilities and causing her great pain among other things.

10.    The    Veteran's    Administration    for discriminatory reasons denied her workers compensation    claim    and    her    requested accommodations by said claim.

11.    The    'Office  of  Worker's  Compensation Program' of the Department of Labor, of the United    States,    to    whom    Enica    appealed, reversed the January 2003 denial of her claim by the VA, in an appellate decision issued in May 2003 incorporated by reference herein and

marked Exhibit 'A'. The decision among other things found that Enica suffered an 'on the job injury' causing increased injury to her prior disabled conditions, requiring further accommodation and compensation from the VA since the failure to accommodate her had led to unsafe conditions at work for Enica causing her the said workers compensation injury.

12. When she returned to work in 2003 after recovering from the injury, the VA upon her request, provided her a 'motorized' scooter as an accommodation to her disabilities, to help with the assigned walking at West Roxbury.

13. Her supervisors however kept assigning her to medical situations on the wards ignoring the other physical restrictions on her of which they knew including being excluded from medical duties on the wards described in among other places the 1995 and 1996 medical reports. These assignments required physical actions with patients to physically support or move them in bed or walking, which the supervisors knew or should have known Enica could not do because of her other physical limitations described in the prior medical reports.

14. The supervisors also failed to notify or seek or gain the help of the floor nurses

27

where she was assigned to aid these physical restrictive conditions of Enica, and caused Enica thereby continued embarrassment, physical and emotional pain, when she could not perform or get help to perform the assigned physical tasks with the patients. These assignments because of her physical limitations to help the patients, put her patients to whom she was assigned to do tasks she could not, in danger. She so noted these matters in the records and her supervisors retaliated by falsely claiming she could not do appropriate medical jobs, from which jobs she had been restricted by medical reports to the employer and in regard to which the supervisors were aware. The acts described in this paragraph in of themselves were directly discriminatory, and/or a refusal to provide reasonable accommodation and/or retaliatory.

15.    When Enica complained about the assignments described in 21 above, the supervisors 1) falsely charged her with inability to perform the required medical tasks such as supporting patients who might fall from bed or while walking to the lavatory, 2) put her on administrative leave requiring her to remain at home and not work, and then later in 2003 3) detailed Enica temporarily to the 'TAP' program so called, (a telephone medical triage system at the

28

hospitals carried out by registered nurses.)
She is not required at 'TAP' a nursing
position, to walk push or lift. She has
successfully performed all of the nursing
duties of this position without further
accommodation.

16.    The VA published by e-mail a notice for
an opening at Jamaica Plain for the position
of 'Clinical Nurse Specialist' in June 5, 2003
incorporated by reference herein as Exhibit
'B', for which position Enica timely applied.
She was at the time of her application
eligible in all respects for the position as
described. She believes and says she can
perform the essential functions of the said
position as described in the notice, without
any accommodation.

17.    The VA then issued a Final Agency Report,
which denied the plaintiff's charges for false
reasons and failed to address her promotional
allegations. The plaintiff says that such
report itself continued the acts of handicap
discrimination and/ or retaliation by among
other things wrongfully denying the employer's
responsibility under the applicable law to
provide her reasonable accommodation and/or
for acting in a retaliatory manner.

29

18.     After appropriate demands to the employer
by the employee's agent, for information about
the course of the application and the job, the
employer in late April 2004, refused in
writing to appoint the plaintiff to the
position and the employee believes based on
the events described above, the unusually long
time to respond, that the VA gave false
reasons by letter dated May 18, 2004,
(incorporated by reference herein a Exhibit
C), as part of the pattern of denying her a
reasonable accommodation for her handicap
and/or as direct handicap discrimination, and
or retaliation for filing the formal charges
described above.

19.     Enica says she believes based on the
events described above that the real reason
she was denied the promotional position was as
part of a continuing pattern of denying her a
reasonable accommodation for her handicap, of
direct handicap discrimination and/or in
retaliation for her filing the above-described
discrimination claims against the VA its
agents, servants and/or employees. As a result
she believes she has also been denied a
promotion for which she was eligible and
entitled, and thereby suffered also a loss of
future higher income to which the position

30

would have exposed her, and other employee benefits among other things.

h.      Incorporate answer to 1 above and include also additional documents provided in response to request for documents.

Signed under the pains and penalties of perjury this      day of   May 2005.

*18 Lucia Enica*

Lucia Enica

Objections
By her Attorney:

*1f SAK*

Sanford A. Kowal

31