SANFORD A. KOWAL
ATTORNEY AT LAW
56 CHESTNUT HILL AVENUE • BOSTON, MASSACHUSETTS 02135
TELEPHONE: 617 562 8100 • FAX: 617 562 0069
E-MAIL: SANKOW@MSN.COM

FILED
IN CLERKS OFFICE
2006 MAY 25 P 2: 19
U.S. DISTRICT COURT
DISTRICT OF MASS.

May 25, 2006

Clerk,
U. S. District Court for the
Eastern District of Massachusetts
Moakley Court House
1 Courthouse Way
Boston, Ma. 02210
Attn: Woodlock, J. (By Messenger)

Re: **Enica vs. Department of Veteran Affairs et al No. 04 CV 11468**
**Return of Service**

Dear Justice Woodlock:

Thank you for your consideration in giving me time to respond to your direct question. If I had remembered better, I would have given you a direct response from the record which I think answers your questions and saved at least some time.

I first wish to point out that **Exhibit 'C' to the plaintiff's 'Affidavit'** was an authentication of **two answers to interrogatories prior to her deposition,** which directly addressed in the record, the issues you raised in your questions to me. I have enclosed a copy of the said Answers in their entirety, the Exhibit referenced in the Answers, and a copy of the cover letter to the ADA.

1. Further request for accommodation between July and W. C. injury.

Question 13 asked in summary for all 'discreet acts' of discrimination.

Paragraph 8 of the said answer to 13, under oath said as follows:

> '8. Due to the increased pain from the increased required walking among other things at West Roxbury after her transfer, the plaintiff's representative requested on August 9, 2002 that the facility reconsider the transfer among other things, and asked the employer to comply with the accommodations required in the doctors' letters described above. As of October 1, 2002 the employer did not respond and the situation had not changed so the employee filed 'formal' discrimination charges with the VA.'

I submit a copy of the letter referenced in the said answer, and I ask leave to include it in its entirety into the record.

2. Claims after assigned to scooter.

From the same answer to interrogatory 13, I set forth paragraphs 12 -15 as follows:

12. When she returned to work in 2003 after recovering from the injury, the VA upon her request provided her a 'motorized' scooter as an accommodation to her disabilities, to help with the assigned walking at West Roxbury.

13. Her supervisors however kept assigning her to medical situations on the wards ignoring the other physical restrictions on her of which they knew including being excluded from medical duties on the wards described in among other places the 1995 and 1996 medical reports. These assignments required physical actions with patients to physically support or move them in bed or walking, which the supervisors knew or should have known Enica could not do because of her other physical limitations described in the prior medical reports.

2

14. The supervisors also failed to notify or seek or gain the help of the floor nurses where she was assigned to aid these physical restrictive conditions of Enica, and caused Enica thereby continued embarrassment, physical and emotional pain, when she could not perform or get help to perform the assigned physical tasks with the patients. These assignments because of her physical limitations to help the patients, put her patients to whom she was assigned to do tasks she could not, in danger. She so noted these matters in the records and her supervisors retaliated by falsely claiming she could not do appropriate medical jobs, from which jobs she had been restricted by medical reports to the employer and in regard to which the supervisors were aware. The acts described in this paragraph in of themselves were directly discriminatory, and/or a refusal to provide reasonable accommodation and/or retaliatory.

15. When Enica complained about the assignments described in 21 above, the supervisors 1) falsely charged her with inability to perform the required medical tasks such as supporting patients who might fall from bed or while walking to the lavatory, 2) put her on administrative leave requiring her to remain at home and not work, and then later in 2003 3) detailed Enica temporarily to the 'TAP' program so called, (a telephone medical triage system at the hospitals carried out by registered nurses.) She is not required at 'TAP' a nursing position, to walk push or lift. She has successfully performed all of the nursing duties of this position without further accommodation.

Plaintiff says these answers sustains a claim that damages can be sought for the activities described which occurred with the scooter. Also the letter of restrictions in June 2002 specifically required the VA to aide the plaintiff, by notifying supervisors and departments of the plaintiff's restrictions among other things. There is evidence in these answers that this did not occur.

3. Law

The plaintiff says that after her counsel's letter of August 2, 2002, the employer was required to continue the process of interaction for accommodation, which it did not prior to her filing her formal claim and prior to her workers compensation injury occurring. ('the employer must determine whether a reasonable accommodation would. . . eliminate' the direct threat. <u>29 C. F. R. section 1630.2 (r), 1630.9.</u>

3

The plaintiff suggests on the facts presented by her as to the employer's failure to continue the process of 'interaction' when requested, a denial of summary judgment is appropriate, based on the issue of fact presented on this issue by the plaintiff in the record, by the employer's failure to respond to her counsel's letter of August 9, 2002. **E.E.O.C. v. Sears, Roebuck & Co.** 417 F.3d 789, 808, C.A. 7 (Ill.) (2005). Cf. **Phelps v. Optima Health, Inc.** 251 F.3d 21, C.A.1 (N.H.), 2001.

Very truly yours,

Sanford A. Kowal

cc. Client, Asst U.S. Atty., in hand.
Encl.